IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMBIT CORPORATION,

                    Plaintiff,

v.

DELTA AIR LINES, INC., AND
AIRCELL LLC,

                    Defendants.

CIVIL ACTION NO. 1:09-CV-10217-WGY

JURY TRIAL DEMANDED

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

## I.    **INTRODUCTION**

Defendants Delta Air Lines, Inc. and Aircell LLC (collectively "Defendants") submit this memorandum in support of their proposed constructions for the asserted claims (1-17) of U.S. Patent No. 7,400,858 ("the '858 patent"). As explained below, the Court should adopt Defendants' proposed constructions because they are true to the language of the claims and are supported by the specification of the '858 patent. As explained in Defendants' currently pending Motion for Summary Judgment of Invalidity For Failure To Comply With 35 U.S.C. § 112, the specification of the '858 patent makes clear that the alleged "invention" of the '858 patent comprises a "docking system" with a "shield" that can be used in a communication system with a personal communication device, such as a cellular telephone or personal computer, to avoid the allegedly unwanted propagation of radiofrequency ("RF") radiation in an environment such as an airplane, automobile, building or elevator. The docking system with a shield operates within such an environment in conjunction with a "juxtaposed pick-up probe" that receives an RF signal from a personal communication device and then sends the RF signal through a "transmission line" to a second RF antenna that is radiating outside of the environment so as to avoid the unwanted travel of RF radiation within the environment. *See, e.g.,* '858 patent, 1:62-3:48; 4:4-5:47 (Koh Decl. Ex. 1).[1]

The claims of the '858 patent are not directed to the allegedly inventive "docking system" with a "shield." Nevertheless, as explained below, there are elements of the described invention, such as the "juxtaposed probe" and "transmission line," that do find their way into the claims through terms such as "first RF antenna" and "communications link." Plaintiff, however, is trying to divorce its claims even further from the invention described in the specification by proposing claim constructions that are not in keeping with the teachings of the specification.[2]

---

[1] References to "Koh Decl." are to the Declaration of Stephanie P. Koh in Support of Defendants' Opening Claim Construction Brief, submitted concurrently herewith.

[2] To date, plaintiff has refused to provide a meaningful response to an interrogatory seeking plaintiff's positions regarding Defendants' invalidity defenses. Without knowledge of plaintiff's contentions regarding the prior art, it is impossible for Defendants to know whether they have identified all of, or the most important, claim construction disputes.

Such constructions should be rejected.

## II.    **ARGUMENT**

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 388-90 (1996). The "words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). This is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.[3] However, a "person of ordinary skill in the art is deemed to [have] read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. The "intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history," is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Indeed, "the claims cannot be of broader scope than the invention that is set forth in the specification." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006).

### A.    **The Preambles of Independent Claims 1, 7 and 13 Are Claim Limitations That Require Personal Communication Devices That Are Allowed To Transmit RF Signals To and Receive RF Signals From a Distant Communication System.**

If words in a preamble "are necessary to give meaning to the claim and properly define the invention, they are deemed limitations of the claim." *See Gerber Garment Tech., Inc. v. Lectra Sys., Inc.*, 916 F.2d 683, 688-89 (Fed. Cir. 1990) (quotation omitted). There should be no real dispute that the preambles of independent claims 1, 7 and 13 of the '858 patent are claim limitations. After all, plaintiff has proposed claim constructions for certain terms that appear

---

[3] Thus, "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words" and have been used frequently by courts to interpret claims. *Mass. Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1351 (Fed. Cir. 2006).

**only** in the claim preambles, which would make no sense if the preambles were not claim limitations.[4]

In the '858 patent, the bodies of claims 1, 7 and 13 explicitly refer back to the claim preambles by using the term "said" to modify terms that are introduced in the preamble. For example, claim 1 repeatedly refers to "said personal computer communication devices," referring back to the recitation of "personal computer communication devices" in the preamble. '858 patent, 5:49-6:1. The same is true for the terms "said...wireless personal RF communication devices" in claims 7 and 13. *See id.* at 6:27-53, 7:13-8:8. Such phrasing confirms that the preambles are structural limitations that require the recited system and methods to include "said" personal communication devices. *See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999) (holding that where words in a claim body refer to structure introduced in the preamble, "it is essential that the court charged with claim construction construe the preamble and the remainder of the claim...as one unified and internally consistent recitation of the claimed invention"); *Gerber*, 916 F.2d at 689 (holding a preamble to be a claim limitation where a term in it was "referenced repeatedly in the body of the claim"); *FlexHead Indus., Inc. v. Easyflex, Inc.*, 2008 WL 4813797, at *11-12 (D. Mass. Nov. 3, 2008) (holding that in order for the "the suspended ceiling grid" clauses in the body of the claim "to make sense, the suspended ceiling grid...recited in the preamble must be a claim limitation"). The Court should therefore find that the preambles are limitations of the claims.

Despite plaintiff's assertions to the contrary, the system recited in claim 1 necessarily includes "personal computer communication devices," while the methods recited in claims 7 and 13 necessarily include the use of "wireless personal RF communication devices"/"personal communication devices." Those terms appear not only in the preambles of the independent

---

[4] For example, plaintiff has proposed that the Court construe: (a) "A system for enabling communication," "located within a passenger vehicle," "personal computer devices," "each," and "having," all of which appear only in the preamble to claim 1; (b) "within a local environment in an aircraft," which appears only in the preamble to claim 7; and (c) "airplane," which appears only in the preamble to claim 13.

claims but also in the body of the claims themselves; as such, they necessarily limit the claims. *See, e.g., Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 811 (Fed. Cir. 2002) (explaining that a term appearing in the preamble and body of the claim was a limitation because "[b]y virtue of its inclusion in the body of [the claim], this phrase limits [the claim]").

