IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMBIT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 09-10217-WGY |
| v. | ) | |
| | ) | |
| DELTA AIR LINES, INC. and | ) | |
| AIRCELL LLC, | ) | |
| | ) | |
| Defendants. | | |

## PLAINTIFF AMBIT CORPORATION'S REPLY BRIEF TO DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

Hamilton, Brook, Smith & Reynolds, P.C.
Brian T. Moriarty (BBO# 665995)
brian.moriarty@hbsr.com
David J. Thibodeau, Jr. (BBO# 547554)
david.thibodeau@hbsr.com
David J. Brody (BBO# 058200)
david.brody@hbsr.com
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:  (978) 341-0136

GESMER UPDEGROVE, LLP
Lee T. Gesmer (BBO# 190260)
lee.gesmer@gesmer.com
Joseph J. Laferrera (BBO# 564572)
joe.laferrera@gesmer.com
40 Broad Street
Boston, Massachusetts  02109
Telephone:    (617) 350-6800
Facsimile:    (617) 350-6878

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    SUMMARY OF DEFENDANTS' CONSTRUCTION ERRORS ...................................1

    A.    Defendants Do Not Put Forth Any Evidence to Demonstrate the
        Understanding of a Person Having Ordinary Skill in the Art.................................1

    B.    Defendants Improperly Construe Entire Claim Phrases, Including
        "Common English" Terms that Do Not Require Construction ..............................3

    C.    Defendants Arbitrarily Seek to Import Limits from the Specification and
        Ignore Limits Explicitly Recited in the Claims.....................................................4

    D.    Defendants Arbitrarily Use or Ignore the Prosecution History of the '858
        Patent and Related Patents....................................................................................5

    E.    The Proposed Claim Constructions in Defendants' *Markman* Brief are
        Inconsistent with the Constructions from their own Preliminary Invalidity
        Contentions...........................................................................................................6

II.   AMBIT'S RESPONSES TO SPECIFIC CLAIM CONSTRUCTION POSITIONS
      OF THE DEFENDANTS ................................................................................................7

    A.    "Personal Communication Devices" and "Distant Communication
        Systems" Are Not Part of the Claimed System or Method ...................................7

        1.    "Personal" Is Not Vague and Is Capable of Definition ..............................9

        2.    "External" is Impermissibly Imported from the Specification and
            Not Required by the Prosecution History.....................................................9

    B.    Radio Frequency ("RF") Does Not Include Infrared or Acoustic
        Frequencies..........................................................................................................11

    C.    The Control Computer Is Not Necessarily Limited to Only One Area of an
        Aircraft.................................................................................................................12

        1.    The "Communications Link" May Be More Than a Transmission
            Line............................................................................................................13

        2.    "Control a Communications Link" and "Controlling RF Signals"
            Are Not Incapable of Construction............................................................14

        3.    Control Use and Time................................................................................15

        4.    "Filter" and "Switch" Are Not Limited to "RF Filter" and "RF
            Switch" .....................................................................................................16

      D.     The "Local RF Restricted Environment" of Claim 13 is Defined, As A
Matter of Law, as a Markush Group.................................................................17

III.     CONCLUSION .................................................................................................18

## TABLE OF AUTHORITIES

### Cases

*Aqua-Aerobic Sys. Inc. v. Aerators Inc.*, 211 F.3d 1241 (Fed. Cir. 2000) ........................1

*Aro Mfg. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961)..............................3

*Ashland Oil Inc. v. Delta Resins & Refracs. Inc.*, 776 F.2d 281 (Fed. Cir. 1985) ..........5

*Dayco Prods. Inc. v. Total Containment Inc.*, 258 F.3d 1317 (Fed. Cir. 2001) ...............1

*E.I. duPont & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430 (Fed. Cir. 1988)...............4

*E-Pass Techs. v. 3Com Corp.*, 343 F.3d 1364 (Fed. Cir. 2003)......................................4

*Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281 (Fed. Cir. 2001)................3

*Glaxo Inc. v. Novopharm, Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997) ...................................4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008)...........3

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ...........................10

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................2

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) ...........................4

*Transco Prods. v. Performance Contracting*, 38 F.3d 551 (Fed. Cir. 1994)..................11

### Statutes

35 U.S.C. § 120 .................................................................................................................11

### Other Authorities

Merriam-Webster Online Dictionary, *available at* http://www.merriam-
webster.com/dictionary/personal..............................................................................9

