

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMBIT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 09-10217-WGY |
| v. | ) | |
| | ) | |
| DELTA AIR LINES, INC. and | ) | |
| AIRCELL LLC, | ) | |
| | ) | |
| Defendants. | | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NONINFRINGEMENT, OR IN THE ALTERNATIVE,
INVALIDITY**



## TABLE OF CONTENTS

I.    THE GOGO SYSTEM INSTALLED BY AIRCELL ON DELTA AND OTHER
      AIRLINES' AIRCRAFT INFRINGES THE '858 PATENT ............................................. 1

      A.    The Passengers' Personal Devices Are Not A Part of the Claimed
            Invention and Defendants' "Divided Infringement" Argument Fails..................... 2

      B.    Aircell and Delta Do Direct or Control The Other And Also Each Separately
            Infringe At Least One Claim of the '858 Patent, And Defendants' Second
            "Divided Infringement" Argument Fails. ................................................................. 4

II.   THE GOGO SYSTEM CONTROLS THE TIME INTERVALS WHEN
      PASSENGER DEVICES MAY USE THE SYSTEM ....................................................... 7

      A.    The Gogo System is Switched On and Off According to Aircraft Events ............. 8

      B.    The Gogo System Also Controls Access Based on Defined Times ....................... 8

      C.    Access To "White List" Web Pages Is Limited To Certain Times Even
            When The Passenger Device Is In "White List" Mode. ......................................... 9

      D.    The Fact That There Is A "White List" Mode Is Irrelevant To The Fact That
            There Are Other Modes Of The Gogo System Where Time Is Controlled ............ 9

III.  THE GOGO SYSTEM INFRINGES THE "FIRST RF ANTENNA" ELEMENT
      OF THE CLAIMS OF THE '858 PATENT AND THE CLAIMS ARE
      NOT INVALID ................................................................................................................. 9

      A.    Whether The Gogo System Has An Antenna That Operates In the
            Near Field Or That Is Juxtaposed Is Irrelevant .................................................... 9

      B.    The Specification Of The '858 Patent Supports The Full Scope Of
            The Claimed "First RF Antenna" ........................................................................ 10

      C.    Defendants Fail To Make A Complete And Valid Case Of Obviousness ............ 11

            1.    Defendants Fail To Address Each Element Of Each Claim Of
                  The '858 Patent ........................................................................................ 11

            2.    Defendants Mischaracterize The "Official Notice" From The Separate
                  Patent Application ..................................................................................... 12

3.    The Official Notice Is Relevant To A Limitation In The Claims
Of The '471 Patent That Is Not Present In The Claims Of
The '858 Patent ........................................................................................ 14

4.    One Cannot Show Obviousness By Simply Pointing To Elements In
Separate References – Need Reason To Combine The References .......... 15

IV.    THE GOGO SYSTEM CONTROLS A COMMUNICATIONS LINK ........................... 16

A.    Defendants Solely Support their Position that "control a communications
link" is Indefinite By Attributing Defendants' Attorney's Question as the
Expert Testimony of Dr. Brown ......................................................................... 16

B.    Defendants' Support For Asserting Noninfringement of "control a
communications link" In Claim 1 Is Based Solely On The Opinion Of
Its Own Expert and Mischaracterizations of Plaintiff's Expert ............................ 17

V.    AN AIRPLANE IS A LOCAL RF RESTRICTED ENVIRONMENT ............................ 18

VI.    CONCLUSION .............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007)............................... 3, 4

*Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184 (1st Cir. 1997).................... 17

*Den norske Bank AS v. First Nat'l Bank*, 75 F.3d 49 (1st Cir. 1996) .......................................... 18

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ..................................................................................... 14

*Graham v. John Deere Co.*, 383 U.S. 1, 148 U.S.P.Q. (BNA) 459 (1966) .................................. 12

*Greenwood v. Hattori Seiko Co.*, 900 F.2d 238 (Fed. Cir. 1990) .................................................. 15

*Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575 (Fed. Cir. 1996)........................... 15

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000)............................................................................ 14

*In re Relafen Antitrust Litig.*, 360 F.Supp. 166 (D. Mass. 2005).................................................... 1

*In re Zurko*, 258 F.3d 1379 (Fed. Cir. 2001) ................................................................................ 14

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (U.S. 2007)............................................................... 17

*Level 3 Communications, LLC v. Limelight Networks, Inc.*, 630 F.Supp.2d 654
    (N.D. Ill. 2008)........................................................................................................................ 4, 5

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) .......................................... 3

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008)...................................... 1

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2009 U.S. Dist. LEXIS
    106795 (S.D. Cal. Nov. 13, 2009) ........................................................................................... 15

*Rockwell Int'l Corp. v. United States*, 147 F.3d 1358 (Fed. Cir. 1998) .......................................... 1

*Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924 (N.D. Ill. 2008) ......................................... 7, 8

*Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001)................................................................ 2

**Statutes**

35 U.S.C. § 103.......................................................................................................................... 12, 15

35 U.S.C. § 282................................................................................................................................ 12



**Rules**

Fed. R. Civ. P. 56(c)(2) .................................................................................................. 1

Manual of Patent Examining Procedure 2144.03 (8th Ed., Rev. 7) .................................... 14



## INTRODUCTION

Summary judgment only is proper if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "Summary judgment is not appropriate if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303 (Fed. Cir. 2008). The "moving party bears the burden of demonstrating the absence of genuine issues of material fact." *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998). Only after the moving party has satisfied its burden to demonstrate that there are no genuine issues of material fact, the non-moving party must identify evidence demonstrating a genuine issue of material fact. *See In re Relafen Antitrust Litig.*, 360 F.Supp. 166, 177 (D. Mass. 2005) (Young, C.J.) (internal citations omitted).

