IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMBIT CORPORATION, | |
| Plaintiff, | Civil Action No. 1:09-CV-10217-WGY |
| v. | Jury Trial Demanded |
| DELTA AIR LINES, INC., AND AIRCELL LLC, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT, OR IN THE ALTERNATIVE, INVALIDITY**

# TABLE OF CONTENTS

Page(s)

Introduction...................................................................................................... 1

Argument. ......................................................................................................... 1

I.    Plaintiff Fails to Provide Evidence That a Single Party's Process or System Meets
All the Limitations of the Claims. ............................................................... 1

    A.    Passengers Indisputably Control Their Own Communications Devices,
And Plaintiff Cannot Save Its Claim By Rearguing Claim Construction................ 2

    B.    Plaintiff Fails Even To Allege That Delta Or Aircell Directs Or Controls
The Other, And Plaintiff's Infringement Contentions Involve Different
Actions By Each. ................................................................................ 4

II.    Plaintiff Fails to Provide Evidence That The Gogo® System Controls or Limits
the Time That Passengers' Devices Can Communicate with the Ground........................... 5

    A.    The Court Should Reject Plaintiff's Revisionist History Of The
Construction Of "To Control Time." ...................................................... 5

    B.    Plaintiff Cannot Dispute That Gogo® Allows Passengers' Devices To
Communicate With The Ground System Irrespective Of Time Intervals. .............. 7

III.    Gogo® Does Not "Control A Communications Link" As Required By Claims 1-6,
Or Alternatively, The Claims Are Indefinite. ...................................................... 9

IV.    An Airplane Is Not A "Local RF Restricted Environment." ........................................... 12

V.    Gogo ® Does Not Contain a "First RF Antenna," Or The Claims Are Invalid................ 14

    A.    Gogo® Does Not Contain A "First RF Antenna" Under The Court's
Current Constructions, Or The Claims Are Invalid For Failure To Comply
With The Written Description Requirement Of 35 U.S.C. § 112......................... 14

    B.    If The Court's Current Constructions Of "First RF Antenna" Do Not
Require The "First RF Antenna" And The Antenna On A Personal
Communication Device To Be Side By Side Or Close Enough To
Minimize Radiation, The Claims Are Also Invalid As Obvious Under 35
U.S.C. § 103............................................................................... 17

VI.    Conclusion ...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970).................................................................................1

*Akamai Techs, Inc. v. Limelight Networks, Inc.,*
    614 F. Supp. 2d 90 (D. Mass. 2009) ...............................................2, 4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
    239 F.3d 1343 (Fed. Cir. 2001) ......................................................3

*BMC Res., Inc. v. Paymentech, L.P.,*
    498 F.3d 1373 (Fed. Cir. 2007) ..................................................2, 4, 5

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.,*
    289 F.3d 801 (Fed. Cir. 2002) ......................................................2, 3

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..........................................................5, 11, 20

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n,*
    341 F.3d 1332 (Fed. Cir. 2003) ......................................................12

*Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.,*
    234 F. Supp. 2d 1139 (S.D. Cal. 2002)..........................................2

*Level 3 Communications v. Limelight Networks, Inc.,*
    630 F. Supp. 2d 654 (E.D. Va. 2008) ...........................................3

*Muniauction, Inc. v. Thomson Corp.,*
    532 F.3d 1318 (Fed. Cir. 2008) ..................................................2, 4, 5

*Overhead Door Corp. v. Chamberlain Group, Inc.,*
    194 F.3d 1261 (Fed. Cir. 1999) ......................................................16

*Shockley v. Arcan,*
    248 F.3d 1349 (Fed. Cir. 2001) ......................................................2

*WMS Gaming Inc. v. Int'l Game Tech.,*
    184 F.3d 1339 (Fed. Cir. 1999) ......................................................20

**STATUTES**

35 U.S.C. § 103.................................................................................................17, 20

35 U.S.C. § 112.............................................................................................14, 15, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(e)(2)...........................................................................................1

Local Rule 5.4(D) ......................................................................................................1

Manual of Patent Examining Procedure § 2144.03(C)...........................................19

11 James W. Moore et al., *Moore's Federal Practice and Procedure* § 56.14 (2009)....................1

## INTRODUCTION

To oppose Defendants' summary judgment motion, Plaintiff offers little more than untimely claim construction argument and *ipse dixit* of counsel. As to the former, argument of legal issues like claim construction cannot avoid summary judgment (and regardless, Plaintiff's legal arguments lack merit as explained below). *See, e.g.,* Fed. R. Civ. P. 56(e)(2). As to the latter, Plaintiff's Opposition and Local Rule 56.1 Statement are fatally sparse on evidence. Many of Plaintiff's purported disputes rely exclusively on unsupported attorney argument, general citations to documents without any explanatory testimony, and excerpts from its expert's report without any sworn declaration.[1] In many other instances, Plaintiff's response simply "talks past" Defendants' statements rather than squarely addressing them. As explained below, there are numerous independent grounds for summary judgment, and Plaintiff fails to create a genuine issue of material fact as to each one of them. *See, e.g.,* Fed. R. Civ. P. 56(e)(2). The time has come for this meritless suit to be put to an end.[2]

## ARGUMENT

Plaintiff does not dispute that it bears the burden to establish that Defendants fulfill each and every limitation of one of the patent's claims and that dependent claims cannot be infringed unless the claims from which they depend are infringed. Plaintiff fails to carry its burden.

## I.   PLAINTIFF FAILS TO PROVIDE EVIDENCE THAT A SINGLE PARTY'S PROCESS OR SYSTEM MEETS ALL THE LIMITATIONS OF THE CLAIMS.

Plaintiff does not dispute that a finding of infringement requires that *a single party* fulfill all the limitations of an asserted claim, either by itself or by acting as a "mastermind" of other

---

[1] Given the lack of an actual sworn declaration from Plaintiff's expert, the Court need not consider the excerpts from his report. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n.17 (1970) (noting that a "statement, being unsworn, does not meet the requirements of Fed. Rule Civ. Proc. 56(e)"); 11 James W. Moore et al., *Moore's Federal Practice and Procedure* § 56.14 (2009) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2)...may be disregarded by the court when ruling on a motion for summary judgment.").

