IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMBIT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 09-10217-WGY |
| | ) | |
| v. | ) | |
| | ) | |
| DELTA AIR LINES, INC. and | ) | |
| AIRCELL LLC, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO RECONSIDER NONINFRINGEMENT OF CLAIMS 6, 10, 12, AND 14**

On January 22, 2010, the Court granted partial summary judgment Defendants' Aircell LLC ("Aircell") and Delta Air Lines, Inc. ("Delta"), concluding that the Gogo Inflight Internet system (the "Gogo system") does not infringe claims 6, 10, 12, and 14 of U.S. Patent No. 7,400,858 (the "'858 Patent"). (D.I. #135). The Court's grant of summary judgment is improper because 1) the *sua sponte* granting of summary judgment when no motion was pending and AMBIT was given no meaningfully opportunity to be heard is contrary to governing case law and principles of due process; 2) the Court's reliance on *SciMed* to limit claim scope is erroneous; 3) the Court's failure to construe the term "shield" in claims 6, 10, 12 and 14 and its reliance of the concept of "close proximity" was in error; 4) the evidence shows that even if the Court's construction is applied, which we respectfully submit is an error, there is sufficient evidence from which a jury could conclude that the first RF antenna is "located in close proximity to the radiative RF antenna associated with personal communication device(s)."

## FACTS

On December 22, 2009, Defendants filed a motion for summary judgment, *inter alia*, on the grounds of noninfringement (D.I. #110). Defendants did not specifically address claims 6, 10, 12, or 14 in their accompanying Statement of Material Facts (D.I. #117) or their memorandum (D.I. #111). They have presented no fact as to whether the distances between the first RF antenna and the personal communication devices in the accused Gogo system are in "close proximity."

On January 4, 2010, the Court issued an Order construing the term "first RF antenna" in claim 1 as "located in effective proximity to the radiative RF antenna associated with personal communication device(s)" and in claims 10 and 14 as "located in close proximity to the radiative RF antenna associated with personal communication device(s)." (D.I. #118). That Order did not mention claims 6 or 12.

The claims that are the subject of the Court's summary judgment Order are claims 6, 10, 12, and 14. These claims are as follows:

> Claim 6: The system as recited in claim 1, wherein said passenger vehicle has an RF signal shield arranged therein to restrict undesired travel of a wireless RF signal transmission within said passenger vehicle.
>
> Claim 10: The method as recited in claim 7, including: shielding at least a portion of said local environment to restrict undesired travel of wireless RF signals within said local environment.
>
> Claim 12: The method as recited in claim 7, wherein said local environment comprises at least a partially RF signal shielded area.
>
> Claim 14: The method as recited in claim 13, including: RF shielding at least a portion of said local RF restricted environment to control undesired travel of any of said wireless RF signals communicated within said local RF restricted environment.

Notably, both parties submitted argument during the *Markman* proceedings asking the Court to construe the term "shield" as used in these claims. Specifically, the parties had sought the following constructions:

| Plaintiff AMBIT's Proposed Definition | Defendants' Proposed Definition |
| --- | --- |
| "Anything that attenuates electromagnetic fields in certain directions of propagation" (D.I. #43 at 22) | "A shield located in the passenger vehicle to restrict undesired travel of wireless RF signals within the passenger vehicle" (D.I. #41 at 18) |

Neither party sought a definition of "shield" that included a distance component. Instead, both parties provided functional definitions. The Court did not rule as to these requests.

On January 20, 2010, the Court heard Defendants' pending summary judgment motions (D.I. #36 and #110). No party made a motion directed specifically to claims 6, 10, 12, and 14. Nonetheless, at the beginning of the hearing, the Court raised the possibility of dismissing claims 6, 10, 12, and 14. The following colloquy ensued:

> THE COURT: Fine. These are your motions for summary judgment, and I will hear you. Maybe I should, maybe I should start on what seems to me fairly straightforward. On the construction that the Court has made it's pretty clear that I should declare that there is no infringements of claim 6, 10, 12 and 14; isn't that right? I'm not asking you to -- the ones which are the ones which talk about this guard.
>
> MR. MORIARTY: Your Honor, this is the first we've heard of this and I would have to think about it. I don't -- you're talking about the shield?
>
> THE COURT: Yes.
>
> MR. MORIARTY: Oh, there is, there is --
>
> THE COURT: I mean the ones as to which I apply the construction that it must be in close proximity. You're out on those.
>
> MR. MORIARTY: No, I don't think so.
>
> THE COURT: Why not?