The preambles of claims 1, 7 and 13 also require the recited system and methods to allow the personal communication devices to transmit an RF signal to or receive an RF signal from a distant communication system. The preamble of claim 1 refers to "communication from personal computer communication devices located within a passenger vehicle to a distant communication system." The preamble of claim 7 refers to "wireless personal RF communication devices within a local environment in an aircraft, in RF communication with a communication system distant from said local environment." And, the preamble of claim 13 refers to "RF signal communication between said different radiatively communicative wireless personal RF communication devices with a communication system distant from said local environment." All these limitations call for RF communication between wireless communication devices and a distant communication system. This is in line with one of the objects of the invention – allowing an RF signal from a personal device to reach the distant communication system. '858 patent, 1:37-46 ("It is an object of the present invention to permit a user of a portable hand-held electronic communication device…to conveniently use that same hand-held device/cellular phone in an automobile, plane or building, office/desk, or anywhere signal transmission is needed, and to permit **such signal** to reach **its intended destination such as a communications network or satellite**, without interfering with other electrical equipment and in spite of interfering walls of buildings or structure and/or other electrical equipment.") (emphasis added). These limitations are necessary to give "life, meaning and vitality" to the claims and properly define the invention, making them claim limitations. *Pitney Bowes*, 182 F.3d at 1306.[5]

---

[5] "Communicating" and being in "RF communication" in the context of the '858 patent requires transmitting or receiving RF signals. For example, the specification states that "[t]he communication device would be placed within the pickup zone of the focal area, and **would be able to transmit and receive signals**." '858 patent, 2:26-28 (emphasis added). Likewise, the

**B.    The Claimed Personal Communications Devices Include A Wide Variety of Devices That Can Be Carried By An Individual.**

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "personal computer communication devices"; "personal computer devices" (Claims 1-4) | communication devices that can be carried by an individual and include or are used with a computer | A personal computer having a communication interface. A personal computer is a private, individual electronic data processing device which is generally programmable to execute personally controllable application software. A communication interface provides a way for the personal computer to externally send and receive information. |
| "wireless personal RF communication devices" (Claims 7, 13) and similar terms from Claims 7-9, 11, 13, 15 and 17 | wireless RF communication devices that can be carried by an individual | A personal device having a wireless RF communication interface. A communication interface provides a way for the personal device to externally send and receive information. |

The terms "personal computer communication devices" and "wireless personal RF communication devices" do not appear in the specification. However, the specification indisputably describes many examples of communication devices. For example, the "Description of the Preferred Embodiments" refers to "**portable electronic communication device 12 such as a cellular telephone, portable computer, facsimile machine, pager, or the like . . . .**" '858 patent, 4:12-17 (emphasis added). Elsewhere, the patent refers to "a **personal communicator (i.e. cellular telephone, facsimile machines, pager or the like)** which may also be carried on an individual." *Id.* at 4:8-11 (emphasis added). *See also, e.g., id.* at 1:62-66 (listing communication devices "such as a cellular telephone, portable computer, facsimile machine, pager or the like"); 3:44-46 ("a portable communication device such as a cellular telephone, facsimile machine or ground position indicator or the like"); 4:6-7; 5:18-19.

For claims 1-4 that require "personal computer communication devices" or "personal computer devices," plaintiff's proposed construction is too narrow because it limits the terms to computers and ignores the fact that many of the preferred embodiments, such as a cellular

---

specification states that "[t]he communication device 12 would be placed within the pickup zone of the focal area 16, and **would be able to transmit and receive signals**." *Id.* at 4:50-53 (emphasis added).

5

telephone or facsimile machine, could be used with a computer.  Where possible, claims should be construed to include preferred embodiments.  *See, e.g., Vitronics*, 90 F.3d at 1583 (stressing that a construction that leads to preferred embodiments in the specification not falling within the scope of the claims "is rarely, if ever, correct").  If the patentee had wanted to limit the claims to personal computers as plaintiff now proposes, it could have used that term, rather than the broader term "personal computer communication devices."

Defendants' proposed constructions, unlike plaintiff's, specifies that the personal communication devices are portable such that they can be carried by an individual.  This is corroborated by the specification, which repeatedly refers to "hand-held electronic communication devices," "hand-held devices," "portable personal electronic communication devices," a "portable hand-held electronic communication device," a "portable device," "portable communication devices" and similar terms.  *See, e.g.,* '858 patent, Abstract; 1:7-8; 1:23-25; 1:27-40; 1:47-49; 2:48-58; 3:9-11; 3:13-23; 3:37-38; 3:44-46; 4:5-7; 4:14-17; 5:18-19; 5:26-27; 5:41-43.  The specification emphasizes that the devices "should be portable for a user to carry in his pocket" and that the devices may "be carried on an individual."  *Id.* at 1:33-36; 4:10-11.  Explaining to the jury that the "personal" devices are ones that can be carried by an individual adds clarity to the vague term "personal."

Plaintiff's proposed construction of "personal computer communication devices" only serves to introduce ambiguity into the claims.  For example, nothing in the patent requires the "personal computer communications devices" to be "private" as plaintiff proposes.  And the term "private" is hopelessly vague and ambiguous.  Nor is there any support for plaintiff's assertions that the "personal computer communication devices" are "generally programmable to execute personally controllable application software" or that all of the communications devices have a "communication interface" that "provides a way for the personal computer/device to externally send and receive information."  Not only do these proposed constructions lack support in the patent, but they would introduce ambiguity into the claims by injecting vague words such as

6

"information," "personal," "private" and "personally controllable."[6]

## C.    A Radiative RF Antenna Is An External Antenna For Transmitting or Receiving RF Signals.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "a radiative RF antenna" (Claims 1, 7 and 13) | an external antenna for transmitting or receiving RF signals | a structure for emitting and receiving electromagnetic waves at radio frequency (RF) that is in the electromagnetic spectrum between the audio frequency portion and the infrared portion |

The "radiative RF antenna" referred to in claims 1, 7 and 13 is an external antenna on the

personal communication device.  During the prosecution of related U.S. Patent No. 6,594,471,

which is in the direct priority chain listed on the face of the '858 patent and which is incorporated

by reference in the '858 patent ('858 patent, 1:7-16), the patentee made clear that the "radiative

antenna" on the communication device must be an external antenna.  Plaintiff cannot now seek to

recapture what was disclaimed during prosecution of the parent patent, namely, internal

antennas.  *See, e.g., Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)

("The doctrine of prosecution disclaimer is well established in Supreme Court precedent,

precluding patentees from recapturing through claim interpretation specific meanings disclaimed

during prosecution."); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306

(Fed. Cir. 2007) ("We have held that a statement made by the patentee during prosecution history

of a patent in the same family as the patent-in-suit can operate as a disclaimer."); *Watts v. XL*

*Sys., Inc.*, 232 F.3d 877, 884 (Fed. Cir. 2000) (holding that a statement in a parent patent

operated as a disclaimer in the patent at issue because the prosecution history of the patent at

issue "contain[ed] nothing to the contrary").