ROGET'S 21ST CENTURY THESAURUS (3rd Ed.). *Available at*
http://thesaurus.reference.com/browse/utilize.........................................................15

Plaintiff AMBIT Corporation ("AMBIT") submits its Reply Brief according to Local Rule 16.6 and the Court's Scheduling Order. AMBIT maintains its position on claim construction issues set forth in its Preliminary *Markman* Brief, also filed on August 4, 2009 ("AMBIT's Opening Brief"). This Reply Brief is split into two sections. The first section addresses errors committed by Defendants throughout their Opening *Markman* Brief. The second section addresses errors that are specific to the construction of individual terms.

## I.    SUMMARY OF DEFENDANTS' CONSTRUCTION ERRORS

The Defendants commit several legal and technical analysis errors throughout their Opening *Markman* Brief, dated August 4, 2009 ("Defendants' Opening Brief"), which are set forth below.

### A.    Defendants Do Not Put Forth Any Evidence to Demonstrate the Understanding of a Person Having Ordinary Skill in the Art

The Defendants fail to provide any evidence to support their constructions as being those of a "person having ordinary skill in the art." Expert testimony is often useful to clarify the patented technology and to explain its meaning through the eyes of experience. *See Aqua-Aerobic Sys. Inc. v. Aerators Inc.*, 211 F.3d 1241 (Fed. Cir. 2000). Defendants rely solely on attorney argument. *See* Defendants' Opening Brief and Declaration of Attorney Stephanie Koh. Such a reliance is fatally flawed because claim construction is determined from the point of view of a person having ordinary skill in the art and not from the viewpoint of counsel. *See Dayco Prods. Inc. v. Total Containment Inc.*, 258 F.3d 1317 (Fed. Cir. 2001).

By contrast, AMBIT submitted the Declaration of D. Richard Brown, Ph.D. in Support of AMBIT Corporation's Preliminary *Markman* Brief ("Brown Decl.") with its Opening Brief. In his declaration, Dr. Brown explains that a person having ordinary skill in the relevant art is a person with a bachelor's degree in Electrical Engineering and at least a few years of experience

designing wireless communication devices and/or systems. *See* Brown Decl. ¶ 6. Dr. Brown has

a Ph.D. in Electrical Engineering and is well-qualified to interpret claims from the perspective of

a person of ordinary skill in the art at the time of the February 20, 1996 priority filing date. Dr.

Brown provides constructions for the terms at issue based on this perspective.

Thus, AMBIT has construed the claims of the '858 Patent as required under *Philips v.*

*AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), by construing terms from the claims according to,

in order of importance: their plain meaning; their meaning in the context of other claims; their

meaning in the context of the specification; their meaning in the context of the prosecution

history; and their meaning in the context of extrinsic evidence. In each instance, AMBIT's

proposed construction is fully supported by Dr. Brown's construction according to the

perspective of a person having ordinary skill in the art.

Defendants reliance on lawyer argument for their proposed constructions results in

serious interpretive errors of the technology and of the specification. For example, Defendants

erroneously construe the term "RF signal" to mean "any signal capable of wireless

transmission." *See* Declaration of Benjamin P. Hurwitz, Esq. in Support of Plaintiff AMBIT

Corporation's Preliminary *Markman* Brief ("Hurwitz Decl.") ¶ 10, Ex. I. This definition

includes signals that clearly are not "radio frequency" signals, such as acoustic or infrared

signals. A person having ordinary skill in the art would have readily understood that RF has a

specific meaning with respect to the electromagnetic spectrum. Because Defendants do not offer

a construction from the perspective of such a skilled person, their proposed constructions are

unreliable and should not be accepted by the Court. *See* Brown Decl. ¶¶ 12 and 38.

**B.      Defendants Improperly Construe Entire Claim Phrases, Including "Common English" Terms that Do Not Require Construction**

The Defendants further err by trying to construe entire claim phrases rather than the specific claim terms at issue.  As stated in AMBIT's Preliminary Markman Brief at page 4, the Court's role is not to interpret whole unparsed phrases of the patent claims for some overarching meaning or "gist."  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351,1360-1363 (Fed. Cir. 2008) (consistently referring to a Court's duty to determine both the *meaning* and *scope* of "claim terms" and "words"); *see also Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1297 (Fed. Cir. 2001) ("there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of an invention") (citing *Aro Mfg. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344-45 (1961)).