## ARGUMENT

### I.    THE GOGO SYSTEM INSTALLED BY AIRCELL ON DELTA AND OTHER AIRLINES' AIRCRAFT INFRINGES THE '858 PATENT

Aircell and Delta argue that summary judgment is appropriate under two different theories of divided infringement. First, defendants argue that there can be no infringement of the claims because neither Delta or Aircell control the passengers who use personal computers on aircraft with the Gogo System and therefore the infringement is not accomplished by one infringer only. As described below, this argument completely misses the mark because the claims of the '858 Patent do not require or include the airline passengers or the passengers' personal computers. Rather, the patented invention merely sends and receives communications to and from such devices.

Second, in a scant one-paragraph argument, which does not discuss the claims or undisputed material facts, Defendants assert that there can be no infringement by Delta or Aircell

-1-

because it has not been shown that "Delta or Aircell directs or controls the other."[1]  This

argument must fail because there is ample evidence to show that a) the individual conduct of

Aircell and Delta infringes the patent and b) both Aircell and Delta are fully cooperative partners

who jointly direct and control each other pursuant to the detailed terms of their contract and who

are actively and jointly working together to accomplish each and every step of infringement.

Each act of making, using, offering to sell, or selling is an independent act of infringement, and

"parties that make and sell an infringing device are joint tort-feasors with parties that purchase an

infringing device for use or resale…  Each joint tort-feasor is liable for the full amount of

damages (up to a full single recovery) suffered by the patentee… "  *Shockley v. Arcan, Inc.*, 248

F.3d 1349, 1364 (Fed. Cir. 2001) (internal citations omitted).

### A.    The Passengers' Personal Devices Are Not A Part of the Claimed Invention and Defendants' "Divided Infringement" Argument Fails

Defendants contend that neither Aircell nor Delta infringes any claims because "all

independent claims of the '858 Patent require individual customers."  *See* Defendants Summary

Judgment Memorandum ("D.I. 111") at 4.  Defendants argue that the "personal computer

communication devices" (Claim 1) and the "variety of personal communication devices" (Claims

7 and 13) are required elements of the claimed system and method, and that that only passengers

control these devices,[2] and seek to rely upon the Federal Circuit's recent pronouncements on

divided infringement.  *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed.

Cir. 2008) (method claim "is directly infringed only if each step of the claimed method is

performed" but noting that "a defendant cannot thus avoid liability for direct infringement by

having someone else carry out one or more of the claimed steps on its behalf."); *BMC Resources,*

---

[1] There is no claim that Aircell's infringing activity with other airlines precludes infringement.
[2] Claim 1 recites "personal computer communication device" and Claims 7 and 13 recite "radiatively communicative wireless personal RF communication devices."  Plaintiff is referring to these limitations together as "personal communication device."

*Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1376-77 (Fed. Cir. 2007) . Defendants' arguments are

unavailing and the cited cases are inapposite because the central premise of Defendants'

argument – "all independent claims of the '858 Patent require individual customers" – is wrong.

During claim construction proceedings in this case, Defendants sought a ruling that the

"personal communication devices" are claim limitations. *See Markman* Tr. at 35:20-22 and

40:14-16. (See, Declaration of Benjamin P. Hurwitz, Esq. in Support of Plaintiff's Opposition to

Defendant's Motion for Summary Judgment of Noninfringement, or in the Alternative,

Invalidity, hereafter "Hurwitz Decl.," Exh. 24. The Court declined to adopt this construction.

Thus, the claims as construed by the court do not include the airline passengers or the personal

communication devices of those passengers. Claim 1 recites ". . . at least one first RF antenna

arranged within said passenger vehicle <u>to communicate an RF signal wirelessly with said</u>

<u>personal computer communication devices</u> . . . ." '858 Patent at 5:55-57. The first RF antenna is

a structural element of the system needed to communicate to and from a "personal computer

communication device" and to provide connectivity between personal communication devices

and the distant communication system. Under that claim, no action or activity is required by the

passenger or the passengers' computer. Similarly, the method steps of "wirelessly

communicating RF signals" (Claim 7) or "wirelessly communicating wireless RF signals"

(Claim 13) focus on the actions performed by the first RF antenna.