[2] The Court would also be justified in disregarding Plaintiff's Opposition for being untimely. Plaintiff missed the 6:00 p.m. EST filing deadline set by Local Rule 5.4(D) when it electronically filed its Opposition at 10:21 p.m. EST and its supporting documentation after that. Plaintiff e-mailed its papers to Defendants' counsel at 7:53 p.m. EST (again after the 6:00 p.m. deadline), and did not e-mail its exhibits until 11:46 p.m. EST.

1

entities that are under its direction or control.  *See, e.g., Muniauction, Inc. v. Thomson Corp.*, 532

F.3d 1318, 1329-30 (Fed. Cir. 2008) (citing *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373,

1380-81 (Fed. Cir. 2007)); *Akamai Techs, Inc. v. Limelight Networks, Inc.*, 614 F. Supp. 2d 90,

119-23 (D. Mass. 2009).[3]  Nor does Plaintiff even attempt to argue that its Complaint or

infringement contentions allege that a single defendant fulfills all claim limitations or acts as a

"mastermind," much less explain how.  Rather, Plaintiff attempts belatedly to reargue claim

construction or make up new contentions never before disclosed.  Such tactics cannot avoid

summary judgment as to all claims of the asserted U.S. Patent No. 7,400,858 ("the '858 patent").

### A.   Passengers Indisputably Control Their Own Communications Devices, And Plaintiff Cannot Save Its Claim By Rearguing Claim Construction.

In response to the defense that neither Delta nor Aircell direct or control individual airline

passengers' personal communications devices, Plaintiff's Opposition exclusively relies on an

incorrect statement of the Court's claim construction.  That is, Plaintiff argues (wrongly) that the

claim terms "personal computer communication device" (claim 1) and "wireless personal RF

communications devices" (claims 7 and 13) are not limitations of the claims.  In fact, Plaintiff

goes so far as to imply that this Court so found.  But the Court made no such finding.  Far from

it, the Court proceeded to construe the claim limitations at issue.  (*Markman* Tr. at 35:19-22,

40:9-16, and 42:19-20 (Dkt. 107)).

The Court was correct to reject Plaintiff's attempt to read claim limitations out of the

body of the claims.  As the Federal Circuit has explained, where, as here, a term is in the body of

a claim, it is a limitation of the claim.  *See Catalina Marketing Int'l, Inc. v. Coolsavings.com,*

*Inc.*, 289 F.3d 801, 811 (Fed. Cir. 2002) ("By virtue of its inclusion in the body of [the claim],

this phrase limits [the claim]."); *see also Koito Mfg. Co. v. Turn-Key-Tech, L.L.C.*, 234 F. Supp.

2d 1139, 1147 (S.D. Cal. 2002) ("[E]ven if the preamble language does not limit the '268 claim

---

[3] Plaintiff cites *Shockley v. Arcan* regarding the respective liabilities of joint tort-feasors, but the cited passage is about how damages are handled once patent infringement has been found, not about whether there is direct infringement in the first place. 248 F.3d 1349, 1364 (Fed. Cir. 2001).  As such, that case has no application to the issue presented here, *i.e.*, whether a single party directly infringes a claim of the '858 patent.

scope, this particular term does limit the claims by virtue of its inclusion in the claim body, and therefore the court will construe this term.").

Not only did this Court construe the claim limitations at issue, but Plaintiff agreed to the Court's constructions. (*Markman* Tr. at 35:25 and 42:17-18 (Dkt. 107)). It belies logic and common sense for Plaintiff now to argue that personal devices are not limitations in the claims in the '858 patent, after urging and agreeing to a construction of those terms. It also belies Plaintiff's own statements at the *Markman* hearing regarding the claim term "personal computer communication device":

> Mr. Moriarty: …So, what the patentee did, with the aid of the examiner, is they chose their words carefully. They didn't say any device. They didn't say an electronic device. They said we've had some discussion about different devices in our spec., **but the one we're picking, the one we want in our claims**, is the one with the word computer in it; not something that can be used with a computer, but a computer.

(*Id.* at 38:16-22 (emphasis added)).

In its current Opposition, as at the *Markman* hearing, Plaintiff continues to argue that the type of personal communication device present in the prior art is relevant to whether that prior art invalidates the '858 patent. (*See* Pl. Opp. at 12 ("For example, Dr. Brown disputed whether Papavramidis discloses the personal computer communication devices…")). "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another way to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quotation omitted). If, as Plaintiff argues to the Court, the meaning of the personal communication devices claim terms can exclude prior art for the purpose of the invalidity analysis, they must also be claim limitations for the purposes of the infringement analysis.

Because the personal communication devices are limitations of the claims, Plaintiff's cited case, *Level 3 Communications v. Limelight Networks, Inc.*, 630 F. Supp. 2d 654 (E.D. Va. 2008), is inapposite. And certainly *Level 3* does not override the clear Federal Circuit authority that terms in the body of a claim are claim limitations. *See Catalina*, 289 F.3d at 811.

Plaintiff relies wholly on its improper claim construction argument; its Opposition

3

contains no discussion of any facts tending to show that Delta or Aircell exercise direction or control over individual passengers' personal communication devices, such that one of them would be liable for infringement. Nor could it. The terms of use for Gogo® customers contain no contractual obligation regarding the personal devices -- the devices are left to the choice of the passenger. (*See* Gogo® Terms of Use Agreement, AIR0003832-39 (Dkt. 112 at Ex. 4)). Thus, not surprisingly, Plaintiff's expert has conceded that neither Delta nor Aircell controls a passenger's decision whether or not to bring a personal communication device onto a plane.[4]

"[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process…" *See Muniauction*, 532 F.3d at 1329 (emphasis added) (quoting *BMC,* 498 F.3d at 1380-81). Plaintiff has failed to present evidence that Delta or Aircell exercise control or direction over the personal communication devices, which are limitations in the independent claims of the '858 patent. Plaintiff does not even attempt to distinguish Defendants' cited case law establishing that "the existence…of a contract for services does not give rise to direction or control, even if the customer must perform one or more steps of the patented process in order to receive the benefit of those services." *Akamai*, 614 F. Supp. 2d at 121. Summary judgment of noninfringement should therefore be granted as to all of the '858 patent's claims.