> MR. MORIARTY: <u>Well, first of all, there's no motion pending on that point and this is the first I've heard of that</u>.
>
> THE COURT: All right. <u>Well, then, maybe that's a good enough reason</u>.
>
> MR. MORIARTY: But --
>
> THE COURT: But you ought understand it seems to me like you're in trouble on those.
>
> MR. MORIARTY: Well, let's see. Six is --
>
> THE COURT: I may have the numbers wrong. Some of these post-construction briefs point out that I haven't tracked the numbers. <u>It's the ones that make reference to a shield. They're out. Because as to those I am following SciMed</u>, I'm following SciMed I think generally, but as to those I'm saying it has to be in close proximity to. Your devices are, when you compare it to the accused device, they're not in close proximity to, end of case.
>
> MR. MORIARTY: Well, as I said, your Honor, we would, if the plaintiff -- if the defendant were to make a motion along those lines we could respond to it.
>
> THE COURT: All right.
>
> MR. MORIARTY: But off the top of my head, which is always not the best position to be before a judge, <u>that certainly is a fact issue as to whether something's proximate</u>.
>
> THE COURT: Maybe.
>
> MR. MORIARTY: <u>There is, there is also issues as to which is the shield and things of that nature</u>. So, I would rather do my client a nondisservice by not arguing unprepared.
>
> THE COURT: That's well said. On the motions you did make, I'll hear you.

See Jan. 20, 2010 Motion Hear Tr. at 2:13-4:12 (Declaration of Benjamin P. Hurwitz, Esq. ("Hurwitz Decl.") Exh. 1) (emphasis added). Based on this colloquy, it appeared that the Court was not going to rule on claims 6, 10, 12, and 14 without a motion from a party or allowing AMBIT a meaningful opportunity to be heard.

-4-

On January 22, 2010, the Court issued an Order dismissing claims 6, 10, 12, and 14:

> As the Court explained on January 20, 2010 during the hearing on these motions, the term First RF Antenna shall be construed in claims 6, 10, 12, and 14 of U.S. Patent No. 7,400,858 as: The first RF antenna of the claimed system, which is located in close proximity to the radiative RF antenna associated with personal communication device(s), and is distinct from the second radiative RF antenna of the claimed system. According, Delta's motion for non-infringement [Doc. No. 110] is GRANTED as to claims 6, 10, 12 and 14. Delta's accused system has the first RF antenna located in the ceiling of the aircraft and is not in the close proximity to the radiative RF antenna associated with personal communication device(s). No reasonable jury, properly instructed could reach a contrary conclusion.

(D.I. #135).

## ARGUMENT

A. **The Court Granted Summary Judgment Without Providing AMBIT an Opportunity to Present Evidence of Infringement and to Demonstrate that there are Disputed Material Facts Requiring a Trial**

The Court raised the issue of noninfringement of claims 6, 10, 12, 14 for lack of "close proximity" for the first time during oral arguments on January 20, 2010 and on January 22, 2010, without any input from any party, granted summary judgment against AMBIT. Thus, the Court's order amounts to a *sua sponte* grant of summary judgment. First Circuit procedural law permits the Court to take such action, however, "the court must ensure that the targeted party has an adequate opportunity to dodge the bullet." *Berkovitz v. Home Box Office*, 89 F.3d 24, 29 (1st Cir. 1996). A *sua sponte* grant of summary judgment is only permissible when the Court "first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." *Id.* at 29. The lack of an opportunity to present evidence demonstrating that the first RF antenna of the Gogo system and the personal communication devices are within "close proximity," or that there is an issue of fact that needs to be submitted to the jury, is prejudicial to AMBIT. *See P.R. Elec. Power Auth. v. Action Refund*, 515 F.3d 57, 65

(1st Cir. 2008) (prejudice results when a party establishes that it was "unable to present evidence in support of its position as a result of the unfair surprise"). Here, AMBIT was not given the chance to dodge the bullet.

Defendants' memorandum in support of their noninfringement motion (D.I. #111) focused only on the independent claims. It did not specifically address dependent claims 6, 10, 12, and 14. Defendants argued that "[a]ll of the independent claims of the '858 patent require a 'first RF antenna'" that must be "juxtaposed" or "side by side" relative to the personal communication devices. (D.I. #111 at 9-10). Defendants therefore applied their own proposed claim constructions involving words such as "juxtaposed" and "side by side" that the Court ultimately rejected. Defendants motion also did not present any facts as to the actual physical distance between the first RF antenna and the personal communication devices in the accused Gogo system (D.I. #117).