During prosecution of the '471 patent, the patentee distinguished the claims, which

required "an externally radiative antenna," from the prior art Phillips reference by arguing that

---

[6] Plaintiff asserts that the terms relating to "personal communication devices" and "personal computer communications devices" are not claim limitations, implying that they need not be construed.  Yet, plaintiff goes on to propose constructions, which would make no sense if the terms do not limit the claims.  In fact, these terms -- which are referenced in the body of all three independent claims and most of the dependent claims -- necessarily are claim limitations, as explained above.

Phillips "does not even have an **external** antenna." The patentee further argued that "Phillips does not relate to Applicants' invention, and should be withdrawn as a primary reference against Applicants independent claims for its lack of any suggestion or teaching of Applicants' invention." ('471 patent prosecution, Oct. 2, 1998 Amendment at 14 (Koh Decl. Ex. 5) (emphasis added)). In an appeal to the Board of Patent Appeals, patentee again repeated their disavowal, arguing that the "externally radiative antenna of a personal communication device" in then-pending claim 17 was necessarily limited to an external antenna: "No **external** antenna is placed next to a coupling plate for a radio frequency communication therebetween. **Such a requirement is necessary** as identified in Applicants' independent claim 17." ('471 patent prosecution, May 21, 1999 Brief at 14) (Koh Decl. Ex. 6) (emphasis added)).

The patentee thus made clear that the radiative antenna on the personal communication devices is an external antenna. Having done this, the "public notice function" of the intrinsic evidence precludes the patentee from seeking a broader construction. *Omega*, 334 F.3d at 1324. "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Id.* The fact that the claims at issue in the prosecution of the '471 patent called for an "externally radiative antenna," rather than a "radiative antenna," is of no moment because the distinction the patentee drew between Phillips and its invention did not turn on the presence of the word "externally." "Externally radiative" and "radiative" both refer to the direction in which radiation travels, not to whether the antenna is external or internal. Even an internal antenna in a cell phone would be "externally radiative." Patentee thus limited the "radiative antenna" on the personal communication devices to an external antenna and cannot now seek a construction that avoids the "external" limitation.

In addition to being external, the "radiative" antenna must be able to receive RF signals (the parties agree on this point). But plaintiff proposes that the antenna also "emit," rather than "transmit," RF signals. Plaintiff's proposed construction is incorrect because something that leaks RF energy would "emit" RF signals, but would not be an antenna. And "transmit" is

8

consistent with the specification, which makes clear that the antenna is for "transmitting or receiving" RF signals. *See, e.g.*, '858 patent, 2:26-28 ("The communication device . . . would be able to **transmit and receive signals**.") (emphasis added); 4:50-53 ("The communication device 12 . . . would be able to **transmit and receive signals**.") (emphasis added).

Plaintiff's proposed construction should also be rejected because it substitutes for "antenna" the word "structure," which is a vague, indefinite term that improperly broadens the claims beyond the actual words. Jurors can be expected to know what an "antenna" is. Where, as here, claim terms can be understood in their ordinary sense, it is proper to rely on their ordinary meanings without further construction. *See, e.g., Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (affirming the refusal to construe "irrigating" and "frictional heat"); *Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp., Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (affirming the refusal to construe "melting"); *FlexHead Indus*, 2008 WL 4813797, at *9 ("A court may properly decline to construe a term further if the ordinary meaning of the term is apparent."). Similarly, plaintiff's statement about the RF spectrum is unnecessary and adds confusion to the claim term.

### D.    The "First RF Antenna" Is a Probe That Is Juxtaposed With the Radiative RF Antenna Of a Personal Communication Device.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "first RF antenna" (Claims 1, 7 and 13)<br><br>"first RF antennae" (Claim 16) | first RF probe that is juxtaposed with the RADIATIVE RF ANTENNA[7]<br><br>first RF probes, each juxtaposed with a respective RADIATIVE RF ANTENNA | a radiative RF antenna distinct from the RF antennae associated with described personal communication devices and distinct from the second RF antenna |

The '858 patent's specification never mentions a "first RF antenna." Rather, it discloses only the antennas of the personal communication devices and the remote antenna that transmits signals outside of the local environment. In between these two antennas, the specification discloses a *juxtaposed probe* that picks up an RF signal from the personal communications

_____

[7] When a phrase appears in all capital letters in Defendants' proposed construction, it incorporates the meaning of a term that is itself being construed.

9

devices and then transmits the signal via a transmission line/wire to the remote antenna so as to limit the spread of undesirable radiation. For example, the "Brief Summary of the Invention" explains that the invention includes an electronic communication device and "*juxtaposed pick-up probe*" that mates the antenna of a communication device to a transmission line. '858 patent, 1:62-2:3 (emphasis added). The communication device is placed "close to the probe" (*id.* at 3:20-26), and any "further communication device" is added "in juxtaposition with a further probe" (*id.* at 3:32-33). Similarly, in another embodiment, a "pick-up probe," "broadband probe," or "coupling probe" is present in the alleged invention's "focal area." *Id.* at 2:8-40. And the transmission line begins at a "pickup probe" (*id.* at 2:41-43) or "a coupling probe" (*id.* at 2:54-58, 3:20-30). The exclusive reference to a juxtaposed "probe" rather than any "first RF antenna" is continued in the Figures and the "Description of the Preferred Embodiments," which describe a "pick-up coupling probe," a "broadband probe," a "pick-up probe" and a "coupling probe" that is shown juxtaposed to a communication device. *See, e.g., id.* at 4:23-28; 4:35; 4:41; 4:62-67; 5:5; 5:13-15; 5:24-27; Figs. 1B, 2A, 2B, 4. In each of these descriptions, the probe is what couples, mates or communicates with the personal communication device and links the communication device to the transmission line. *Id.* at 4:12-5:31.[8]

"[T]he claims cannot be of broader scope than the invention that is set forth in the specification." *On Demand*, 442 F.3d at 1340; *see also, e.g., Wang Labs. Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1382-83 (Fed. Cir. 1999) (construing a claim term that could include two types to be limited to the one type that was described in the specification). If the "first RF antenna" is construed to be something other than a juxtaposed probe, there is a lack of description of the first RF antenna such that the claims would be invalid under 35 U.S.C. § 112, ¶ 1 for failure to comply with the written description requirement. "[C]laims are not properly

---

[8] Consistent with this, U.S. Patent No. 5,711,014 (which was incorporated by reference into the '858 patent, *see* '858 patent, 1:7-16) specifically states that "[t]he probe 30" may also be comprised of various components "which are arrangeable **in close proximity** to the antenna 22 [on the personal device], for transmission to and from the external antenna 54." '014 patent, 4:44-49 (Koh Decl. Ex. 7) (emphasis added).

construed to have a meaning or scope that would lead to their invalidity for failure to satisfy the requirements of patentability." *Wang*, 197 F.3d at 1383.