The Defendants admit that "common English words" do not require constructions and instead a jury should rely on their ordinary meanings.  *See* Defendants' Opening Brief at page 23.  Yet they themselves insist on construing entire claim phrases that include many "common English words."  For example, Defendants insist on construing "a communications link between said at least one of said first RF antenna . . . and said at least one second RF antenna . . . ." as one entire phrase, requiring construction of words such as "between."  *See Id.* at page 12.  By contrast, AMBIT proposes construction of individual technical terms such as "communications link,"[1] "first RF antenna,"[2] and "second RF antenna"[3] and leaves the remainder of the words in this claim phrase for the finder of fact to apply according to their ordinary meanings.  Clearly, a jury should be able to rely on the ordinary meaning of words like "between."

---

[1] *See* AMBIT's Opening Brief at pages 14-16.
[2] *See* AMBIT's Opening Brief at 12-14.
[3] *See* AMBIT's Opening Brief at Appendix A, page 27.

For the foregoing reasons, Defendants' attempts to construe entire claim phrases that include "common English words" should not be accepted by the Court.

### C.     Defendants Arbitrarily Seek to Import Limits from the Specification and Ignore Limits Explicitly Recited in the Claims

In many instances, the Defendants erroneously import limitations from the specification into the claims to support their proposed constructions. Limitations appearing in the specification but not recited in the claim should not be read into the claim. Adding an extraneous limitation appearing in the specification to the claims is improper. *E-Pass Techs. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003); *see also E.I. duPont & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1434 (Fed. Cir. 1988). Unless the specification requires a limitation, that limitation should not be read into the claims. *See Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988). An example from Defendants' Opening Brief is Defendants' construction of "first RF antenna," which they construe as necessarily being "juxtaposed" with the antenna of a personal communication device. *See* Defendants' Opening Brief at pages 9-11. But the word "juxtaposed" does not appear in any of the claims. Also, as AMBIT points out in its brief, not every embodiment disclosed in the '858 Patent requires juxtaposed antennae. *See* AMBIT's Opening Brief at pages 13-14. Because "juxtaposed" is not recited in any claim and is not a limitation required by the specification, it should not be imported from the specification into the claims without good reason.

On the other hand, where it apparently suits their purpose, Defendants also improperly read explicit limitations out of the claims, presumably to broaden the scope of the claims to make them more susceptible to attack on the grounds of anticipation or obviousness. This tactic is wrong because all claim limitations are presumed to be material. *See Glaxo Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1566 (Fed. Cir. 1997). *See also Ashland Oil Inc. v. Delta Resins & Refracs.*

*Inc.*, 776 F.2d 281, 295 (Fed. Cir. 1985). An example is their treatment of the phrase "RF" (short for "radio frequency"). On page 9 of their Brief, the Defendants argue that a "statement about the RF spectrum is unnecessary and adds confusion to the claim term." This argument must fail on its face because the claims consistently and frequently recite "RF antennas" and "RF signals." Defendants have construed "RF signal" to mean "any signal capable of wireless transmission," *see* Defendants' Preliminary Claim Construction Chart, presumably in an attempt to broaden the claims to include non-RF signals, like acoustic or infrared signals, that might render the claims susceptible to attack by prior art.

**D.    Defendants Arbitrarily Use or Ignore the Prosecution History of the '858 Patent and Related Patents**

The Defendants also selectively use the prosecution history to support their proposed constructions in some instances and ignore the prosecution history in others. Worse yet, the Defendants make incomplete reference to the prosecution history to reach invalid conclusions. For example, the Defendants state that the "first RF antenna" <u>must</u> be "juxtaposed" with the antenna of a personal communication device merely because "the examiner [in related U.S. Patent No. 6,112,106 (" '106 Patent")] concluded that 'the probe requires close proximity to the antenna.'" *See* Defendants' Opening Brief at page 11. This argument is misleading because the examiner was actually discussing aspects of a cited prior art reference and <u>not</u> the'106 Patent.[4] Additionally, Defendants' other argument at page 11, that AMBIT supposedly "never" disputed the examiner's characterization of the invention as requiring "close proximity" of the probe and antenna, simply is not true. A complete review of the prosecution history of the '106 Patent

_____

[4] The office action states: "However, Frye does not disclose that the coupling probe is attached to the receiving housing. Nonetheless it would have been obvious to attach them since the (sic) both the coupling and the receiving support would inherently be adjacent to each other. This is so because the probe requires close proximity to the antenna which is attached to the body of the phone that is supported by the receiving support. *See* Koh Decl. Ex. 8 at page 7.