This case is analogous to *Level 3 Communications, LLC v. Limelight Networks, Inc.*, 630

F.Supp.2d 654 (N.D. Ill. 2008). In *Level 3*, the Court denied a motion for summary judgment

based on a divided infringement theory because, contrary to the alleged infringers' arguments,

the claims focused on the actions of a single party, and thus the "jurisprudence regarding

infringement by multiple parties in *Muniaction* and *BMC* are inapposite." *Id.* at 661. In *Level 3*,

the patent claim described "a system that supports <u>delivery of information</u>, such as video, music,



games, and software, <u>to</u> computer users or computers on behalf of <u>subscribers</u>." *Id.* at 656.

Thus, the claims in *Level 3* were directed to a system that delivered information to a subscriber,

but the subscriber was found not to be part of the system. Likewise, the claims of the '858

Patent sends and receives RF signals to a passenger's personal device, but the passenger and his

device are not part of the system. In sum, the court's finding in *Level 3* is applicable here in that

the claimed steps of the '858 Patent "do not themselves appear to involve the actions by multiple

parties" because the '858 Patent claims focus on the steps performed by the Gogo system, not

airline passengers. *Id.* at 659. Accordingly, defendants' motion for summary judgment on this

ground must be denied.

**B.     Aircell and Delta Do Direct or Control The Other And Also Each Separately
Infringe At Least One Claim of the '858 Patent, And Defendants' Second
"Divided Infringement" Argument Fails.**

In a one-paragraph argument, Defendants half-heartedly seek summary judgment solely

on the premise that neither Aircell nor Delta is a direct infringer because they "are separate and

distinct entities" and that neither "directs or controls the other." D.I. 111 at 6. Defendants'

argument fails, first, because they have failed to set forth undisputable facts showing a lack of

control or that neither party, on its own, infringes each and every element of each Claim of the

'858 Patent. There are disputable facts as to whether Aircell and Delta exert control or direction

over one another. Second, the record shows that Delta and Aircell do control and direct each

other as full partners in the infringing activity. Third, Delta and Aircell each independently

infringe claims of the '858 Patent.



Aircell also has taken numerous steps that demonstrate its control over the entirety of the

system with respect to each of the airlines it contracts with.



Aircell holds a license from the Federal

Communication Commission ("FCC") for use of the air-to-ground radio links.

For

Aircell to claim that "Delta controls the 'arrangement' of antennas on its planes" is disingenuous

in light of such affirmative actions. *See* D.I. 111 at 6, n. 7. The facts show that both parties fully

exercise control of every significant aspect of the infringing Gogo system.

The facts of this case are analogous to those of *Rowe Int'l Corp. v. Ecast, Inc.*, 586

F.Supp.2d 924 (N.D. Ill. 2008). The patents in *Rowe* pertain to computer jukeboxes and

computer jukebox networks. *Id.* at 929-30. The defendants moved for summary judgment of

noninfringement on a divided infringement theory because multiple businesses worked on

different parts of the system. The Court held that the record "does not support the assertion that

no one of them makes, uses, or sells 'a complete jukebox system.'" *Id.* at 931. Because the

components of the system are supplied "under manufacturing and distribution contracts," "the

record includes indicia of direction and control by ECast over Rock-Ola and View." *Id.* at 931-

32. Just as Aircell and Delta regard each other as partners, "Ecast regarded View and Rock-Ola

as 'partners' that, pursuant to these manufacturing contracts, made jukeboxes specifically designed to operate with ECast's network service." *Id.* at 933.

Defendants have failed to allege the absence of a genuine issue of material fact, and therefore their motion should be denied.

## II.    THE GOGO SYSTEM CONTROLS THE TIME INTERVALS WHEN PASSENGER DEVICES MAY USE THE SYSTEM

Defendants have not met their burden of showing that there are no material issues of fact on the question of whether the Gogo system "limits the time" that a connection is made to enable the personal communication devices to communicate with the ground networks. Quite to the contrary, the only available facts indicate that under any interpretation of that definition, there is, indeed, controlling of time whether that definition involves (i) event-defined times or (ii) measured elapsed times.

The Defendants quote from the *Markman* hearing out of context to conclude that "time" in the '858 Patent refers to time intervals that must be measured in terms of "seconds, minutes or hours." That merely was a proposed definition by Defendants that was not adopted by the Court.[3] What the Court determined was that to control time means to "control the time interval when a personal computer communication device may use the system" (*See Markman* Tr. at 61:5-7) (Hurwitz Decl. Exh.24) – a ruling that rejected Defendants' originally proposed construction that limited the intervals to a specific measure of "hours, minutes or seconds."

According to its usual plain meaning and examples from Dictionary.com, the term "interval" means "a period of temporary cessation; pause: e.g., intervals between "the volleys of gunfire" -- in other words, the time between events rather than an exact measure of elapsed

---

[3] The portion of the Markman hearing that Defendants rely upon was the very beginning of discussion at the hearing, before the Plaintiff presented their position on the issue, and before Judge Young later acknowledged that "time" can also be defined by events rather than a measurement of elapsed time.   See *Markman* Hearing Tr. at pp. 47-48 (Hurwitz Decl. Exh.24).