**B.    Plaintiff Fails Even To Allege That Delta Or Aircell Directs Or Controls The Other, And Plaintiff's Infringement Contentions Involve Different Actions By Each.**

There is a further reason why summary judgment should be granted based on *Muniauction* and *BMC*. Plaintiff's Complaint and infringement contentions contain no allegation whatsoever that Delta or Aircell directs or controls the other. (*See* Pl.'s Resp. to Defs.' Statement of Material Facts at Fact No. 21 (failing to point to any allegation in Plaintiff's Complaint or infringement contentions)). Plaintiff has long been on notice that Defendants contend there is no infringement of the '858 patent because Delta and Aircell each independently perform some of

---

[4] Plaintiff does not deny that its expert made this admission, but rather confronts it with mere attorney argument. (*See* Pl.'s Rule 56.1 Statement, at Fact. No. 19 (Dkt. 126 at 10).

the actions that Plaintiff contends make up the infringement. Defendants included this defense in their preliminary noninfringement contentions first disclosed on June 12, 2009. Despite this, neither Plaintiff's preliminary nor its amended infringement contentions contain any allegation of direction or control, nor do they indicate which claim elements Plaintiff believes are performed or supplied by Aircell, and which by Delta.

It is too late, in summary judgment briefing, for Plaintiff to reveal its contentions on this issue for the first time. Moreover, Plaintiff still does not provide any evidence of which claim limitations are met by which Defendant, but rather relies on generalized *ipse dixit* of counsel that "Delta and Aircell each independently infringe claims of the '858 Patent." (Pl. Opp. at 4). Plaintiff must make a showing with respect to each element for each Defendant, which it has not done.

Under *Muniauction* and *BMC*, even dismissal of an action *for failure to state a claim* is appropriate where the asserted patent claims require actions by multiple parties and there is no allegation that one party exercises direction or control over the other(s). (*See, e.g.*, Def. Opening Br. at 3 (citing cases) (Dkt. 111)). Here, Plaintiff has not only failed to make such an allegation in its Complaint, but has also failed to do so in the infringement contentions mandated by the local rules. Plaintiff's infringement claim thus fails. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## II. PLAINTIFF FAILS TO PROVIDE EVIDENCE THAT THE GOGO® SYSTEM CONTROLS OR LIMITS THE TIME THAT PASSENGERS' DEVICES CAN COMMUNICATE WITH THE GROUND.

### A. The Court Should Reject Plaintiff's Revisionist History Of The Construction Of "To Control Time."

Once again, Plaintiff attempts to oppose summary judgment by belatedly rearguing claim construction. An examination of the *Markman* hearing transcript belies Plaintiff's suggestion

that the Court agreed that "time interval" could be a period bounded by events and refutes

Plaintiff's baseless accusation that Defendants quote the *Markman* hearing "out of context."

At the *Markman* hearing, the Court first proposed an initial construction that "[c]ontrol

use and time means control, one, the time intervals and periods when personal computer

communication devices are enabled to communicate with the distant communication system, and

two, the extent to which the devices may utilize the system." (*Markman* Tr. at 44:2-6 (Dkt.

107)). Plaintiff questioned the proposal, and the Court proposed to delete the phrase "and

periods." (*Id.* at 44:8-21). Defendants questioned whether "time intervals" means "minutes,

seconds, hours." (*Id.* at 45:6-8). The Court restated Defendants' question as whether the Court

intends "time intervals" to mean "an increment of time," and answered "I do." (*Id.* at 45:14-17).

Plaintiff argued that this meaning of "time intervals" would change the construction,

because, according to Plaintiff, "control time" should include "measuring it according to events

in the airplane, for one." (*Id.* at 45:19-46:2). The Court took argument and then asked whether

Plaintiff would prefer the phrase "control the periods" over the phrase "control the time

intervals," to which Plaintiff answered "Yes, that would be better." (*Id.* at 46-47 and at 48:17-

19.) Defendants objected that this construction would "conflate use and time," both of which

appear in the claims of the '858 patent. (*Id.* at 49:2-3). The Court heard more argument and then

took the matter under advisement. (*Id.* at 49-52:6). Returning from recess, the Court stated:

> Turning to controlling use and controlling time, I am satisfied that those terms are
> used in different claims in different fashions. So I will define each one. To
> control use means to control the extent to which a personal computer
> communication device may utilize the system. To control time means to control
> the **time interval** when a personal computer communication device may use the
> system. In both instances may use it to communicate with the distant
> communication system.

(*Id.* at 60:25-61:8) (emphasis added).

Against this backdrop, it strains credulity for Plaintiff to suggest that the Court adopted

Plaintiff's construction of "control the time" as including a period bounded by events. In fact, as

noted in Defendants' Opening Brief and borne out by the *Markman* transcript, under the Court's

6

construction "to control the time" means to control intervals/ increments of time, such as hours, minutes or seconds.

**B.    Plaintiff Cannot Dispute That Gogo® Allows Passengers' Devices To Communicate With The Ground System Irrespective Of Time Intervals.**

Every independent claim of the '858 patent contains an element or step that, under the Court's construction, requires controlling or limiting the "time interval" when personal communication devices "may use the system…**to communicate with the distant communication system**."    (*Markman* Tr. at 61:3-8 (Dkt. 107); *see also* '858 patent, 5:66-6:4, 6:51-56, 8:5-10 (Dkt. 112 at Ex. 1)).    In contrast, the accused Gogo® system allows passengers' devices to communicate with the distant communication system and certain websites on the ground at any time that the system as a whole is enabled, and without regard to any time interval. Plaintiff fails to offer any evidence to the contrary.