Defendants also never submitted a statement of allegedly undisputed material facts as to whether the first RF antenna and the personal communication devices are within "close proximity" as construed in the Court's January 4, 2010 Order. AMBIT was not required to, and could not, respond to arguments that were never made.[1] In fact, Defendants Reply brief even advised the Court that "[i]t is unclear to Defendants what 'effective proximity' and 'close proximity' mean in the Court's constructions." (D.I. #133 at 14-15).

It was only on January 4, 2010 that the Court first construed "first RF antenna" to include the "close proximity" language. (D.I. #118). Furthermore, the Court's construction on this point was limited to claims 10 and 14, and did not include claims 6 or 12. (D.I. #118). During oral arguments on January 20, 2010, the Court even acknowledged that Defendants had not raised

---

[1] AMBIT did, however, submit evidence opposing Defendant's "near field" and "juxtaposition" argument, as well as Defendants' § 112 and § 103 arguments.

noninfringement of claims 6, 10, 12, and 14. *See* Jan. 20, 2010 Motion Hear Tr. at 2:13-4:12 (Declaration of Benjamin P. Hurwitz, Esq. ("Hurwitz Decl.") Exh. 1).

As described below, if AMBIT is given the opportunity to "dodge the bullet," it can successfully do so because there is evidence supporting a reasonable conclusion that the first RF antenna of the Gogo system does contain a shield, and that it is within "close proximity" to the personal communication devices. At the summary judgment stage, the Court must construe any inferences regarding the distances that constitute "close proximity" in favor of AMBIT. "This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." *Desmond v. Varrasso*, 37 F.3d 760, 763 (1st Cir. 1994).

**B.     To the Extent the Court's Ruling is Based on Applying *SciMed* to Limit Claim Scope, It Is Legally Incorrect**

At oral argument, the Court referred to *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) in connection with claims 6, 10, 12 and 14 of the '858 Patent:

> It's the ones that make reference to a shield. They're out. Because as to those I am following *SciMed*, I'm following *SciMed* I think generally, but as to those I'm saying it has to be in close proximity to. Your devices are, when you compare it to the accused device, they're not in close proximity to, end of case.

*See* Jan. 20, 2010 Motion Hear Tr. at 3:17-22 ("Hurwitz Decl." Exh. 1). In *SciMed,* the Court noted "when the 'preferred embodiment' is described as the invention itself, the claims are not entitled to a broader scope than that embodiment." *Id.* at 1341. Thus, in *SciMed*, the Federal Circuit limited the broad ordinary meaning of the claims based on the fact that the specification only described one embodiment as the invention. Specifically, the Court in *SciMed* made the following observation:

> Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.

*Id.* at 1341. Based on the Court's reference to *SciMed*, it appears, but it is certainly not clear to AMBIT, that the Court is of the view that claims 6, 10, 12 and 14, where shielding is claimed, should be limited to a particular embodiment disclosed in the patent specification.



Fig. 4

Further, it appears, but again is not clear to AMBIT, that the Court is of the view that the only discussion of the shield in the specification is the shield depicted in Fig. 4. In that figure the shield is only inches away from both the first RF antenna and the radiative antenna of the personal communications device. However, Fig. 4 is only one embodiment of the invention and thus it is an error to apply to the holding of *SciMed* to the '858 Patent. Indeed, the '858 Patent discloses multiple embodiments where the distance between the shield and any antenna may be a few inches, or may be many feet. For example, Figs. 3A and 3B depict a metal walled room, such as a space on an airplane, that is described as a focal area. The shield is located within and/or defining that focal area, but there is no requirement in that Figure that the shield be within inches of



Fig. 3A



Fig. 3B

an antenna. The '858 Patent, in numerous places, explains that the first antenna of claimed system may be associated with a "focal area," such as a volume or space in which the personal communication devices may be placed and a focal area can include a shield. '858 Patent at 2:4-8, 2:17-21, 4:22-26, 4:34-42, and 5:13-17; 2:15-18. ("The focal area may be defined by a metal walled structure within or on which a broadband probe is arranged. The metal walled structure acts as a shield to minimize radiation from the communication device from passing therethrough." 2:15-18). That focal area may be defined by an area as large as a shielded room in a building or a vehicle (such as an airplane) (*see* Figs. 3A (item 24) and 3B (item 65)), or may be as small as the area on a desk or an airplane seat tray. *See* item 75 in Fig. 4. Construing the claims as effectively requiring that "close proximity" requires "nearly touching" without reference to the extent of the different embodiments shown in the specification, is therefore inconsistent with the Federal Circuit's guidance in *SciMed*. In the absence of absolute language in the specification about what the invention is or is not, it is legal error to limit the scope of claims 6, 10, 12, and 14 in such a manner as the Court has done here.