At the very least, the Court should make clear that the probe/antenna is juxtaposed or in close proximity to the antenna on the personal communication device. In addition to all of the statements in the '858 and related patents regarding the juxtaposed nature of the probe, the prosecution history confirms that the probe must be in close proximity to the antenna on the personal communication device. For example, during the prosecution of related U.S. Patent No. 6,112,106, the examiner concluded that "the probe requires **close proximity** to the antenna which is attached to the body of the phone." '106 patent prosecution, Sept. 2, 1999 Office Action at 7 (Koh Decl. Ex. 8) (emphasis added). The patentee never disputed the examiner's characterization of the invention. Also, during the prosecution of related U.S. Patent No. 6,594,471, the patentee argued that they "were the first to invent the use of an antenna in a **close positioning** with a coupling plate connected to and in combination with a further transmission line." '471 patent prosecution, Apr. 3, 1998 Amend. at 11 (Koh Decl. Ex. 4) (emphasis added).[9]

Requiring the first RF antenna to be a juxtaposed probe also comports with the purpose of the invention, which, as explained above, is to "control and restrict the radiative emission from the communication device." '858 patent, Abstract. The specification states that "[e]xtraneous radio frequency emission has become a serious concern" and that "RF radiation is considered a potential carcinogen," thus necessitating the invention of a system that passes along an RF signal while "minimiz[ing] any radiation." *Id.* at 1:22-26, 1:47-53. This purpose of the invention could not be served by allowing RF radiation to be dispersed from communication devices to distant probes, which would proliferate radiation. For all these reasons, one of skill in the art, particularly one familiar with the prosecution history, would read "first RF antenna" or "first RF antennae" as requiring the juxtaposed probe(s) disclosed in the specification.

---

[9] As explained above, the prosecution history of the related patents that led to the '858 patent are relevant to claim construction. *See, e.g., Verizon*, 503 F.3d at 1306.

### E.    The "Communications Link" Is a Transmission Line.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "a communications link between said at least one of said first RF antenna ... and said at least one second RF antenna ..." (Claim 1, 7 and 13) | a transmission line connecting the FIRST RF ANTENNA to the second RF antenna | "Arranged to control a communications link" (Claim 1), "operating a control computer in a communications link" (Claim 7) and "placing a computer in a communications link" (Claim 13) all mean connected to affect the ability to transmit information between two or more points.<br><br>"Communications link" means any connection or series of connections, wired or wireless, that enable communications. |

The specification of the '858 patent never uses the term "communications link." Nevertheless, all of the independent claims require there to be a "communications link" between the "first RF antenna" and the "second RF antenna." The only thing in the specification that is described as connecting the "probe" (which, as explained above, is the only structure that can be the "first RF antenna") to the second RF antenna is a wired "transmission line." *See, e.g.,* '858 patent, 2:41-43 (describing "a control unit in the transmission line from the pickup probe to the further remote antenna."); 5:27-31 ("A transmission line 78 . . . extends from the probe within the focal area, to a further remote antenna 80 mounted outside of the structure . . . ."); *see also, e.g.,* 1:62-2:3; 2:47-3:2; 3:13-26; 4:67-5:6; Figs. 1B, 2A, 2B, 3A, 3B, 4. Defendants' proposed construction, which makes clear that a "transmission line" connects the first RF antenna to the second RF antenna, is thus in keeping with the teachings of the patent.

The claim language is explicit that the "communications link" is between the first and second RF antennas. Yet, plaintiff's proposed construction appears to read this spatial relationship out of the claims. Moreover, plaintiff's constructions find no support in the '858 patent; nowhere does the patent indicate that the communications link or transmission line "transmit[s] information between two or more points." And plaintiff's contention that the communications link can be "any connection or series of connections, wired or wireless, that enable communications" is directly contrary to the teaching of the patent, which, as explained above, makes clear that the communications link is a wired transmission line.

### F.    The "Control Computer" Is Located In the Vehicle or Local Environment.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "control computer" (Claims 1-4, 7-9 and 13) | a programmable device, without limitation as to how it is programmed, that is located in the passenger vehicle per claims 1-4, in the local environment in an aircraft per claims 7-9, and in the LOCAL RF RESTRICTED ENVIRONMENT per claim 13 | a data processing device that exercises restraint or directly influences some other device |

The specification of the '858 patent does not contain the term "control computer." Instead, the specification explains that the allegedly inventive "docking system" may contain a computer as part of a "control unit." Every discussion of this control unit makes clear that the control unit and its computer are attached to the transmission line connecting the first RF antenna to the second RF antenna, and therefore are located **inside** the passenger vehicle or other local environment. For example, the specification explains that a "further embodiment of the present invention includes a control unit in the transmission line from the pickup probe to the further remote antenna" and that "[t]he control unit may comprise a filter or switch connected to a computer. " *Id.* at 2:41-44. The specification also states that "[t]he transmission line may have a control unit therein" and explains that the "control unit may comprise a computer arranged to monitor time or use of the docking system." *Id.* at 3:3-7. The '858 patent further explains that "[a] yet further embodiment of the present invention includes a control unit 60, connected into the transmission line 62." *Id.* at 5:3-4; *see also id.* at 5:6-13 (further discussing "control unit 60" that is connected to "transmission line 62" and explaining that the control unit may have various components "connected to a computer 68"); Figs. 3A, 3B ("control unit 60" with "computer 68" attached to "transmission line 62"). These brief passages are the entirety of the disclosure in the '858 patent regarding the claimed control computer.[10] The specification never suggests that the control computer can be located anywhere other than connected to the transmission line in the

---

[10] The specification mentions a "control unit" in two other places, but these discussions do not state that the control unit is connected to or comprises a computer. *See* '858 patent, 3:30-41, 5:32-40. Regardless, these passages also specify that the "control unit" is attached to the transmission line. *Id.* at 3:30-32 ("The method may include attaching a control unit to the transmission line . . . ."); 5:32-34 ("A control unit 82 . . . may be arranged in communication with the transmission line 78 . . . ."); Fig. 4 ("control unit 82" attached to "transmission line 78").

passenger vehicle or local environment. The claims should not be construed more broadly than the invention described in the specification. *See, e.g., On Demand*, 442 F.3d at 1340.