-5-

shows that in the Notice of Allowance, the examiner characterized the relationship between the probe of the invention and the antenna of the personal communication device as, *inter alia*, "closely-spaced apart." *See* Second Declaration of Benjamin P. Hurwitz, Esq. in Support of Plaintiff AMBIT Corporation's Reply *Markman* Brief ("Second Hurwitz Decl.") ¶ 2, Ex. K. However, AMBIT then subsequently objected to this characterization and requested that the "closely-spaced apart" language (and other characterized limitations) be removed, and the examiner agreed to this request. *See Id.*

Additionally, the Defendants fail to point out that the claims of the '106 Patent were quite different from the claims of the '858 Patent at issue here. The claims of the '106 Patent require "aligning an elongated, linear, radiative coupling probe adjacent said receiving support and in an adjacent, parallel, closely spaced-apart and offset relationship." *See* '106 Patent at col. 5, lines 32-34. The claims of the '858 Patent have no such limitation.

The Defendants also tend to ignore the prosecution history when it does not support their proposed claim construction. For example, Defendants want to construe "first RF antenna" to be limited to a "probe." *See* Defendants' Opening Brief at pages 9-11. However, the Defendants fail to notice that in prosecuting U.S. Patent No. 6,885,845 (" '845 Patent"), AMBIT amended the claims to change "probe" to "antenna" and explicitly stated that a "probe is in fact an antenna." The United States Patent and Trademark Office ("USPTO") then accepted this amendment and remark before issuing the '858 Patent. *See* AMBIT's Opening Brief at page 13.

### E.    The Proposed Claim Constructions in Defendants' *Markman* Brief are Inconsistent with the Constructions from their own Preliminary Invalidity Contentions

The Defendants' proposed claim constructions are, in some instances, inconsistent with the positions they take in their Preliminary Invalidity Contentions, filed on June 12, 2009. For example, Defendants propose construing "first RF antenna" to be a "first RF probe that is

juxtaposed with the radiative RF antenna [of the personal communication device]." *See* Defendants' Opening Brief at pages 9-11. However, in the Preliminary Invalidity Contentions, Defendants cite several references as "disclos[ing] at least one first RF antenna arranged within said passenger vehicle to communicate an RF signal wirelessly with said personal computer communication devices." *See* Defendants' Preliminary Invalidity Contentions ("Invalidity Cont.") at App. B, page 12.[5] Defendants cite to a portion of a reference that states ". . . only <u>one base station . . . appropriately fixed to the ceiling . . . is enough to cover the cabin of a wide body aircraft</u>." *See Id.* Clearly, Defendants are not applying a "juxtaposed" limitation to the "first RF antenna" in their infringement contentions. Thus, it is apparent that the Defendants embraced one claim construction for "first RF antenna" to bolster their invalidity contention and yet embraced a wholly inconsistent claim construction for the same term in their *Markman* Brief.

In sum, the Defendants' Claim Construction is not reliable because it is not guided by accepted principles of claim construction, but instead is based loosely on Defendants' hope for litigation expediency.

## II.    AMBIT'S RESPONSES TO SPECIFIC CLAIM CONSTRUCTION POSITIONS OF THE DEFENDANTS

### A.    "Personal Communication Devices" and "Distant Communication Systems" Are Not Part of the Claimed System or Method

The Defendants, without the aid of an expert, reach several erroneous legal conclusions and ignore the plain language of the claims to conclude that the preambles, the "personal communication devices," and the "distant communication system" are claim limitations of the claim in the '858 Patent.

First, the Defendants state that language in the bodies of independent Claims 1, 7, and 13 "explicitly refer back to the claim preambles." However, both the preambles and the bodies of

---

[5] *See* Second Hurwitz Declaration ¶ 3, Ex. L.