████████████████████████████

time.[4]  This interpretation of "controlling time" is also most consistent with the open ended

language of the '858 Patent specification itself – which explains that the system limits "certain

times when such devices may be utilized in an airplane." *See, e.g.,* '858 Patent at 5:36-38.

(Hurwitz Decl., Exh. 1.)  There is no mention of measuring hours, minutes or seconds as the

elapsed time anywhere in the specification of the '858 Patent.  In fact, access to the Gogo system

is limited by both (A) events occurring in the airplane and (B) elapsed time.

    **A.**    **The Gogo System is Switched On and Off According to Aircraft Events**

    Defendants actually acknowledge that access is denied to passengers at certain times, that

is when the aircraft is below an altitude of 10,000 feet.  See D.I. 111 at 7, n. 8; Decl. of Patrick J.

Walsh ("D.I. 115") ¶ 11; Decl. of William R. Michalson ("D.I. 116") ¶ 3.████████████

████████████████  But further limitations on the times when passengers can access the

Gogo system are imposed by other requirements such as the Super Communications Assistance

for Law Enforcement Act (CALEA), which enables law enforcement to conduct electronic

surveillance on users of the system.  CALEA requires telecommunication carriers to "shut off

service to the entire plane or to its specific individuals or groups without shutting it off to air

marshalls" in emergency situations.  (Hurwitz Decl. Exh. 22).  Thus, the Gogo system also is

clearly limiting the access to the system to other certain events occurring in the airplane – when

it is not being shut down in an emergency.

    **B.**    **The Gogo System Also Controls Access Based on Defined Times**

    Defendants admit that access to the Gogo System is also limited according to the type of

pass that the passenger has purchased.████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

――――――――――――――――――――

[4] http://dictionary.reference.com/browse/interval.  (Hurwitz Decl. Exh. 34).



**C.    Access To "White List" Web Pages Is Limited To Certain Times Even When The Passenger Device Is In "White List" Mode.**

Defendants contend that providing passengers with free access to "white list" web pages

avoids infringement because there is no controlling times when such access is granted. ████

Also, such unpaid or free users still must register their devices with the system by logging

into the ACPU █████████████████████████████████

**D.    The Fact That There Is A "White List" Mode Is Irrelevant To The Fact That There Are Other Modes Of The Gogo System Where Time Is Controlled**

Even if there is a "free" mode where only white list websites can be accessed without

paying money, it is simply beside the point. There is another mode in which infringement does

occur in which passengers have paid for greater access. In this mode, access is limited to

specific time intervals, such as a flight segment, a day, or a month.

**III.    THE GOGO SYSTEM INFRINGES THE "FIRST RF ANTENNA" ELEMENT OF THE CLAIMS OF THE '858 PATENT AND THE CLAIMS ARE NOT INVALID**

**A.    Whether The Gogo System Has An Antenna That Operates In The Near Field Or That Is Juxtaposed Is Irrelevant**

In support of this ground for summary judgment of noninfringement, Defendants state

that the Gogo system's CWAP antennae are "not juxtaposed with" or do not operate in the "near

field" with the antennae of passengers' devices. These statements are irrelevant to the issue of

infringement because the phrase "near field" and the word "juxtaposed" do not appear in any claim of the '858 Patent, and the Court has not construed the claims to include these terms. Because Defendants have failed to set forth undisputable facts that show that the Gogo system is missing an element of each and every claim of the '858 Patent, its summary judgment motion on this ground must be denied.

### B. The Specification Of The '858 Patent Supports The Full Scope Of The Claimed "First RF Antenna"

Defendants contend that "if there is no limitation regarding where the 'first RF antenna' is located relative to the antenna on the personal communication device, then all of the claims are invalid for failing to comply with the written description requirement." D.I. 111 at 11. The claims do limit the location of the "first RF antenna" to being on an airplane, and the Court has recently construed the term "first RF antenna" in Claim 1 to be "located in effective proximity to the radiative RF antenna associated with personal communication device(s)."[5] Thus, the location of the first RF antenna is limited by the claims, and summary judgment is improper.

The Defendants also contend that "if the claims are broad enough to encompass a 'first RF antenna' that is not juxtaposed or in the near field of the antenna on the personal communication device, then there is no support in the specification for the full scope of the claims." D.I. 111 at 11. The Defendants allege that the '858 Patent requires a juxtaposed probe, and that the term "juxtaposed" is interpreted as meaning "side by side." But the '858 Patent includes embodiments in which the first RF antenna is located in a room and provides coverage to devices located anywhere in the room – and not necessarily "side-by-side" with a communications device. '858 Patent at Fig. 3B. (Hurwitz Decl., Exh. 1.) Dr. Brown has stated that "it certainly seems that one of ordinary skill in the art would look at Figure 3B and

---

[5] The Court has construed "first RF antenna" in Claims 10 and 14 to mean "located in close proximity to the radiative RF antenna associated with personal communication device(s)."

understand that the probe is intended to provide communication to a communication device anywhere within that room." Brown Dep. at 173:5-9. (Hurwitz Decl. Exh. 26). *See also Id.* at 137:10-13; 139:22 – 140:3; 172:23 – 173:9. Therefore, the specification supports the full scope of the claims and summary judgment should be denied.