In its Opposition, Plaintiff's main arguments about "controlling the time" center on periods bounded by events on the airplane.    But the Court rejected this construction of "control the time," as discussed above.    Thus, it is of no consequence that the Gogo® system is only enabled above 10,000 feet, because the crossing of the 10,000-foot line is an event, not a time interval.    Likewise, Plaintiff's factually unsupported reference to the Super Communications Assistance Law Enforcement Act ("CALEA") is, as Plaintiff admits, tied to "events occurring in the airplane" (Pl. Opp. at 8), as opposed to a time interval.[5]    These arguments therefore fail to provide any evidence that the Gogo® system controls the time intervals during which passengers' communication devices may use the Gogo® system to reach the ground system.

Plaintiff's other arguments are also unavailing in the face of its failure to point out a genuine factual dispute.    In their Local Rule 56.1 Statement, Defendants included the following material facts as to which there is no genuine issue to be tried, among others:

> 34.    Gogo® enables any passenger (without paying for a pass and for any length of time that the system as a whole is enabled) to access Gogo®'s "portal" page

---

[5] Furthermore, Plaintiff points to absolutely no evidence that Gogo® service has ever been shut off due to law enforcement intervention and fails to mention CALEA in its Rule 56.1 Statement.

with his or her device, click on a link presented there, and become connected to certain "white-listed" websites via the plane's ATG ["air to ground"] antenna....

38. Passengers using Gogo® can use the airline website (without paying for a pass and for any length of time that the system as a whole is enabled) for making new travel reservations or checking arrival and departure times, and these tasks necessarily involve sending and receiving information to and from the Internet system on the ground via the ATG antenna (as opposed to using "cached" information that is sometimes stored onboard the airplane).

(Defs.' Rule 56.1 Statement, at Facts No. 34 and 38 (Dkt. 117 at 6-7)). Defendants supported these statements with specific evidence, including a declaration from an employee of Aircell, deposition excerpts from employees of Aircell and Delta, and "wireframe" documents showing where the links from Gogo®'s "portal" go. In response to each of these statements, Plaintiff states only "Disputed and Irrelevant, because only authorized passengers are enabled to access non 'white-listed' websites via the plane's ATG antenna." (Pl.'s Rule 56.1 Statement, at Facts No. 34 and 38 (Dkt. 126 at 17-18) (emphasis added)). Plaintiff's responses thus concede that irrespective of any payment or time interval, any passenger's communication device can access white-listed websites on the ground via the plane's ATG antenna. That fact alone shows that the Gogo® system does not control or limit the time intervals during which personal communication devices are enabled to communicate with the ground system.[6]

Nor can Plaintiff's arguments about non-white-listed sites avoid summary judgment, because the distinction between white-listed and non-white-listed sites is a question of controlling "use," not "time."[7] As the Court held at the *Markman* hearing, "[t]o control use means to control the extent to which a personal computer communication device may utilize the system." (*Markman* Tr. at 61:3-5 (Dkt. 107)). Limiting the websites a passenger's device may access is thus "controlling use." It has no bearing on whether the Gogo® system controls the time interval during which passengers' communication devices may access the ground.

---

[6] Plaintiff fails to offer any of its own statements of disputed material fact, instead merely responding to Defendants' Rule 56.1 Statement of Material Facts. (*See* Dkt. 126).

[7] Plaintiff uses the phrases "White List Mode" and "Other Modes" without citation. Plaintiff refers to no record support for considering access to the white-listed sites as a different "mode," and does not explain its source for these phrases.

8

Plaintiff also failed to raise any evidence regarding Gogo® segment, day or month passes in its Local Rule 56.1 Statement, and thus has waived any argument on these topics. Regardless, these passes also control only use, not time, because any passenger with a WiFi-enabled device can use the system to access white-listed sites on the ground without paying for any sort of pass. The customer who purchases a pass gains a greater extent of access, not a greater interval of access. Moreover, even setting aside the "white list," the mere existence of "day" or "month" passes does not create a material issue of fact as to whether the Gogo® system controls the time interval during which passengers' communication devices may use the system to access the ground system. There is no dispute that the Gogo® system does not log users out at the expiration of a pass. Rather, once logged into the system, a passenger can remain logged on when the period of his or her pass has expired. (Walsh Decl. ¶ 12 (Dkt. 115)). In its Opposition, Plaintiff points only to the existence of such passes, without any evidence about how the Gogo® system functions with respect to them, and thus Plaintiff has not met its burden to show that the Gogo® system meets the claim limitation of controlling or limiting time.

Because Plaintiff has failed to demonstrate a genuine dispute as to whether the accused Gogo® system controls the time that passengers' communication devices may communicate with the ground, this is another independent ground for summary judgment of noninfringement as to all claims.

## III. GOGO® DOES NOT "CONTROL A COMMUNICATIONS LINK" AS REQUIRED BY CLAIMS 1-6, OR ALTERNATIVELY, THE CLAIMS ARE INDEFINITE.

As explained in Defendants' Opening Brief, claim 1 of the '858 patent requires "a control computer arranged to **control a communications link** between said at least one of said first RF antenna . . . and said at least one second RF antenna." '858 patent, 5:62-65 (emphasis added). During the *Markman* hearing, the Court construed the phrase "a communications link between said at least one of said first RF antenna . . . and said at least one second RF antenna" to mean "a transmission line that enables communication between the first RF antenna and the second RF antenna." (*Markman* Tr. at 54:6-8, 56:16-18 (Dkt. 107)).