Moreover, although not part of this Order, it would be a further error if the Court were to require the terms "close proximity" or "effective proximity" in other claim term construction to mean "nearly touching." Neither the ordinary meaning language of the claims nor the details in the specification support such a narrow construction.

### C.    To the extent The Court's Ruling is Based Applying the Construction of First RF Antenna to Shield, It Is Legally Incorrect

In its written ruling the Court appears to incorporate the definition of first RF antenna into the shielding element of claims 6, 10, 12 and 14. Specifically, the Court ruled:

> The term First RF Antenna shall be construed in claims 6, 10, 12, and 14 of U.S. Patent No. 7,400,858 as: The first RF antenna of the claimed system, which is located in close proximity to the radiative

> RF antenna associated with personal communication device(s), and is distinct from the second radiative RF antenna of the claimed system. According, Delta's motion for non-infringement [Doc. No. 110] is GRANTED as to claims 6, 10, 12 and 14. Delta's accused system has the first RF antenna located in the ceiling of the aircraft and is not in the close proximity to the radiative RF antenna associated with personal communication device(s). No reasonable jury, properly instructed could reach a contrary conclusion.

Presumably in issuing this ruling, the Court meant to distinguish claims 6, 10, 12 and 14 from the other claims of the '858 Patent, based on the fact that claims 6, 10, 12, and 14 are the only claims that refer to shielding in any way. However, the Court's ruling makes no mention of the "shielding" expressly added by these claims, but instead focuses upon the distance between the first RF antenna and the radiative antenna of the personal communications device.

To the extent the Court is now construing these claims to require that there be some specific distance between the shield and an antenna, we respectfully submit that the constructions are incorrect. Indeed, during the *Markman* briefing, both parties requested that the Court define the term "shield," but neither party included a distance requirement.

Both parties broadly defined the term "shield," and both parties definitions are consistent with the Institute of Electrical and Electronics Engineers (IEEE) Dictionary definition of "shield": "A housing, screen, or other object, usually conducting, that substantially reduces the effect of electric or magnetic fields on one side thereof, upon devices or circuits on the other side." (D.I. #44, Exh. J, Definition 4 (Hurwitz Declaration in Support of AMBIT's Preliminary *Markman* Brief)).

In construing claims 6, 10, 12, and 14, the Court should have first construed the term "shielding." Had the Court selected one of the definitions of the parties, summary judgment would not be possible on the grounds stated by the Court because neither parties' requested

definition requires a certain distance or other physical relationship between the two antennae or even between the first RF antenna and the shield.

D. **The Accused Gogo System in Fact has a Shield that is in Close Proximity to the First RF Antenna**

The CWAP antennae of the Gogo system, which constitutes the first RF antenna, are ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Since a metal plate will serve to prevent transmission of RF signals, as well as to reflect RF signals towards the antenna, a jury could properly conclude that ██████████████████████████ includes a shield that blocks the undesired travel of RF signals. *See* Supplemental Expert Report of D. Richard Brown Regarding Infringement, dated December 21, 2009 (Hurwitz Decl. Exh. 9).

E. **The Court Erred in Finding Noninfringement of Claim 12, Which Does Not Require Restricting "Undesired Travel" of RF signals**

In contrast to claims 6, 10, and 14, which explicitly require a "shield" or "shielding" to restrict or control "undesired travel" of RF signals, claim 12 contains no such limitation. Claim 12 states, "The method as recited in claim 7, wherein said local environment comprises at least a partially RF signal shielded area." For comparison, claim 10 states, "The method as recited in claim 7, including: shielding at least a portion of said local environment *to restrict undesired travel of wireless RF signals within said local environment*." (emphasis added). Different claims presumably have different scope, *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527

F.3d 1379, 1382 (Fed. Cir. 2009), and therefore it is inappropriate to equate claims 10 and 12 when claim 10 requires "restrict[ing] undesired travel of wireless RF signals" whereas claim 12 only requires "at least a partially RF signal shielded area."