Defendants' proposed construction also appropriately makes clear that the control computer is a "programmable device, without limitation as to how it is programmed." As explained in Defendants' Motion For Summary Judgment of Invalidity, neither the claims nor the specification provides any disclosure regarding the programming of the "control computer" or how it is to accomplish any of its claimed functions.

Plaintiff's construction should be rejected because it once again finds no support in the patent and only serves to inject ambiguity. For example, what does it mean for a data processing device to "exercise restraint" or "directly influence" another device?

### G. "Control a Communications Link" and "Controlling RF Signals" Are Incapable of Construction.

The limitations "control a communications link" (claim 1), "controlling said RF signals" (claim 7), and "controlling said RIF signals" (claim 13) make those claims indefinite and impossible to properly construe. Neither the claims nor the rest of the '858 patent indicates what this means, much less how the control computer goes about "controlling" the RF signals of personal communication devices. To satisfy 35 U.S.C. § 112, ¶ 2, the scope of the claims must "be sufficiently definite to inform the public of the bounds of the protected invention... . Otherwise, competitors cannot avoid infringement, defeating the public notice function of the patent claims." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). The definiteness requirement is vitally important, in part so that one can have confidence in making a non-infringing alternative design. *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 232 (1942) ("The inventor must inform the public during the life of the patent of the limits of the monopoly asserted, **so that it may be known which features may be safely used or manufactured without a license and which may not**.") (quote omitted) (emphasis added).

The claim terms directed to "controlling" a communications link or RF signal in the '858 patent do not serve the vital function of particularly defining the invention so that one can design

around it. Rather, "control" or "controlling" are terms that describe the product purely in terms of an indefinite function. *Id.* at 234 (holding indefinite claims that recited only "inaccurate suggestions of the functions of the product"); *Halliburton*, 514 F.3d at 1255 (stressing that the "use of functional language can fail to provide a clear-cut indication" of the scope of the claim).

As in *United Carbon*, the specification here lends no help because it too describes "controlling" solely in terms of function. *See* 317 U.S. at 234-36 (holding that the specification cannot render a claim definite where "the description in the specification is itself almost entirely in terms of function"). The '858 patent talks of controlling the communications link or the RF signal *in terms of function*, for example using a computer: (a) to "control system functions, or act as a regulator for multiple users;" (b) "to permit regulation of signals being transmitted through the transmission line;" or (c) "to maintain frequency control functions, or to act as a regulator for multiple users." '858 patent, 2:45-47; 3:3-5; 5:11-12. Even the "control unit" discussed in the specification does not take on a definite structure, but rather "*may comprise* a filter, switch, amplifier, attenuator, combiner, splitter, or other type of frequency converter," leaving the possibilities virtually endless. *See id.* at 5:6-8 (emphasis added); *see also id.* at 5:32-40 (listing additional control unit possibilities "such as attenuators, heterodyne converters, amplifiers, bandpass filters, switches, or the like."). Even considering the additional disclosures in the specification, then, the meaning of "control" or "controlling" involves an undetermined structure from a non-exhaustive list performing one or more of a non-exhaustive list of pure functions. Such a claim cannot stand. In addition to failing to meet the definiteness requirement for patentability, this type of broad, functional claiming makes it impossible to meaningfully construe the "control a communications link" and "controlling said RF signals" limitations.

### H.    The Claims Require Controlling RF Signals Traveling Between the Personal Devices and the Second RF Antenna and Distinguish "Use" From "Time."

Claims 1, 3, 7 and 13 of the '858 patent contain numerous terms directed to controlling RF signals sent "between" personal communication devices within the local environment and the second RF antenna radiating outside of said local environment. These claims also contain

numerous terms directed to controlling the "use and time," "limiting the time," "control[ling] the time" and/or "bill[ing] for the time" that the personal communication devices are enabled to communicate with the distant communication system. *See* Koh Decl. Ex. 2 at pp. 5-7 (setting forth claim terms and Defendants' proposed constructions).  Defendants' proposed constructions for these terms make clear that, based on the plain language of the claims themselves, the claims require RF signals to be traveling from the personal communication devices to the second RF antenna.  Defendants' proposed constructions for the "time" portions of these limitations are also based on the language of the claims and give distinct meanings to the words "time" and "use."  Plaintiff's proposed constructions, by contrast, ignore the fact that RF signals have to be traveling from the personal communication devices to the second RF antenna and seek to blur the distinction between time and use, thereby ignoring the plain language of the claims.

   "Time" and "use" are different concepts and each must be accorded its own meaning. *See, e.g., Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (holding that because the terms "pusher assembly" and "pusher bar" were used in the same claim clause, "the plain meaning of the claim will not bear a reading that [they] are synonymous").  The specification discloses a "computer arranged to monitor **time or use** of the docking system." '858 patent, 3:6-7 (emphasis added).  Claim 1, however, requires that the control computer control **both** "use **and** time." *Id.* at 5:67 (emphasis added).  Dependent claim 3 focuses only on the "time" portion and makes clear that what is being billed for is not the "use" of the system, but rather the amount of time, i.e., the number of seconds, minutes, or hours, that the communication devices are enabled to transmit or receive RF signals through the system.

   In contrast to claim 1, claim 7 addresses the concept of "time" only and requires the step of "limiting the time said … devices may be utilized to communicate wirelessly by an RF signal."  Claim 9 adds the concept of "use" by requiring "regulating use of multiple wireless … devices located within said local environment, by said control computer."  Likewise, claim 13 addresses only "time" and requires the step of "limiting the time said RF signals are sent between said … devices within said RF restricted environment and said second RF antenna radiating

16

outside of said RF restricted environment." The concept of "use" is added in dependent claim 15: "billing for use of any ... communication devices utilized within said RF restricted environment." Comparing the plain language of claim 15 with that of claim 3 makes clear that plaintiff understood the distinction between "time" and "use" and the distinction between billing for time, i.e., billing for an amount of time and simply billing for use. Plaintiff is now conflating "use" and "time" in an attempt to read the "time" requirement out of its claims because it knows that Defendants have contended that the accused system is not time based. Plaintiff goes so far as to propose that "to bill for the time" in claim 3 means "to charge money for use of the system." But the language of the patent does not support plaintiff's position.

In contrast to plaintiff's proposed constructions, Defendants properly give the word "time" a meaning distinct from "use." They also construe the entirety of the claim clauses to preserve their meaning and context.