Claims 1, 7, and 13 refer to the "personal communication devices" and "distant communication systems" in a manner that provides context and explains the use of the claimed system. For example, the preamble of Claim 1 recites "[a] system <u>for enabling</u> communication from personal computer communication devices to a distant communication system" in the preamble and "at least one first RF antenna arranged . . . <u>to communicate</u> an RF signal wirelessly with said personal computer communication devices." Claim 1 recites the "personal computer communication device" only to describe how the claimed system is used – to provide connectivity between it and the distant communication system. Thus, the personal computer communication device is not a claim limitation.[6] Indeed, Defendants offer no explanation for why the "distant communication system," also recited in the preamble in a similar manner, should be considered part of the invention. The "personal communication devices" and "distant communication systems" recited in Claims 7 and 13 also are not claim limitations for the same reasons. *See* AMBIT's Opening Brief at pages 6-9.

Second, the Defendants' interpretation of the "personal communication devices" and the "distant communication systems" being claim limitations is contrary to the understanding of a person having ordinary skill in the art. Dr. Brown explains that "[w]hen describing a system for enabling communication between a device and a network, it is my understanding that the 'system' does not usually encompass the device and/or the network between which the system enables communication." *See* Brown Decl. ¶ 19. Clearly, the Defendants' failure to seek guidance from an expert leads to their erroneous interpretation. It also cannot escape notice that

---

[6] A hypothetical example helps to illustrate this point. Suppose a claim states "An apparatus for shining a shoe, comprising: . . . bristles to buff a shoe." No reasonable person would think that the claim includes the shoe as a limitation. Instead, the reasonable person would understand the shoe to not be a claim limitation and is included in the claim only to provide context for and the intended use of the apparatus.

Defendants' argument that the "personal communication devices" and "distant communication systems" are limitations of the claimed invention sets up a "divided infringement" defense where neither Aircell LLC or Delta Air Lines, Inc. would be liable for infringement. The Court should reject this interpretation that, for the foregoing reasons, lacks a solid factual (technical) and legal basis.

### 1.    "Personal" Is Not Vague and Is Capable of Definition

The argument on page 6 of Defendants' Opening Brief, that AMBIT's proposed construction of "personal" includes "private" is "hopelessly vague and ambiguous and not supported by the specification," is simply false. AMBIT's use of the word "private" comes from an ordinary meaning for the word "personal" taken from a dictionary; "intended for private use or use by one person."[7] *See* AMBIT's Opening Brief at page 10. This ordinary meaning is supported by the specification of the '858 Patent, which states that "[t]he hand-held devices should be portable for a user to carry in his pocket, yet able to use that same cellular unit in such vehicle or building . . . ." *See* '858 Patent at col. 1, lines 33-35. Dr. Brown similarly interprets "personal" as "designed for use by an individual" and not the public at large. *See* Brown Decl. ¶ 8. Clearly, a hand-held device designed to be carried around by a user in his pocket from place to place is "private" to that user. In contrast, a pay telephone that is only used by one person at a time is not "private" to any one individual.

### 2.    "External" is Impermissibly Imported from the Specification and Not Required by the Prosecution History

Defendants' proposed construction of "radiative RF antenna" attached to the personal communication devices is unreasonable because it imports the word "external" as a required location for the antenna of the personal communication device. It reads the prosecution history

---

[7] Merriam-Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/personal.

of the '858 Patent out of context to justify reading in this limitation from the prosecution history

of U.S. Patent No. 6,594,471 (" '471 Patent"), *see* Hurwitz Decl. ¶ 6, Ex. E, which claims

priority to the same original application as the '858 Patent, but which has quite different claims.

Claim 1 of the '858 Patent recites "said personal computer [communication] devices having a

radiative RF antenna." The word "external" is not present. By contrast, the claims of the '471

Patent" recite "an externally radiative antenna."

     According to the Defendants, the word "externally" in the '471 Patent cannot mean that

the antenna is "physically" external and instead only refers to the "direction of radiation." *See*

Defendants' Opening Brief at page 8. Defendants' argument appears to be that because

"externally" does not refer to the antenna being physically external, AMBIT's arguments

distinguishing over the "Phillips" prior art (U.S. Patent No. 4,740,794) during prosecution of the

'471 Patent is some sort of disavowal of any personal communication device with an internal

antenna. *See Id.* But Defendants' argument only applies if there is a <u>clear disavowal</u> of claim

scope in the prosecution history of the patent at issue. *See Omega Eng'g, Inc. v. Raytek Corp.*,

334 F.3d 1314, 1324 (Fed. Cir. 2003). In the prosecution history of the '471 Patent, both

AMBIT and the USPTO thought the term did refer to an external antenna. *See* Defendants'

Opening Brief at pages 7-8 ("arguing that Phillips 'does not even have an external antenna" and

"[n]o external antenna is placed next to a coupling plate . . . Such a requirement is necessary as

identified in Applicants' independent Claim 17.") The USPTO allowed the '471 Patent, so it

must have agreed that "externally radiative antenna" means an "external antenna." Therefore,

both AMBIT and the USPTO were discussing an express <u>claim</u> limitation in the '471 Patent

application instead of the <u>specification</u>.