C.    **Defendants Fail To Make A Complete And Valid Case Of Obviousness**

One must establish facts that present clear and convincing evidence for a legal conclusion of invalidity. *See* 35 U.S.C. § 282. To establish invalidity under 35 U.S.C. § 103, certain factual predicates are required before the legal conclusion of obviousness or nonobviousness can be reached. The underlying factual determinations to be made are (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of non-obviousness, such as commercial success, long-felt but unsolved need, failure of others, copying, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 148 U.S.P.Q. (BNA) 459, 467 (1966). Here, the Defendants have not proved the requisite factual findings and, accordingly, there is no basis for a finding of obviousness and summary judgment should be denied.

1.    **Defendants Fail To Address Each Element Of Each Claim Of The '858 Patent**

The Defendants state that "[i]f there is no limitation regarding where the 'first RF antenna' is located relative to the antenna on the personal communication device, then as a matter of law, all of the claims of the '858 Patent are also invalid as obvious." D.I. 111 at 12 (emphasis added). The Defendants analysis is erroneous because it only addresses a portion of each of the claims of the '858 Patent (instead of analyzing all elements of each claim as a whole) and, as such, cannot show that "all of the claims" are obvious. Also, while the Defendants make reference to some of the elements of independent Claims 1, 7, and 13, and dependent Claims 2,



3, 4, 8, 9, and 15, the Defendants have not even attempted to address the question of obviousness

for the remaining eight claims.

The Defendants contend that a paper by A.C. Papavramidis (Hurwitz Decl. Exh. 29)

discloses most of the claimed limitations, except for the claimed control computer functions.

The Defendants state that Dr. Brown, expert for the Plaintiff, agrees with their contentions, but

do not actually cite to any such statement by Dr. Brown.[6]  In fact, Dr. Brown has disagreed with

Defendants' assertions for several reasons.  For example, Dr. Brown disputed whether

Papavramidis discloses the personal computer communication devices, stating that there is no

disclosure "that an alleged laptop computer using the DECT system would be a radiatively

communicative wireless RF communication device, as construed by the Court."  *See*,

Supplemental Expert Report of D. Richard Brown, III, Ph.D., in Reply to the Expert Report of

William R. Michalson, Ph.D., Regarding Invalidity of Claims 1-17 of U.S. Patent No. 7,400,858

(hereafter "Brown Suppl. Expert Report") at ¶¶ 308 and 338, (Hurwitz Decl. Exh. 27) and that

there is no claimed "control computer" taught therein.

## 2. Defendants Mischaracterize The "Official Notice" From The Separate Patent Application

The Defendants attempt to show the control computer functions by mischaracterizing the

prosecution history of U.S. Patent No. 6,594,471 (the " '471 Patent").  The Defendants refer to

an Official Notice that was taken during prosecution of the '471 Patent.  The Defendants assert

that the Plaintiff admitted the Official Notice was prior art by not expressly arguing against it.

The examiner of the '471 Patent, however, never stated that he took the Official Notice to be

admitted prior art.  Case law and USPTO policy require the development of a clear factual

---

[6] The Defendants only state that "Dr. Brown's reports are designated Attorney Eyes Only" and that "Defendants will submit them under seal at the Court's request."  The Defendants could have submitted them and cited to specific statements by Dr. Brown, but have chosen not to. Thus, the mere general statement that Dr. Brown agrees with the Defendants should be disregarded.

record.  Under the Administrative Procedure Act (APA), courts review USPTO factual findings

for "substantial evidence."  *Dickinson v. Zurko*, 527 U.S. 150 (1999); *In re Gartside*, 203 F.3d

1305, 1314 (Fed. Cir. 2000).  "With respect to core factual findings in a determination of

patentability, however, the Board cannot simply reach conclusions based on its own

understanding or experience -- or on its assessment of what would be basic knowledge or

common sense.  Rather, the Board must point to some concrete evidence in the record in support

of these findings."  *In re Zurko*, 258 F.3d 1379, 1386 (Fed. Cir. 2001).  Thus, if the Examiner

takes Official Notice of a fact, "the examiner should clearly indicate in the next Office Action

that the common knowledge or well-known in the art statement is taken to be admitted prior art .

. . ."  MANUAL OF PATENT EXAMINING PROCEDURE 2144.03 (8th Ed., Rev. 7).  Also, in the '471

Patent application itself, the Board of Patent Appeals and Interferences ("BPAI") at the U.S.

Patent Office overturned the rejection supported by the Official Notice, effectively rejecting

what Defendants wrongly claim to be official notice of prior art.  *See* AIR 0022530-38.  (Hurwitz

Decl. Exh.17).  Therefore, summary judgment is improper.