9

Thus, under the Court's construction, claim 1 requires a control computer arranged to "control a transmission line," and in order to establish infringement, Plaintiff must prove that a computer in the accused Gogo® system actually controls a transmission line. Yet, Plaintiff has pointed to nothing other than signals being controlled by the Gogo® ACPU, which Plaintiff contends corresponds to the claimed control computer. Plaintiff argues that Defendants took its expert's testimony on this point out of context, but that is not true. Dr. Brown's testimony was unequivocal:

> Q: And there's nothing in the line itself that's controlled by the control computer, right?
>
> A: In the absence of signals on the transmission line, I don't know what the control computer would do to the transmission line.

(Brown Dep. at 201:6-10 (Dkt. 112 at Ex. 3)).

Plaintiff states that its expert believes that "'control a communications link' means 'controlling . . . the signals passing through the communication link." (Pl. Opp. at 17 (alteration in original)). But that is contrary to the Court's construction, and the Court's construction is correct. Plaintiff knew how to claim control of RF signals, as opposed to control of a "communications link," when it wanted to do so. Claim 7 of the '858 patent requires that the control computer is "**controlling said RF signals** sent between said variety of different radiatively communicative wireless personal RF communication devices . . . and said second RF antenna." '858 patent, 6:46-49 (emphasis added). Likewise, claim 13 requires that the control computer is "**controlling said RIF signals** [sic, RF signals]." *Id.* at 8:5 (emphasis added). In contrast, the patentees chose to claim control of the actual communications link (i.e., the actual transmission line itself) in claim 1. Plaintiff must live with claim 1 as written.

Apparently recognizing the weakness in arguing that controlling signals is sufficient, Plaintiff points to a single document to support its attorney argument that the Gogo® ACPU controls a transmission line. (Pl. Opp. at 18). However, this document says nothing about the ACPU controlling any transmission lines. Plaintiff contends – based solely on unsupported attorney argument, not evidence – that the mere existence of the "Layer 2/Layer 3 Ethernet

Switch" shown in the document somehow indicates that the Gogo® ACPU controls a

"communications link" under the Court's construction. This unsupported attorney argument

cannot create a genuine issue of material fact and summary judgment of noninfringement should

be granted. *See Celotex*, 477 U.S. at 322 (1986).[8]

With respect to Defendants' alternative argument that "control a communications link" is

indefinite and that claims 1-6 are therefore invalid, Plaintiff's only response is that Defendants

allegedly misquoted Plaintiff's expert. Again, Plaintiff is mistaken. Dr. Brown testified

emphatically that it does not make sense to say the control computer controls a transmission line

itself, as claim 1 requires given the Court's construction of "communications link":

> Q: So it doesn't make sense to you to say that the control computer controls the transmission line itself?
>
> A: That phrase doesn't make sense to me.

(Brown Dep. at 197:20-23 (Dkt. 112 at Ex. 3)). This was then corroborated by Dr. Brown:

> Q: Does the ACPU control these lines that you just mentioned?
>
> A: It controls communication through these lines, yes.
>
> Q: But does it control the line itself?
>
> A: The question doesn't make any sense.
>
> Q: You're saying it controls the signal that passes through the line?
>
> A: That's right.
>
> Q: But it doesn't make sense to say it controls the line itself, is that right?
>
> A: That wouldn't be how one with an electrical engineering degree would describe it.
>
> Q: So you would not say that the computer controls a line; you'd say it controls the signal, right?
>
> A: The signals or the communication passing through the lines, yes.
>
> Q: But it does not control the line itself, right?
>
> A: It's a phrase that doesn't make sense.

---

[8] Moreover, Plaintiff's unsupported assertion about what the switch does is incorrect. The "Layer 2/Layer 3 Ethernet Switch" described in Aircell's documentation does nothing to connect or disconnect Ethernet lines as Plaintiff contends. (Michalson Reply Decl. ¶ 7). Instead, it forwards packets based on header information. (Michalson Reply Decl. ¶¶ 6-7). References to the "Michalson Reply Decl." are to the Declaration of William R. Michalson submitted concurrently herewith.

(Brown Dep. at 196:2-22).  And Dr. Brown further testified:

> Q:  What if I said no, I'm not talking about the signal, I'm talking about the transmission line itself?  Tell me if it controls the transmission line itself.  What would be the answer?
>
> A:  I would say I don't understand your question.
>
> Q:  Because it makes no sense?
>
> A:  It doesn't make any sense.

(Brown Dep. at 198:14-21).

In the face of this testimony, there can be no dispute that the phrase "control a communications link" in claim 1 is indefinite because someone who Plaintiff contends is one of skill in the art cannot understand what the phrase means under the Court's correct construction of "communications link."  *See, e.g., Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1340 (Fed. Cir. 2003).  As such, summary judgment of invalidity should be granted.

## IV.    AN AIRPLANE IS NOT A "LOCAL RF RESTRICTED ENVIRONMENT."

There is no dispute that an airplane is not a "local RF restricted environment" under the Court's construction that it "provides a barrier that interferes with sending or receiving RF signals." (Markman Tr. at 52:8-12 (Dkt. 107)).  Dr. Brown admitted as much:

> Q.    Do you ever send emails from the ground when you're sitting on a plane?
>
> A.    Yes, I have.
>
> Q.    Your iPhone accommodates that, correct?
>
> A.    My iPhone gives me the ability to do that.
>
> Q.    You can send or receive the RF signals while sitting on the ground of the airplane, correct?
>
> A.    Yes.  The RF signals coming from the cell tower I guess closest to the airport.
>
> Q.    So the skin of the airplane didn't interfere with your call or your e-mail transmission, correct?
>
> A.    Not that I noticed.
>
> Q.    It wasn't a barrier that interfered with sending and receiving RF signals?
>
> A.    It wasn't a barrier that I could tell interfered with the signal.