Furthermore, a jury could properly conclude that an airplane contains several "RF signal shielded areas," such as the passenger cabin itself. Therefore, AMBIT requests that the Court reconsider its grant of noninfringement as to claim 12 because a jury could conclude that an airplane is a local environment "wherein said local environment comprises at least a partially RF signal shielded area." *See* Supplemental Expert Report of D. Richard Brown Regarding Infringement, dated December 21, 2009 at p. 59-60 (Hurwitz Decl. Exh. 9)

### F. There is Sufficient Evidence for a Jury to Conclude that the CWAP Antenna is Within "Close Proximity" Within the Context of the '858 Patent

Whether the first RF antenna and the personal communication devices are within "close proximity" is a question of fact. *See PPG Indus. v. Guardian Indus. corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.").

#### 1. A reasonable interpretation of "close proximity" in the context of the '858 Patent is "within the focal area"

A reasonable jury would look to the '858 Patent itself or an analogous instruction from the Court in applying the meaning of "close proximity" to the accused Gogo system. The '858 Patent explains that the claimed system may encompass a "focal area," such as a volume or space in which the personal communication devices may be placed. '858 Patent at 2:4-8 and 4-22-26. That focal area may be defined as a metal walled room in a building or a vehicle, such as an airplane. '858 Patent at 4:34-36. The '858 Patent shows and describes the focal area as the

shielded room (Figs. 3A (item 24) and 3B (item 65)) in which the personal devices are placed. '858 Patent at 2:17-21, 4:38-42, and 5:13-17. Thus in the context of the '858 Patent, "close proximity" between the first antenna and the personal communication devices means that they are both within the shielded focal area defined by the metal walls of the airplane.

### 2. Whether a distance of six feet is "close proximity" is a question of fact

As the Court itself has noted, the "accused system has the first RF antenna located in the ceiling of the aircraft." (D.I. #135).  Whether this distance of ▮▮▮▮ constitutes "close proximity" in the context of the embodiments and description of the '858 Patent is also a question of fact that should not be resolved by summary judgment.

### G. Conclusion

Since the Gogo system does contain a shield, and because the issue of "close proximity" is a question of fact on which Defendants submitted no evidence, and because the Court did not permit AMBIT an opportunity to submit evidence, the Court should vacate its January 22, 2010 Order grant of summary judgment of noninfringement of Claims 6, 10, 12, and 14.

January 29, 2010

Respectfully submitted,

AMBIT CORPORATION

By its attorneys,

/s/ Brian T. Moriarty
Brian T. Moriarty (BBO# 665995)
brian.moriarty@hbsr.com
David J. Thibodeau, Jr. (BBO# 547554)
david.thibodeau@hbsr.com
David J. Brody (BBO# 058200)
david.brody@hbsr.com
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, Massachusetts 01742-9133
Telephone:  (978) 341-0036
Facsimile:  (978) 341-0136

Lee T. Gesmer (BBO# 190260)
lee.gesmer@gesmer.com
Joseph J. Laferrera (BBO# 564572)
joe.laferrera@gesmer.com
Gesmer Updegrove, LLP
40 Broad Street
Boston, Massachusetts  02109
Telephone:    (617) 350-6800
Facsimile:    (617) 350-6878

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2010, a true and complete copy of the foregoing document was served upon the below-named counsel of record at the following addresses and in the manner indicated:

| | |
|---|---|
| Thomas D. Rein, Esq. | **VIA ECF** |
| David T. Pritikin, Esq. | **VIA ECF** |
| Stephanie P. Koh | **VIA ECF** |
| Thomas F. Hankinson | |
| SIDLEY AUSTIN LLP | |
| One South Dearborn | |
| Chicago, IL 60603 | |
|     trein@sidley.com | |
|     dpritikin@sidley.com | |
|     skoh@sidley.com | |
|     thankinson@sidley.com | |
| | |
| Tung T. Nguyen, Esq. | **VIA ECF** |
| SIDLEY AUSTIN LLP | |
| 717 N. Harwood, Suite 3400 | |
| Dallas, TX 75201 | |
|     tnguyen@sidley.com | |
| | |
| Mark D. Smith, Esq. | **VIA ECF** |
| Marc C. Laredo, Esq. | **VIA ECF** |
| LAREDO & SMITH LLP | |
| 15 Broad Street | |
| Suite 600 | |
| Boston, MA 02109 | |
|     smith@laredosmith.com | |
|     laredo@laredosmith.com | |

                                          /s/ Benjamin Hurwitz
                                          Benjamin Hurwitz

954903_1