I.    **An RF Restricted Environment Requires More Than Signal Attenuation.**

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "local RF restricted environment, which environment is selected from the group consisting of: an automobile, a building, an elevator, an airplane, or a desk " (Claim 13) | an automobile, building, elevator, airplane or desk that provides a barrier that interferes with sending or receiving RF signals | an automobile, building, elevator, airplane, or desk, to or from which entering or escaping RF energy is attenuated |

The specification never uses the term "RF restricted environment," but it explains that an object of the alleged invention is to "permit" an RF signal from a personal communication device "to reach its intended destination such as a communications network or satellite, without interfering with other electrical equipment and **in spite of interfering walls of buildings or structure** and/or or other electrical equipment." '858 patent, 1:37-46 (emphasis added). The patent also explains that the alleged invention can be used to "overcom[e] the **barriers such as buildings and vehicles** in which such [portable communication] devices might otherwise be utilized, that would **interfere with the flow of signals transmitted.**" *Id.* at 5:41-47 (emphasis added). And the patent refers to using a personal communication device in a "**shielded room.**"

*Id.* at 5:16 (emphasis added). In other words, the patent explains that certain environments restrict RF signals from entering or exiting the environment and that something is needed to permit RF signals from within the environment to reach their intended destination. Consistent with the specification, defendants propose that an RF restricted environment is an environment (among the specified ones) that provides a barrier that interferes with the flow of RF signals.

The fact that certain automobiles, buildings, elevators, airplanes or desks – or portions thereof – can be an RF restricted environment does not mean that they all are. But that is the import of plaintiff's proposed construction. Under plaintiff's construction, any environment that "attenuates" RF signals qualifies as an "RF restricted environment." However, the walls of every automobile, building, elevator, airplane, or desk attenuate RF energy. Plaintiff's construction thus ignores the specification and reads the word "restricted" out of the claims. Plaintiff knew how to broadly claim an environment that merely attenuates RF signals – they did so in claims 1 and 7 that require a "passenger vehicle" and a "local environment in an aircraft," respectively. Plaintiff chose a more restrictive term in claim 13 and should be held to its own word choice.

### J.     The "Shield" Restricts Undesired Travel of Wireless RF Signals.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "RF signal shield arranged therein to restrict undesired travel of a wireless RF signal transmission within said passenger vehicle" (Claim 6) and similar terms from Claims 10, 12 and 14 | a shield located in the passenger vehicle to restrict undesired travel of wireless RF signals within the passenger vehicle | "RF signal shield" (Claim 6), "shielding" (Claims 10 and 14), "RF signal shielded area" (Claim 12) and "RF shielding" (Claim 14) all mean: anything that attenuates electromagnetic fields in certain directions of propagation to reduce interference with other signals or electrical circuits. |

Defendants' proposed constructions of the "shielding" limitations from dependent claims 6, 10, 12 and 14 should be adopted because they are consistent with the specification of the '858 patent and the language of the claims, which requires the shield to be located within the passenger vehicle or local environment to restrict undesired travel of wireless RF signals within the vehicle or environment. As explained above and in Defendants' Motion for Summary Judgment of Invalidity, the problem the inventors of the '858 patent were attempting to solve,

namely, avoiding the unwanted travel of RF radiation within a specified environment due to its potentially carcinogenic effects, is clearly laid out in the patent. *See, e.g.*, '858 patent, 1:22-26. To avoid the unwanted travel of RF radiation, the '858 patent describes placing a portable communication device into a "docking system" that contains a "shield" and a "juxtaposed pick-up probe" so that RF radiation is only transmitted within the shielded area between the portable device and the probe and does not radiate throughout an entire environment, such as an aircraft or other vehicle. *See, e.g., id.* at 1:62-2:40; 4:4-55; 5:41-43.

 The '858 patent makes clear that the "shield" restricts undesired travel of RF radiation within the specified environment:

> The invention thus comprises a docking system for connecting a portable communication device to a further signal transmission line . . . **the system comprising a shield for restricting at least a portion of any radiation** from the externally radiative antenna of said portable communication device . . . .

*Id.* at 2:48-54 (emphasis added). *See also, e.g., id.* at 3:26-30 ("The method may include **arranging the shield in or on a generally planar work surface so as to restrict the propagation of at least a portion of the radiation** emanating from the communication device primarily only to the vicinity of the probe."); 4:29-33 ("**a shield 24** placed on/in the desk 14, (or room, vehicle or building, as shown in FIGS. 3a and 3b), **to prevent the radiation (electromagnetic/microwave) emanating from that communication device 12 from traveling in any undesired directions within the desk, room, vehicle or building"**) (emphasis added).

 In contrast to Defendants' constructions, plaintiff's construction finds no support in the patent. Under plaintiff's construction, anything that attenuates an electromagnetic field, including a seat or a person, qualifies as a shield. But that is not contemplated by the alleged invention and its goal of "minimizing the detrimental effects of radiation from common portable communication devices to their users." '858 patent, 5:41-43. Indeed, in U.S. Patent No. 5,711,014, which is a patent in the chain of patents that led to the '858 patent and which was incorporated by reference into the '858 patent ('858 patent, 1:7-16), the inventors stated that the

shield is "arranged to confiningly contain radio frequency energy." '014 patent, 3:41-42 (Koh

Decl. Ex. 7). But now that plaintiff is asserting its patent against a system that lacks any real

shielding, the claimed shield, according to plaintiff, no longer "confines;" it merely "attenuates."

Plaintiff's construction also fails to take into account the complete phrases from the

claims, which make clear that the shield is used to restrict travel of RF radiation "*within*" the

passenger vehicle or local environment. The "shield" cannot be anything that merely attenuates

electromagnetic fields and cannot be the outer wall of the environment itself because that would

not restrict the travel of RF radiation within the environment – it would only prevent radiation

from escaping from the environment.