Indeed, nowhere in the specification of the '858 Patent is there any explicit recitation of any "external" requirement for the antenna, and the claims of the '858 Patent do not explicitly require it. The USPTO allowed the '858 Patent over the same Phillips prior art discussed in the '471 prosecution, despite the lack of any "external" limitation in the '858 Patent's claims. A patentee is permitted to file broader claims in a subsequently-filed continuation application. 35 U.S.C. § 120[8]; *see also Transco Prods. v. Performance Contracting*, 38 F.3d 551, 555 (Fed. Cir. 1994) ("A 'continuation' application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed."). For the foregoing reasons, it is certainly not "clear" from the prosecution history that AMBIT disavowed any claim scope for all subsequent patent claims it might file related to systems for coupling personal communication devices to a remote communications system, regardless of where the antenna on such personal devices might be located.

### B.    Radio Frequency ("RF") Does Not Include Infrared or Acoustic Frequencies

Defendants urge the Court to believe that "[AMBIT's] statement about the RF spectrum [being between the infrared and acoustic portions of the electromagnetic band] is unnecessary and adds confusion." Defendants' statement defies the fundamental rules of claim construction.

---

[8] 35 U.S.C. § 120 states: "An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section. The Director may establish procedures, including the payment of a surcharge, to accept an unintentionally delayed submission of an amendment under this section."

The term "RF" is used extensively in the claims, e.g., "RF antenna" and "RF signal," and "RF communication device." As explained above in Section I.C., express limitations in the claims should not be ignored.

Defendants may have in mind a certain prior art reference that has been considered by the USPTO and is of record in the '858 Patent that discloses communication using non-RF signals, such as acoustic or infrared signals. The simple fact is that "RF" is used expressly and extensively in the claims to modify and limit several terms. Thus, those modified terms are limited to radio frequency communications. As described in AMBIT's Opening Brief (pages 21-22) and in Dr. Brown's declaration (¶¶ 12 and 38), no person having ordinary skill in the art thinks of infrared or acoustic signals as "radio frequency" signals. Thus, Defendants' proposed construction is improper and is another example of how their proposed constructions are unreliable because they have failed to interpret the claim terms from the perspective of a person skilled in the art.

### C. The Control Computer Is Not Necessarily Limited to Only One Area of an Aircraft

The Defendants erroneously construe "control computer" as, *inter alia*, being only "inside the passenger vehicle or other local environment." *See* Defendants' Opening Brief at page 13. Such a construction is without justification, in the first instance, because such a limitation is not explicitly recited in the claims. In the second instance, it is not inherent based on the disclosure of multiple embodiments in the specification. The specification of the '858 Patent actually shows embodiments in which the control unit is shown outside of a local environment. For example, FIGS. 3A and 3B show "rooms" (item 65) in a building as a local environment. The transmission line passes outside of the local environment to a distant antenna

(the second RF antenna of the claims). In both FIGS. 3A and 3B, the control unit and computer are shown as being "outside of" this local environment.

Claim 1 of the '858 Patent recites "a passenger vehicle" that is "an aircraft." Common sense clearly dictates that the control computer of Claim 1 is located somewhere onboard the aircraft to be coupled to the first and second RF antennae and the communications link. Likewise, Claim 13 defines a "local RF restricted environment" as being, among other things, an airplane. Again, common sense dictates that the control computer is somewhere onboard the airplane.

Defendants' proposed construction of the control computer being "in the local environment in an aircraft" in Claim 7 is erroneous. Claim 7 defines the local environment as being "in an aircraft." The plain meaning of "in an aircraft" means that the "local environment" of Claim 7 is not necessarily the entire aircraft. The "local environment," for example, may include only the passenger cabin portion of the aircraft and exclude non-passenger areas such as an aircraft cargo hold (for example, with analogy to the individual "rooms in a building" as shown in FIGS. 3A and 3B). In such a situation, the control computer may be located onboard the aircraft, but outside of the "local environment" within the aircraft, such as being located within the aircraft cargo hold. Therefore, Defendants' proposed construction with respect to Claim 7 is too narrow.