The Defendants point to the current reexamination proceedings of the '858 Patent, in

which the Defendants asked the examiner to reject the claims in view of the alleged "Admitted

Prior Art" and Papavramidis to argue that the Patent Office acknowledges the Office Notice to

be prior art.  The examiner initially issued such a rejection, and the Plaintiff responded.[7]  This is

not acceptable as conclusive evidence of invalidity, however, because the "grant of a request for

reexamination, although surely evidence that the criterion for reexamination has been met, i.e.,

that a 'substantial new question of patentability' has been raised, 35 U.S.C. § 303, does not

---

[7] The Defendants also urge this court to believe that the use of the heading "Papavramidis &
Admitted Prior Art" by the Plaintiff in its office action response is somehow an admission that
the Official Notice was, indeed, admitted as prior art.  But as is the typical practice in patent law,
applicants and patentees often respond to an examiner's office action by repeating the headings
used by the examiner.  The Plaintiff did nothing more than refer to the heading used by the
examiner and made no admission of prior art.

establish a likelihood of patent invalidity." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78

F.3d 1575, 1584 (Fed. Cir. 1996). "[E]ven if the reexamination proceedings are somehow

relevant on the issues of obviousness or willfulness, they are nevertheless unfairly prejudicial …

because the reexamination proceedings before the USPTO are still incomplete and based solely

on the evidence provided by [the defendant] in its replacement request for reexamination."

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2009 U.S. Dist. LEXIS 106795 (S.D.

Cal. Nov. 13, 2009). *See also Greenwood v. Hattori Seiko Co.*, 900 F.2d 238, 241 (Fed. Cir.

1990) ("the fact that the examiner initially rejected [the] claims under 35 U.S.C. § 103 is not

proof of obviousness in the infringement action before the district court. Before issuing the

reexamination certificate, the examiner clearly withdrew his initial rejection"). Thus, the current

(and non-final) status of the reexamination cannot form the basis for summary judgment.[8]

> **3.      The Official Notice Is Relevant To A Limitation In The Claims Of The
> '471 Patent That Is Not Present In The Claims Of The '858 Patent**

The Defendants attempt to argue that the Official Notice in the '471 Patent's prosecution

history obviates the "controlling use and time" claim elements of the '858 Patent. However, the

Official Notice stated that a "telephone system having a control unit for monitoring the time

usage for billing purposes is notoriously well known in the art" (AIR 0022444-51) (Hurwitz

Decl. Exh. 38), which is not the same as "controlling use and time." The Official Notice was

---

[8] In addition, Dr. Brown stated that he does not interpret the Official Notice to be admitted prior art because, in part, the language used in the Official Notice is not the same as the language used in the claims of the '858 Patent, because the BPAI overruled the rejection based on the Official Notice, because the Official Notice was not even proper official notice as it was not a fact that was capable of instant and unquestionable demonstration as being well-known, and because the examiner of the '858 Patent did not reject the claims of the '858 Patent based on any such Official Notice. *See* Brown Suppl. Expert Report, ¶¶ 60-66. (Hurwitz Decl. Exh. 27).

concerned with <u>monitoring</u> of time for billing purposes, not <u>controlling</u> use and time of a

connection between a first and second antenna, as is the subject of the '858 Patent claims.[9]

Furthermore, viewing the claims of the '858 Patent as a whole, the element of "control

use and time" in Claim 1, for example, refers to the controlling of use and time in which

communication devices are enabled to communicate with a distant communication system,

which was not recited by the then-pending claims of the '471 Patent.[10]  For the reasons above, it

is wholly inappropriate to cherry-pick individual words and phrases from the claims of one

patent and apply them to different individual words and phrases, out of context, in a second

patent.  Therefore, summary judgment is not proper.

### 4.    One Cannot Show Obviousness By Simply Pointing To Elements In Separate References – Need Reason To Combine The References

Even if the Official Notice was admitted to be prior art and the Official Notice disclosed

the claimed control computer, the Defendants still have failed to put forth a *prima facie* case of

obviousness because they have not addressed each of the *Graham* factors.  For example, the

Defendants at least have not addressed the level of ordinary skill in the art and have not

considered objective evidence of non-obviousness.  The Defendants also have not provided any

reason why it would be obvious to one of ordinary skill, at the time of the invention, to combine

Papavramidis with the Official Notice to result in the claimed invention.  Rather, the Defendants'

---

[9] The Defendants attempt to infer that the Official Notice was the examiner's "shorthand" for some of the then-pending claim limitations of the '471 Patent.  The examiner's statement of Official Notice, however, did not specifically address each of the claim limitations and it is, thus, improper for the Defendants to infer that the Official Notice was "shorthand" for anything but that which it explicitly recited.  Such inferences in the Defendants' favor would be improper in summary judgment, where all such inferences should be made in favor of the non-moving party, here, the Plaintiff.