(Brown Dep. at 277:4-21 (Dkt. 112 at Ex. 3)).  It is clear from this testimony that the signal Dr. Brown is referring to here, and in the later passage quoted in Defendants' Opening Brief, is an

12

RF signal. Plaintiff's argument to the contrary is just an attempt to distance itself from its expert's testimony. Moreover, in Plaintiff's Local Rule 56.1 Statement, it points to no evidence whatsoever to rebut Defendants' statement of material fact that "[t]he FAA prohibits the use of cellular telephones while airborne because they radiate so well from an aircraft." (Pl.'s Rule 56.1 Statement, at Fact 110 (Dkt. 126 at 44-45)). The point is effectively admitted.

Under any reasonable understanding of the Court's construction, it is clear that the skin of the airplane is not a barrier that interferes with RF signals from a personal communication device. As Dr. Brown admitted, there is no difference in clarity between a call made from inside and aircraft and a call made from the ground. (Brown Dep. at 281:20-22 (Dkt. 112 at Ex. 3)). According to Dr. Brown, there is no interference in the technical sense of the term: "I'd like to be clear that under my definition of interfere, which is the cellular telephone definition, which is with regard to other signals interfering with each other, the skin of the airplane can't interfere with my signals, because the skin of the airplane is not radiating radiofrequency signals." (Brown Dep. at 281:2-8). Nor is there any interference in the layman's sense of the term: "The skin of the airplane, even in the layman sense, I don't think anyone would say the skin of the airplane interferes with the signal." (Brown Dep. at 282:5-7). Although Dr. Brown testified that the skin of the airplane "attenuates" the signal, this testimony is inapposite. This construction of "RF restricted environment" was proposed by Plaintiff and rejected by the Court.[9] Plaintiff cannot now create a fact dispute by rearguing claim construction.

Nor can Plaintiff create a fact dispute by quoting selected portions of one of Defendants' documents out of context. Plaintiff points to Aircell's presentation to the DOT-TSA that included a slide entitled "Why Standard Cell Phones don't work in the Air." But the very slide Plaintiff cites indicates that the "FCC prohibits use [of cell phones in the air] to prevent

---

[9] Plaintiff proposed that "local RF restricted environment" be construed as "An automobile, building, elevator, airplane, or desk, to or from which entering or escaping RF energy is attenuated." (Dkt. 69 at 35). The Court rejected this proposal and defined "local RF restricted environment" as "An automobile, building, elevator, airplane or desk that provides a barrier that interferes with sending or receiving RF signals." (*Markman* Tr. at 52:8-12 (Dkt. 107)).

interference to ground operations." (Dkt. 127 at Ex. 20 at AIR0057845). If the skin of the aircraft was a barrier that interfered (and it is not), the RF signals from cell phones would not be able to leave the aircraft and interfere with ground operations, and there would be no need for the FCC to prohibit their use.

Dr. Brown's reliance on the Electronic Communication Committee report is also misplaced. The report simply provides a theoretical model that may or may not accurately reflect the actual attenuation provided by any particular aircraft. Plaintiff cannot use a theoretical report to show that any actual Delta aircraft (or any other aircraft in which the Gogo® system is installed) exhibits the behavior shown therein. But even more fundamentally, even if there is some "attenuation" as Plaintiff asserts, that begs the question. The issue is whether there is a barrier that interferes with sending or receiving RF signals. Because Plaintiff has failed to present a genuine issue of fact on that issue, the Court should grant summary judgment of non-infringement as to claims 13-17.

## V.    GOGO ® DOES NOT CONTAIN A "FIRST RF ANTENNA," OR THE CLAIMS ARE INVALID.

### A.    Gogo® Does Not Contain A "First RF Antenna" Under The Court's Current Constructions, Or The Claims Are Invalid For Failure To Comply With The Written Description Requirement Of 35 U.S.C. § 112.

After Defendants filed the instant motion for summary judgment, the Court issued two constructions for the term "first RF antenna." Specifically, the Court construed the term "first RF antenna" in claim 1 to mean an antenna "which is located in **effective proximity** to the radiative RF antenna associated with personal communication device(s)." (Dkt. 118 at 1 (emphasis added)). The Court further construed the term "first RF antenna" in claims 10 and 14 to mean an antenna "which is located in **close proximity** to the radiative RF antenna associated with personal communication device(s)." (*Id.* (emphasis added)).[10] It is unclear to Defendants

---

[10] It is not clear to Defendants which construction the Court intends for independent claims 7 and 13. Because claims 10 and 14 depend from claims 7 and 13, and the term "first RF antenna" appears in those independent claims and not in the added limitations of claims 10 and 14, Defendants assume that the "close proximity" construction also applies to claims 7 and 13.

what "effective proximity" and "close proximity" mean in the Court's constructions. Regardless of what these phrases mean, however, the Court should grant summary judgment because either the claims are not infringed or they are invalid.

If "effective proximity" in the construction for claim 1 means that the "first RF antenna" has to be positioned close enough to the antenna on the personal communication device so that it is effective to minimize exposure to stray radiation – like the "juxtaposed" probe that the specification of the '858 patent says "[t]he present invention comprises " ('858 patent, 1:62-2:3) – there is no dispute that this is not done in the accused Gogo® system, and summary judgment of noninfringement should be granted. Plaintiff has presented no evidence to support an inference that the antennas are placed close enough to each other to minimize radiation in the plane.

On the other hand, if "effective proximity" just means effective to pick up RF signals from the antenna on a personal communication device, then the claims are all invalid for failure to comply with the written description requirement of 35 U.S.C. § 112, ¶ 1. The invention described in the '858 patent is unambiguously said to require a juxtaposed probe: "[t]he present invention comprises . . . a juxtaposed pick-up probe." '858 patent, 1:62-2:3. Plaintiff cannot dispute this fact. And, as explained in Defendants' Opening Brief, Plaintiff has agreed that this probe is the only thing in the patent that could serve as the "first RF antenna" required by the claims. (*See* Pls.' Prelim. *Markman* Br. at 13 (Dkt. 43)). Therefore, if the claims are broad enough to encompass a "first RF antenna" that is not juxtaposed or side by side with the antenna on the personal communication device, then there is no support in the specification for the full scope of the claims, and the claims are invalid. (*See* Def. Opening Br. at 11-12 (citing cases) (Dkt. 111); Dkt. 37 at 13-15 (same); Dkt. 62 at 7-8 (same)).