### K.     Communicating an RF Signal Means Transmitting or Receiving the Signal.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| " at least one first RF antenna arranged within said passenger vehicle to **communicate an RF signal** wirelessly with said personal computer communication device" (Claim 1) | at least one FIRST RF ANTENNA arranged within the passenger vehicle to wirelessly transmit an RF signal to, or receive an RF signal from, the PERSONAL COMPUTER COMMUNICATION DEVICE | "To communicate an RF signal" means to transmit information by way of radio-frequency electromagnetic waves.<br><br>"To communicate" means to successfully transmit a message to an intended receiver and vice versa. |
| "**wirelessly communicating RF signals** between a radiative RF antenna of said variety of personal communication devices and said at least one first RF antenna" (Claim 7) and a similar term from Claim 13 | wirelessly transmitting or receiving RF signals traveling between A RADIATIVE RF ANTENNA of the PERSONAL COMMUNICATION DEVICES and at least one FIRST RF ANTENNA | "Wirelessly communicating wireless RF signals" means transmitting indications of information from one point to another without wires by way of radio-frequency electromagnetic waves. |
| "enable **RF signal communication**" (Claim 13) | Allow an RF signal to be transmitted or received | allow transmission of indications of information by way of radio-frequency electromagnetic waves |

Defendants' proposed constructions for these terms are based on the language of the

claims and the specification. As explained in Sections II.A and II.C, the patent makes clear that

"communicating RF signals" means transmitting or receiving RF signals. *See* '858 patent, 2:26-

28; 4:50-53; 5:24-27. And, as reflected in Defendants' constructions, the claim limitations

specify which components the RF signal is traveling between when it is being transmitted or

received.  Plaintiff ignores the words of its claims and tries to morph the claims from involving the communication of "RF signals" to involving only the transmission of "information," "indications of information" or "a message."  Plaintiff's attempt to rewrite its patent on the fly should be rejected.

**L.    "Filter" and "Switch" Require Operation On RF Signals.**

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "filter or switch communication of said personal computer communication devices within said passenger vehicle and said distant communication system outside of said passenger vehicle"  (Claim 2) | either (a) selectively allowing some RF frequencies to pass while blocking other RF frequencies; or (b) selecting between RF signals from one PERSONAL COMPUTER COMMUNICATION DEVICE and RF signals from another PERSONAL COMPUTER COMMUNICATION DEVICE | "Filter or switch communication" and "filtering said RF signals" both mean separates communication based on specified criteria or selectively makes or breaks connections. |
| "filtering said RF signals sent between said radiatively communicative wireless personal RF communication devices within said local environment and said second antenna"  (Claim 8) | selectively allowing some RF frequencies to pass while blocking other RF frequencies as they travel from the WIRELESS PERSONAL RF COMMUNICATION DEVICES within the local environment to the second RF antenna, or vice versa | |

The specification of the '858 patent explains that "[t]he control unit 60 may comprise a **filter, switch**, amplifier, attenuator, combiner, splitter, **or other type of frequency converter**, connected to a computer 68."  '858 patent, 5:6-8 (emphasis added).  The "or other type of frequency converter" language makes clear that, like the other components listed, the filter and switch work with RF frequencies.  The specification also discloses other examples of control units, such as "attenuators, heterodyne converters, amplifiers, bandpass filters, switches, or the like."  *Id.* at 5: 32-33.  A bandpass filter is a type of filter that allows only frequencies within a particular band to pass while blocking frequencies outside of that band.  *See* Koh Decl. Ex. 9 (American Heritage College Dictionary at 111 (4th ed. 2002) ("bandpass filter" means "[a] filter designed to transmit only a specified band of electromagnetic frequencies")).  Defendants' proposed construction of "filter" is thus consistent with the specification, including the specific example of the bandpass filter.  Consistent with the specification, Defendants' construction also

makes clear that "switching" in claim 2 requires switching RF signals.

Plaintiff's proposed construction, by contrast, is not supported by the patent. There is no disclosure of any mechanism that "separates communication based on specified criteria." Rather, as explained above, the patent only discloses various types of components that operate on RF signals. Further, the term "specified criteria" itself is undefined and would confuse the jury. It is not clear what the criteria are, and the specification does not disclose any examples of such criteria. In addition, plaintiff improperly conflates the "filter or switch" limitation in claim 2 with the "filtering said RF signals" limitation in claim 8, which does not require switching.

### M.    Claim 4 Requires "Monitoring" RF Signals.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "monitoring of wireless RF communication between said personal computer communication devices … and said distant communication system"  (Claim 4) | monitoring wireless RF signals traveling from PERSONAL COMPUTER COMMUNICATION DEVICES to the distant communication system, or vice versa | "Monitoring" means keeping track of. |

Dependent claim 4 requires that the "control computer enables the monitoring of wireless RF communication between [the] personal computer communication devices . . . and [the] distant communication system." In other words, as set forth in Defendants' construction, the claim itself makes clear that the control computer monitors wireless RF signals traveling from the personal communication devices to the distant system, or vice versa. Just construing "monitoring" to mean "keeping track of," as plaintiff proposes, would ignore the context of the claim itself.

### N.    "Regulating Use" Means Permitting or Not Permitting Use.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "regulating use of multiple wireless personal RF communication devices" (Claim 9) | permitting or not permitting the WIRELESS PERSONAL RF COMMUNICATION DEVICES to be used | "Regulating use of" means directing, according to one or more rules, the use of a communications link. |

The specification indicates that there is a limit on how many users can communicate through the system at one time and that the control computer regulates which user(s) are allowed to use the system. *See, e.g.*, '858 patent, 2:44-47 ("The computer may . . . act as a regulator for

multiple users of the antenna coupling system."); 5:8-13 ("The computer 68 may be arranged to…act as a regulator for multiple users of the antenna coupling system 10."). Defendants' proposed construction should therefore be adopted because it makes clear that regulating use of multiple personal communication devices means permitting or not permitting devices to be used. Plaintiff's proposed construction ignores the context of the claim, is unsupported by the specification and injects ambiguity and confusion.

    **O.**    **Plaintiff's Attempt To Construe Numerous Terms That the Jury Can Understand Without a Construction Should Be Rejected.**

        **1.**    **Construction Of Plain English Words Would Only Confuse The Jury.**

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "A system for enabling communication" (Claim 1) | a system for enabling communication | a set of interconnected elements that provide an opportunity for the transmission of information from one point to another |
| "a distant communication system" (Claim 1) | a distant communication system | a remotely located communication system |
| "each" (Claim 1) | Each | every one of two or more considered distinctly from the rest |
| "having" (Claim 1) | having | contain as a constituent part |
| "at least" (Claims 1, 7, 10-14, 17) | at least | at a minimum |
| "wirelessly" (Claims 1, 3, 7, 13) | wirelessly | without wires |
| "a satellite" (Claim 5) | a satellite | a communications satellite |
| "laptop computer" (Claim 11)   "personal laptop computer" (Claim 17) | laptop computer   personal laptop computer | a portable personal computer |
| "spaced-apart and non-touching" (Claim 13) | spaced-apart and non-touching | physically separate |

Plaintiff proposes constructions for a variety of common English words as set forth in the above chart. None of these non-technical terms requires construction. As explained above, the Federal Circuit has made clear that where, as here, words in a claim can be understood in their ordinary sense, it is proper to rely on their ordinary meanings without further construction. *See, e.g., Mentor*, 244 F.3d at 1380; *Biotec*, 249 F.3d at 1349. Moreover, plaintiff's proposed constructions, which find no support in the '858 patent and many of which inject legalese into common English words, should be rejected because they would only serve to confuse the jury.