### 1. The "Communications Link" May Be More Than a Transmission Line

The Defendants' construction of communications link ignores portions of the specification to provide a narrow result that cannot be justified. According to the Defendants, "[t]he only thing in the specification that is described as connecting the 'probe' . . . to the second RF antenna is a wired 'transmission line.'" This argument by the Defendants is not true; at the

very least, Figures 3A, 3B, and 4 show the "thing" connecting the first and second RF antennae to include both a transmission line and a "control unit." The "control unit" is described elsewhere as including a switch, filter, frequency converter, heterodyne converter, modulator, or other components. *See* '858 Patent at col. 5, lines 6-8, 32-33, and 38. Since the claims describe the communications link as being "between said . . . first RF antenna . . . [and] second RF antenna," a person having ordinary skill would understand that the "communications link" would be anything that is between (connecting) the first and second RF antennae, including not just a transmission line wire but also other components such as switches, frequency converters, heterodyne converters, and modulators. Thus, Defendants' proposed construction is too narrow because it unnecessarily limits the claimed "communications link" to one embodiment when the claim does not include any explicit recitation of such a limitation.

### 2. "Control a Communications Link" and "Controlling RF Signals" Are Not Incapable of Construction

The Defendants' argument that the terms "control a communications link" and "controlling RF signals" are incapable of construction is erroneous. The claims and the specification of the '858 Patent provide sufficient information for a person having ordinary skill in the art to understand the bounds of what is claimed. The Defendants' first err by arguing that "the 'control unit' does not take on a definite structure." *See* Defendants' Opening Brief at page 15. This is plainly false because, as AMBIT's Opening Brief explains at pages 16-17, the specification provides an explanation of what a control computer is: "the computer component of a control unit." *See also* Brown Decl. ¶ 22. The Defendants' are also inconsistent with their own argument by specifically pointing out several types of control "structures," including filters, switches, amplifiers, attenuators, etc. *See* Defendants' Opening Brief at page 15. The Defendants also err by arguing that the phrases "control a communications link" and "controlling

said RF signals" are impossible to construe meaningfully. *See Id.* The specification provides numerous examples of a control computer and control unit connected to a transmission line, features that are quite understandable to one of skill in the art. *See* AMBIT's Opening Brief at pages 17-18.

### 3.    Control Use and Time

Defendants argue that the terms "time" and "use" are fully distinct and separate concepts. *See* Defendants' Opening Brief at page 16. Defendants' argument is wrong because while "time" and "use" can have distinct meaning, they also have overlapping meaning. Simply put, "time" and "use" cannot be completely divorced from one another because the claims link the two words together. Claim 1 recites "arranged to control use and time in which said personal computer communication devices are enabled to communicate. Claim 7 recites "limiting the time said . . . devices may be utilized[9] to communicate . . . ." Likewise, Claim 13 recites "[a] method of utilizing . . . limiting the time said RF signals are sent . . . ." In each instance, the plain meaning of the claims is to recite a time during which the personal communication devices may be used.

Furthermore, Defendants' proposed construction of "time" as either a "length of time" or "elapsed time" is too narrow because it unnecessarily and arbitrarily excludes ordinary and customary meanings of "time." AMBIT does not dispute that "length of time" or "elapsed time," as Defendants suggest, are two ordinary and customary meanings of "time." However, AMBIT's Opening Brief at page 9 explains that "time" has many other ordinary and customary meanings, including "an interval designated for a given activity that can be defined by events." *See also* Brown Decl. ¶ 33. Time should be construed to include all ordinary and customary

---

[9] "Utilize" is a synonym for "use." *See* ROGET'S 21ST CENTURY THESAURUS (3rd Ed.). *Available at* http://thesaurus.reference.com/browse/utilize.

meanings unless the specification or claims of the '858 Patent expressly disclaim certain ones of the meanings. The '858 Patent certainly does not disclaim the ordinary and customary "interval" meaning of "time" provided by AMBIT's Opening Brief; in fact, the specification supports such a meaning, stating "control the time in the vehicle in which the communication device may be utilized, for example, to limit certain times when such devices may be utilized in an airplane," a concept that does not necessarily involve "elapsed time." *See* '858 Patent at col. 5, lines 35-38.