[10] Moreover, in each of the Defendants piecemeal comparisons, the Defendants state that the '471 fragments are <u>similar</u> to or are <u>encompassed by</u> the '858 fragments.  After making these flawed comparisons, the Defendants, with an apparent leap of logic, arrive at the conclusion that the "'858 Patent's claims are thus the <u>same</u> as the Admitted Prior Art" (emphasis added).  These claim fragments cannot be assumed to be the same, especially when taken apart from the remaining context of the claims.

proposed combination is merely the result of hindsight bias. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (U.S. 2007) ("A factfinder should be aware . . . of the distortion caused by hindsight bias . . . ."). Even if the Defendants choose to rely on the opinion of their expert, Dr. Michalson, in an attempt to show obviousness, the opinion of Dr. Brown refutes Dr. Michalson's position, and summary judgment on this issue is not proper. *See* Brown Suppl. Expert Report, ¶¶ 117-119. (Hurwitz Decl. Exh. 27). "[D]isagreements among experts are 'properly the subject of searching cross-examination' at trial." *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 191 (1st Cir. 1997). "At summary judgment, moreover, courts normally assume that the trier of fact would credit the expert testimony proffered by the nonmovant." *Den norske Bank AS v. First Nat'l Bank*, 75 F.3d 49, 58 (1st Cir. 1996).

## IV.    THE GOGO SYSTEM CONTROLS A COMMUNICATIONS LINK

Defendants move for summary judgment on Claims 1-6 on the ground that the Gogo system does not have a control computer "arranged to control a communication link" and, alternatively, that "control a communications link" is indefinite. This ground is only supported by opinions of Defendants' expert and by misquoting Plaintiff's expert and should be denied.

### A.    Defendants Solely Support their Position that "control a communications link" is Indefinite By Attributing Defendants' Attorney's Question as the Expert Testimony of Dr. Brown

Defendants' argument that "control a communications link" is indefinite is based solely on a quote allegedly attributable to Plaintiff's expert Dr. Brown. According to Defendants' Brief, Dr. Brown "has admitted that it does not 'make sense . . . to say that the control computer controls the transmission line itself.'" (*quoting* Brown Dep. at 197:20-23, 196:2-22, and 198:14-21). (Hurwitz Decl. Exh. 26). However, Defendants are actually quoting a question posed by Defendants' attorney, Thomas Rein. Furthermore, the transcript is clear that Dr. Brown understands "control a communications link" to mean "controlling . . . the signals passing

through the communications link." *See Id.* at 198:2-5. Thus, this ground for Defendants'

Motion for Summary Judgment should be denied.

> **B.    Defendants' Support For Asserting Noninfringement of "control a communications link" In Claim 1 Is Based Solely On The Opinion Of Its Own Expert and Mischaracterizations of Plaintiff's Expert**

Defendants' argument that there is "no evidence that the ACPU controls 'a transmission

line' as required by the Court's construction" is based solely on the unsupported opinion of its

own expert and on a mischaracterization of Plaintiff's expert's testimony. Defendants' expert,

Dr. Michalson, asserts that "[t]o the extent the lines connecting the various components of the

Gogo® system can be argued to be a transmission line, the ACPU does not control those lines."

D.I. 116 ¶ 30. Michalson's Declaration only offers his opinions and does not cite to any

documents or offer any facts to support this opinion.

Defendants also attempt to support their argument by taking Plaintiff's expert's

deposition testimony out of context. Defendants state that Plaintiff's expert, Dr. Brown "has

acknowledged that apart from controlling signals on the transmission line, he does not 'know

what the control computer would do to the transmission line.'" D.I. 111 at 18. However, this

quote is taken out of context. Earlier in the deposition, Dr. Brown testified that "control a

communications link" means "controlling . . . the signals passing through the communication

link." Brown Dep. at 198:2-5. (Hurwitz Decl. Exh. 26). The quote from Dr. Brown, cited above

by Defendants, was in response to a series of questions raised in which Defendants' Attorney,

Mr. Rein, specifically asked Dr. Brown to ignore the RF signals themselves ("Other than the RF

signals themselves, you haven't identified anything in the [communication link] that's being

controlled by the computer, right?"). *Id.* at 199:13-16.

Aircell itself has provided documents proving that the control computer, in fact, controls

the transmission lines. █████████████████████████████████████████



Defendants have failed to prove undisputable facts that the Gogo system's ACPU does not "control a communications link," and summary judgment should be denied.

## V.    AN AIRPLANE IS A LOCAL RF RESTRICTED ENVIRONMENT

Defendants move for summary judgment on Claims 13-17 on the ground that an aircraft in which the Gogo system is installed is not a "local RF restricted environment." Summary judgment is not appropriate here because the alleged facts upon which this ground is based are disputed.

Defendants misquote Dr. Brown as stating "I don't think anyone would say the skin of the airplane interferes with the [RF] signal." (*citing* Brown Dep. at 282:5-7). (Hurwitz Decl. Exh. 26). First, Dr. Brown did not say "RF signal," and Defendants' insertion of "[RF]" is inappropriate. Dr. Brown's answer is not addressing RF signals, but instead providing his

███████████████████████

personal experiences regarding the ability to make telephone calls and sending/receiving email

while onboard aircraft – not whether RF signals are interfered with or attenuated.  Second, the

Defendants only quote a portion of Dr. Brown's answer.  His full answer was:

> The skin of the airplane, even in the layman sense, I don't think
> anyone would say the skin of the airplane interferes with the
> signal.  The skin of the airplane attenuates the signal the same way
> the skin of an automobile might attenuate a signal.