Plaintiff's only response to this argument is that Figure 3B of the '858 patent allegedly is an embodiment "in which the first RF antenna is located in a room and provides coverage to devices located anywhere in the room – and not necessarily 'side-by-side' with a communications device." (Pl. Opp. at 10). But there is nothing in Figure 3B – which does not show personal communication devices at all – that contradicts the unequivocal language in the specification that

15

the invention "comprises" a "juxtaposed pick-up probe." '858 patent, 1:62-2:2. Moreover, Figure 3B should be construed to be consistent with the text of the specification. *See, e.g., Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999) ("The vague terms in Figure 3 do not override the claim language and written description that closely identify the 'memory selection switch' as a mechanical device."). As such, Plaintiff has failed to create a genuine issue of material fact and summary judgment should be granted.

Similarly, if "close proximity" in the Court's construction of the term "first RF antenna" in claims 10 and 14 means that the "first RF antenna" has to be positioned close enough so that it is juxtaposed or side by side with the antenna on the personal communication device, then there is no dispute that there is no infringement. Plaintiff does not dispute that the CWAP antennas in the Gogo® system (which it contends correspond to the claimed "first RF antenna") are not juxtaposed or side by side with antennas on personal communication devices.[11] In fact, Plaintiff does not even contend that a CWAP antenna is in "close proximity" with an antenna on a personal communication device as required by the Court's current construction.

On the other hand, if "close proximity" just means that the "first RF antenna" and the antenna on the personal communication device can be located anywhere within the same airplane, then the claims are invalid because they violate the written description requirement. As explained above, there is no disclosure in the specification to support the claims if they are broad enough to encompass a "first RF antenna" that is not juxtaposed or side by side with the antenna on the personal communication device. Thus, regardless of what the Court intended in its

---

[11] Plaintiff's expert, Dr. Brown, admitted as much at his deposition:
    Q:  Would you consider side by side, Dr. Brown, the BlackBerry that's at my seat and the CWAP antenna that's in the top of the plane?
    Mr. Moriarty:  Objection.  Asked and answered.
    A:  I would say that your BlackBerry is much closer to the CWAP antenna than it is to the ground antenna.
    Q:  Let's stay with my question.
    A:  Sure.
    Q:  Would you consider it side by side?
    A:  No.
(Brown Dep. at 123:5-16 (Dkt. 112 at Ex. 3)).

16

constructions for "first RF antenna," summary judgment should be granted on either

noninfringement or invalidity grounds.

**B.    If The Court's Current Constructions Of "First RF Antenna" Do Not Require The "First RF Antenna" And The Antenna On A Personal Communication Device To Be Side By Side Or Close Enough To Minimize Radiation, The Claims Are Also Invalid As Obvious Under 35 U.S.C. § 103.**

Plaintiff does not and cannot dispute that there is nothing inventive about merely

enabling communication from an airplane through the use of an antenna inside the plane and an

antenna radiating outside of the plane. As explained in Defendants' Opening Brief, air-to-ground

communications systems, such as the Airfone system that provided a number of wireless

handsets for passengers to use in a plane to make telephone calls or transmit computer data, had

been known for some time prior to Plaintiff's alleged invention. And, as further set forth in

Defendants' moving papers, the Papavramidis article alone or in combination with "Admitted

Prior Art" indisputably discloses all of the limitations of the '858 patent's claims if the "first RF

antenna" just has to be located in the same airplane as personal communication devices and just

has to be effective in picking up an RF signal from the personal communication devices.

**1.    Papavramidis in combination with the Admitted Prior Art discloses each element of each claim of the '858 patent.**

Plaintiff contends that Defendants allegedly did not address all of the limitations in all of

the claims of the '858 patent when making their obviousness argument. But Defendants' Brief

(Dkt. 111) and the accompanying declaration of Dr. William R. Michalson (Dkt. 116) addressed

the limitations of each and every element of claims 1-17 and showed that each claim limitation is

present in the Papavramidis reference. (*See, e.g.,* Michalson Decl., Dkt. 116 ¶¶ 12-25). Plaintiff

has come forward with no evidence to dispute Dr. Michalson's declaration.

Plaintiff further argues that its expert, Dr. Brown, disagrees with Defendants'

characterization of Papavramidis "for several reasons." (Pl. Opp. at 12). But Plaintiff only cites

to two disagreements, i.e., "whether Papavramidis discloses the personal computer

communication devices" and whether Papavramidis discloses the "claimed 'control computer.'"

(Pl. Opp. at 12). Neither are pertinent to resolving the motion at hand. Until Plaintiff concedes

17

that "personal computer communication devices" are a limitation of the claims, it should not be heard to distinguish the prior art using this feature. Moreover, the term "personal computer communication devices" does not even appear in claims 7 and 13 (or their dependent claims 8-12 and 14-17); so, this argument cannot be used to avoid invalidity of those claims. Thus, Plaintiff's only real dispute with respect to Papavramidis is whether it discloses the claimed control computer. And this dispute is mooted by Defendants' reliance on the Admitted Prior Art, rather than on Papavramidis alone, for disclosure of the claimed "control computer."[12]

> ### 2.    There is no genuine dispute that the official notice is Admitted Prior Art that renders obvious the claimed "control computer."

Plaintiff does not dispute that during prosecution of the '471 patent application, an application that shares essentially the same specification as the '858 patent, Examiner Le took official notice four times, stating: "As to claims 7-8 and 15, the examiner takes an official notice that the telephone system having a control unit for monitoring the time usage for billing purposes is notoriously well known in the art. Therefore, it would have been obvious to one of ordinary skill in the art to have the control unit as claimed in order to further expand its application." (*See, e.g.,* '471 patent application, Feb. 3, 1998 Office Action at 5 (Dkt. 112 at Ex. 21)). Nor does Plaintiff dispute that applicants never challenged the Examiner's official notice.