For example, a juror could reasonably be expected to know what "each" and "having" mean, but he or she is likely to be confused about what "every one of two or more considered distinctly from the rest" and "contain as a constituent part" mean. Similarly, construing "distant communication system" to be one that is "remotely located" does not provide any clarity. And the jury can understand what "a satellite" is without further guidance from the Court.[11] A court should use claim construction to provide "meaningful" instructions that "can be understood and given effect by the jury." *Sulzer Textil, A.G. v. Picanol N.V.*, 358 F.3d 1356, 1365 (Fed. Cir. 2004); *see also, e.g., Control Res., Inc. v. Delta Elecs., Inc.*, 133 F. Supp. 2d 121, 127 (D. Mass. 2001) (claims should be construed "into plain English so that a jury will understand"); *MacNeill Eng'g Co. v. Trisport, Ltd.*, 126 F. Supp. 2d 51, 56 (D. Mass. 2001) ("[T]he claim construction obligation in [a jury] case involves…teaching the chosen construction to the jury in language that will inform the jury in plain English the legal framework it must apply in order to do justice."). None of the terms listed above require construction for the jury to understand them.

### 2. Plaintiff Attempts To Put An Inappropriate Gloss On The Commonly Understood Terms "Aircraft" and "Airplane."

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "aircraft" (Claims 1, 7)<br><br>"airplane" (Claim 13) | aircraft<br><br>airplane | An aircraft is any machine supported for flight in the air by buoyancy or by the dynamic action of air on its surfaces, especially powered airplanes, gliders, and helicopters. |
| "located within a passenger vehicle" (Claim 1)<br><br>"arranged within said passenger vehicle" (Claim 1)<br><br>"within a local environment in an aircraft" (Claim 7) | located within a passenger vehicle<br><br>arranged within said passenger vehicle<br><br>within a local environment in an aircraft | Inside an aircraft capable of carrying people.<br><br>An aircraft is any machine supported for flight in the air by buoyancy or by the dynamic action of air on its surfaces, especially powered airplanes, gliders, and helicopters. |

As with the terms discussed above, the jury can understand the common terms "aircraft" and "airplane" without construction by the Court. Plaintiff asserts that the terms mean the same

---

[11] Plaintiff's proposed construction for "satellite" should also be rejected because nothing in the specification or claims of the '858 patent supports reading the term "communications" into the term "satellite."

thing, but they do not. An "aircraft" is any "machine or device that is capable of atmospheric flight," while an "airplane" is a specific type of aircraft, namely, "[a] winged vehicle capable of flight, generally heavier than air and driven by jet engines or propellers." *See* Koh Decl. Ex. 9 (American Heritage Dictionary College Dictionary at 29). Plaintiff's proposed construction of "aircraft" is too narrow, presumably to try to exclude certain types of aircraft in the prior art, and its proposed construction of "airplane" is too broad – an "airplane" is not a glider or helicopter. Similarly, plaintiff's construction of the "passenger vehicle" phrases should be rejected because it reads "located" and "arranged" out of the claim terms and improperly limits the term "passenger vehicle" to plaintiff's proposed construction of "aircraft."

### 3.    The Claims Make Clear What the "Second RF Antenna" Is.

| CLAIM TERM | DEFENDANTS' POSITION | PLAINTIFF'S POSITION |
|---|---|---|
| "second RF antenna" (Claims 1, 7, 8, 13) | Phrases regarding the "second RF antenna" should be considered as a whole and do not require construction. For example, the phrase "second RF antenna arranged to radiate outside of said passenger vehicle" from claim 1 should be considered as a whole and does not require construction. | a radiative RF antenna distinct from the RF antennae associated with described personal communication devices and distinct from the first RF antenna |
| "arranged to radiate outside of said passenger vehicle" (Claim 1) | | emits RF electromagnetic waves outside of the aircraft |

Plaintiff's proposed, separate constructions of "second RF antenna" and "arranged to radiate outside of said passenger vehicle" should be rejected. Contrary to plaintiff's assertion, the "second RF antenna" is not just any radiative RF antenna that is not on a personal communication device and that is not the "first RF antenna." When read as a whole, as it should be, the claim language itself makes clear what the second RF antenna is. For example, claim 1 requires "at least one second RF antenna arranged to radiate outside of said passenger vehicle to wirelessly communicate with said distant communication system located outside of said passenger vehicle." '858 patent, 5:58-61. Claim 7 similarly requires "arranging at least one second RF antenna radiating outside of said passenger vehicle" and claim 13 requires "arranging at least one second RF antenna radiating outside of said local RF restricted environment." *Id.* at 6:35-37; 7:23-24. None of these phrases require construction to be clear to the jury.

Dated:   August 4, 2009

OF COUNSEL:
David T. Pritikin
Email:  dpritikin@sidley.com
Thomas D. Rein
Email: trein@sidley.com
Stephanie P. Koh
Email: skoh@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL  60603
Tel: 312-853-7000
Fax: 312-853-7036

Tung T. Nguyen
Email: tnguyen@sidley.com
**SIDLEY AUSTIN LLP**
717 N. Harwood, Suite 3400
Dallas, Texas 75201
Tel: 214-981-3300
Fax: 214-981-3400

_/s/ Mark D. Smith_
Mark D. Smith, BBO#542676
Email: smith@laredosmith.com
Marc C. Laredo, BBO#543973
Email: laredo@laredosmith.com
**LAREDO & SMITH, LLP**
15 Broad Street, Suite 600
Boston, MA  02109
Tel: 617-367-7984
Fax: 617-367-6475


**ATTORNEYS FOR DEFENDANTS DELTA AIR
LINES, INC. AND AIRCELL LLC**

### CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

August 4, 2009

_/s/ Mark D. Smith_
Mark D. Smith, BBO#542676