### 4.    "Filter" and "Switch" Are Not Limited to "RF Filter" and "RF Switch"

Defendants argument that the "filter" or "switch" is limited to filtering or switching RF signals is erroneous for several reasons. First, Claim 2 does not recite switching RF signals; instead Claim 2 recites "said control computer operates to filter or switch communication of said personal computer communication devices within said passenger vehicle . . . ." The term "RF" is not a requirement of the "switch" and should not be read into it. Also, in their Preliminary Invalidity Contentions, Defendants argue that the Papavramidis reference anticipates this element, presumably because of the "switching" between network connections that a computer router performs. *See* Invalidity Cont. Ex. B at pages 37-38. Clearly, a router does not directly handle RF signals, instead working with "digital messages" at a communication protocol layer higher than the physical layer, such as the network layer. Defendants adopt one construction to support their invalidity contention and another, inconsistent one for their *Markman* Brief, supposedly to avoid infringement.

Finally, Dr. Brown points out in his declaration that a person having ordinary skill in the art does not understand the customary and ordinary meaning of "filter" or "switch" to be limited to only filtering or switching based on frequency. *See* Brown Decl. ¶ 53. This is yet another

example of where Defendants' lack of an expert providing the perspective of a person having ordinary skill in the art leads them to an erroneous construction.

### D.    The "Local RF Restricted Environment" of Claim 13 is Defined, As A Matter of Law, as a Markush Group

Defendants again attempt to import limitations from the specification into the claims when they argue that the "local RF restricted environment" in Claim 13 must "provide a 'barrier' that interferes with sending or receiving RF signals." *See* Defendants' Opening Brief at page 17. To be clear, Claim 13 does not recite a "barrier," whatever that might mean. The Defendants cite to specific examples from the specification in which buildings, walls, or rooms act as a barrier to signals. *See Id.* However, the Defendants ignore the fact that Claim 13 provides its own definition of "local RF restricted environment" in the form of a *Markush* group. *See* AMBIT's Opening Brief at page 24. The Markush group in Claim 13 explicitly defines the "local RF environment" as "an automobile, a building, an elevator, an airplane or a desk." *See* '858 Patent at col. 7, lines 14-16. This definition of "local RF environment" is also in accord with Dr. Brown's understanding of the term. *See* Brown Decl. ¶ 46.

Defendants' proposed *Markman* construction of this item illustrates yet another instance of their inconsistency with their Preliminary Invalidity Contentions. For example, Defendants state in their Invalidity Contentions that "Papavramidis discloses a method of utilizing a variety of different radiatively communicative wireless personal RF communication devices within a local RF restricted environment. *See* Invalidity Cont. at App. B, page 154. The Defendants also state that "[i]n addition, to the extent plaintiff asserts that this element is met because the accused system is installed in an aircraft for use in flight, Papavramidis discloses a system installed in an aircraft for use in flight." *See Id.* at App. B, page 155. Defendants do not cite any "barrier" in

Papavramidis and instead solely rely on the presence of an aircraft to cover the "local RF restricted environment."

Defendants also appear to actually agree with AMBIT's proposed construction of "local RF environment": "an automobile, building, elevator, airplane, or desk to or from which entering or escaping RF energy is attenuated." According to the Defendants, "the walls of every automobile, building, elevator, airplane, or desk attenuate RF energy." *See* Defendants' Opening Brief at page 18. This statement confirms that AMBIT's proposed construction is complete.

## III.    CONCLUSION

For the foregoing reasons, Defendants' proposed constructions are inappropriate and AMBIT respectfully requests that the Court to adopt its proposed claim constructions.

August 14, 2009                                    HAMILTON, BROOK, SMITH & REYNOLDS, P.C.


       /s/ Brian T. Moriarty
Brian T. Moriarty (BBO# 665995)
brian.moriarty@hbsr.com
David J. Thibodeau, Jr. (BBO# 547554)
david.thibodeau@hbsr.com
David J. Brody (BBO# 058200)
david.brody@hbsr.com
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:   (978) 341-0136

GESMER UPDEGROVE, LLP
Lee T. Gesmer (BBO# 190260)
lee.gesmer@gesmer.com
Joseph J. Laferrera (BBO# 564572)
joe.laferrera@gesmer.com
40 Broad Street
Boston, Massachusetts  02109
Telephone:    (617) 350-6800
Facsimile:     (617) 350-6878

*Attorneys for Plaintiff*

912620_1