Brown Dep. at 282:5-10.  (Hurwitz Decl. Exh. 26) (emphasis added)

 Defendants' argument that the skin of an aircraft does not interfere is also based on "lay

person" observations that cellular phones work onboard aircraft.  D.I. 111 at 20.  Based on the

Court's construction, these "lay person" observations are irrelevant to the issue of whether an

aircraft skin is a "local RF restricted environment."[11]  As the Court noted in the Markman

hearing in this case, a "barrier that interferes" does not necessarily mean that the signals are

completely blocked.[12]  Merely noting lay person observations that cellular phones work onboard

an aircraft does not mean that the aircraft skin is not a "barrier that interferes with sending and

receiving RF [e.g., cellular] signals."  Indeed, Defendants' own expert admits that cellular

telephones emit strong signals.  *See* D.I. 116 ¶ 32.

 Documents produced by both parties that show that the skin of an aircraft is a barrier that

interferes with RF signals passing through it.████████████████████

███████████████████████████████████

---

[11] The Court construed "local RF restricted environment" as "an automobile, building, elevator, airplane or desk that provides a barrier that interferes with sending or receiving RF signals. *Markman* Tr. at 52:9-12.  (Hurwitz Decl. Exh. 24).  The Court further explained that the barrier does not have to be an absolute barrier – the barrier only has to interfere.  *See Id.* at 53:4-16.
[12] The Markman Transcript includes an example of a "barrier that interferes" provided by the Court:
> Now, when I think of a barrier, a barrier could be that railing there in the courtroom.
> Now, that would interfere with my getting in and out from one area of the courtroom to
> the other, and so it is a barrier.  But I can do it.  I'm still limber enough to climb over it.
*Markman* Tr. at pg. 53, lines 6-10.  (Hurwitz Decl. Exh. 24)

▮▮▮▮▮▮ Plaintiff's Expert, Dr. Brown, cited a report by the Electronic Communication Committee that presents several experimental studies of aircraft hull attenuation at various RF frequencies. (Hurwitz Decl. Exh. 23). This information objectively proves that the skin of an aircraft is a "barrier that interferes" with RF signals.

For these reasons, Defendants have failed to set forth any undisputable facts in support of this ground for summary judgment, and summary judgment on this ground should be denied.

## VI.    CONCLUSION

As described in the foregoing sections, there are genuine issues of material fact. Therefore, Defendants' Motion for Summary Judgment should be denied.

January 12, 2010                           HAMILTON, BROOK, SMITH & REYNOLDS, P.C.


                                    /s/ Brian T. Moriarty
                                    Brian T. Moriarty (BBO# 665995)
                                    brian.moriarty@hbsr.com
                                    David J. Thibodeau, Jr. (BBO# 547554)
                                    david.thibodeau@hbsr.com
                                    David J. Brody (BBO# 058200)
                                    david.brody@hbsr.com
                                    Benjamin P. Hurwitz (BBO# 666337)
                                    benjamin.hurwitz@hbsr.com
                                    530 Virginia Road
                                    P.O. Box 9133
                                    Concord, Massachusetts 01742-9133
                                    Telephone:  (978) 341-0036
                                    Facsimile:   (978) 341-0136

                                    GESMER UPDEGROVE, LLP
                                    Lee T. Gesmer (BBO# 190260)
                                    lee.gesmer@gesmer.com
                                    Joseph J. Laferrera (BBO# 564572)
                                    joe.laferrera@gesmer.com
                                    40 Broad Street
                                    Boston, Massachusetts  02109
                                    Telephone:    (617) 350-6800
                                    Facsimile:    (617) 350-6878

                                    *Attorneys for Plaintiff*



## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2010, a true and complete copy of the foregoing

document was served upon the below-named counsel of record at the following addresses and in

the manner indicated:

Thomas D. Rein, Esq.                        **VIA ECF**
David T. Pritikin, Esq.                     **VIA ECF**
Stephanie P. Koh                            **VIA ECF**
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
    trein@sidley.com
    dpritikin@sidley.com
    skoh@sidley.com

Tung T. Nguyen, Esq.                        **VIA ECF**
SIDLEY AUSTIN LLP
717 N. Harwood, Suite 3400
Dallas, TX  75201
    tnguyen@sidley.com

Mark D. Smith, Esq.                         **VIA ECF**
Marc C. Laredo, Esq.                        **VIA ECF**
LAREDO & SMITH LLP
15 Broad Street
Suite 600
Boston, MA  02109
    smith@laredosmith.com
    laredo@laredosmith.com

             /s/ Lisa Woodbury
             Lisa Woodbury

950953_1