Plaintiff tries to avoid the inevitable conclusion that this official notice is Admitted Prior Art by conveying the impression that, according to the Manual of Patent Examining Procedure ("MPEP"), if the Examiner did not explicitly state that the "statement is taken to be admitted prior art," it must not be. But what Plaintiff quoted from the MPEP must be read in context:

> To adequately traverse such a finding, an applicant **must** specifically point out the supposed errors in the examiner's action, which would include stating why the noticed fact is not considered to be common knowledge or well-known in the art. See 37 CFR 1.111(b). . . . .
>
> …
>
> If applicant does not traverse the examiner's assertion of official notice or

---

[12] While Defendants contend that Papavramidis discloses the claimed "control computer," for the purposes of this Motion, Defendants have focused their arguments on the Papavramidis reference in combination with the Admitted Prior Art.

applicant's traverse is not adequate, the examiner **should** clearly indicate
in the next Office Action that the common knowledge or well-known in
the art statement is taken to be admitted prior art because applicant either
failed to traverse the examiner's assertion of official notice or that the
traverse was inadequate. . . .

(MPEP § 2144.03(C) (emphasis added)). Thus, while the Examiner **should** indicate that the

official notice is taken to be admitted prior art, there is absolutely no requirement for the

Examiner to do so. However, the applicant **must** specifically point out the supposed errors in the

examiner's action. And there is no dispute that the applicant did not do so here. Therefore, the

applicant failed to comply with the rules and the official notice is Admitted Prior Art.[13]

The currently pending reexamination proceedings confirm this fact. Defendants did not

point to the reexamination as "conclusive evidence of invalidity" as Plaintiff contends. (Pl. Opp.

at 13). Rather, Defendants showed that, contrary to the position taken by Plaintiff here, both

Examiner Foster and Plaintiff's own patent attorney, Matthew Connors, view the official notice

as Admitted Prior Art. If the Official Notice is not Admitted Prior Art, as Plaintiff contends,

then Examiner Foster would not be able to reject the claims of the '858 patent over Papavramidis

in view of the admitted prior art as he did. (Sept. 23, 2009 Office Action at 13 (Dkt. 112 at Ex.

27)). Likewise, in the Patent Owner Response in the Reexamination, Attorney Connors did not

dispute that the Official Notice is Admitted Prior Art. Rather, he simply disputed the scope of

the Admitted Prior Art. (Patent Owner Response at 23-24 (Dkt. 112 at Ex. 29)). Nowhere in the

response does Attorney Connors say that the Official Notice is not Admitted Prior Art, nor did he

ever challenge the examiner's statement that "the telephone system having a control unit for

monitoring the time usage for billing purposes is notoriously well known in the art."

Plaintiff also argues that the Official Notice is limited to simply "monitoring of time for

billing purposes, not controlling use and time of a connection between a first and second

---

[13] Plaintiff's argument that the Board of Patent Appeals and Interferences ("the Board")
overturned the rejection supported by the Official Notice is inapposite. Although the Board did
reverse the Examiner's rejection of then pending claims 1-20, the Board did not address and did
not dispute Examiner Le's statement that "the telephone system having a control unit for
monitoring the time usage for billing purposes is notoriously well known in the art." (Decision
on Appeal (Dkt. 127 at Ex. 17)).

antenna." (Pl. Opp. at 15 (emphasis in original)). But Plaintiff fails to provide any evidentiary support whatsoever for its attorney argument. In contrast, Defendants presented and relied upon the technical expertise of Dr. Michalson to show the similarities between then-pending claims 7, 8 and 15 of the '471 patent application (which Examiner Le rejected as obvious over the Admitted Prior Art) and the current claims of the '858 patent, and to explain why the Admitted Prior Art thus renders the "control computer" limitations in the '858 patent obvious. Plaintiff's unsupported attorney argument cannot be used to create a genuine issue of material fact, and summary judgment should be granted. *See Celotex*, 477 U.S. at 322 (1986).[14]

## VI.   **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment of noninfringement (or in the alternative, invalidity under 35 U.S.C. § 112 and/or § 103).

---

[14] Plaintiff's contention that Defendants have failed to set forth a prima facie case of obviousness is also without merit. For example, Plaintiff argues that Defendants have not considered objective evidence of non-obviousness. But it is Plaintiff's burden to provide objective evidence of non-obviousness. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999) ("The consideration of the objective evidence presented *by the patentee* is a necessary part of the obviousness determination.") (emphasis added). And, despite receiving Defendants' interrogatory on this issue in May 2009, Plaintiff has yet to come forward with any evidence relating to any secondary considerations.

Dated:  January 15, 2009

OF COUNSEL:
David T. Pritikin
Email:  dpritikin@sidley.com
Thomas D. Rein
Email: trein@sidley.com
Stephanie P. Koh
Email: skoh@sidley.com
Thomas F. Hankinson
Email: thankinson@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL  60603
Tel: 312-853-7000
Fax: 312-853-7036

Tung T. Nguyen
Email: tnguyen@sidley.com
**SIDLEY AUSTIN LLP**
717 N. Harwood, Suite 3400
Dallas, Texas 75201
Tel: 214-981-3300
Fax: 214-981-3400

_/s/ Marc C. Laredo_
Marc C. Laredo, BBO#543973
Email: laredo@laredosmith.com
Mark D. Smith, BBO#542676
Email: smith@laredosmith.com
**LAREDO & SMITH, LLP**
15 Broad Street, Suite 600
Boston, MA  02109
Tel: 617-367-7984
Fax: 617-367-6475

**ATTORNEYS FOR DEFENDANTS DELTA AIR
LINES, INC. AND AIRCELL LLC**

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be

sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).

January 15, 2009

_/s/ Marc Laredo_
Marc C. Laredo BBO#543973