IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMBIT CORPORATION,

               Plaintiff,

v.

DELTA AIR LINES, INC., AND
AIRCELL LLC,

            Defendants.

**Civil Action No. 1:09-CV-10217-WGY**

**Jury Trial Demanded**

## DEFENDANTS' OPPOSITION TO *SUA SPONTE* SUMMARY JUDGMENT ON OBVIOUSNESS

# TABLE OF CONTENTS

                                                                                            **Page**

I.      INTRODUCTION ............................................................................................. 1

II.     APPLICABLE STANDARDS ........................................................................... 4

        A.      Standards Governing *Sua Sponte* Consideration of Summary Judgment ............... 4

        B.      Obviousness ............................................................................................ 7

III.    DEFENDANTS' DECEMBER 22, 2010 SUBMISSION WAS SUFFICIENT TO
        DEMONSTRATE AT LEAST A DISPUTED ISSUE OF MATERIAL FACT AS
        TO OBVIOUSNESS BASED ON PAPAVRAMIDIS AND THE ADMITTED
        PRIOR ART. ................................................................................................. 8

        A.      Defendants Submitted Sufficient Evidence To Demonstrate That Each
                Element in the '858 Patent's Claims Is Disclosed in Papavramidis. ................... 8

        B.      Defendants Submitted Sufficient Evidence to Demonstrate That Any
                Potential Factual Dispute Regarding the Functions of the Control
                Computer in the '858 Patent's Claims Were Obviated by Plaintiff's
                Acquiescence in the Admitted Prior Art. ....................................................... 13

IV.     DEFENDANTS' CURRENT SUBMISSION IS SUFFICIENT TO
        DEMONSTRATE DISPUTED ISSUES OF MATERIAL FACT AS TO
        NUMEROUS OTHER PRIOR ART DEFENSES. ............................................. 14

        A.      The Airfone System and Dennis ................................................................. 15

        B.      The Original Aircell System ....................................................................... 17

        C.      Casewell .................................................................................................. 19

        D.      Other Prior Art ......................................................................................... 20

V.      CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page**

*Apple Computer, Inc. v. Articulate Sys., Inc.,*
    234 F.3d 14 (Fed. Cir. 2000) ...................................................................6

*Berkovitz v. Home Box Office, Inc.,*
    89 F.3d 24 (1st Cir. 1996).................................................................5, 7

*Chadwick v. WellPoint, Inc.,*
    561 F.3d 38 (1st Cir. 2009)...................................................................4

*Iron Grip Barbell Co. v. USA Sports, Inc.,*
    392 F.3d 1317 (Fed. Cir. 2004) ............................................................8

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007)...............................................................................7

*Leyva v. On the Beach, Inc.,*
    171 F.3d 717 (1st Cir. 1999).................................................................4

*NewRiver, Inc. v. Newkirk Prods., Inc.,*
    C.A. No. 06-12146, 2009 WL 4884024 (D. Mass. Dec. 16, 2009) ...............10, 11

*Stella v. Town of Tewksbury,*
    4 F.3d 53 (1st Cir. 1993)........................................................................4

**STATUTES**

35 U.S.C. §103.................................................................................................1, 7

**OTHER AUTHORITIES**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane
    *Federal Practice and Procedure* § 2720 (3d ed. 2009)........................................6, 7

## I.    INTRODUCTION

On December 22, 2009, Defendants Delta Air Lines, Inc. ("Delta") and Aircell LLC ("Aircell") (collectively "Defendants") moved for summary judgment of noninfringement, or in the alternative, invalidity, of the claims of U.S. Patent No. 7,400,858 ("the '858 patent").  In addition to various noninfringement defenses, Defendants argued that if the claimed "first RF antenna" is construed to read on the accused Gogo® Inflight Internet System, then the claims must be invalid as obvious under 35 U.S.C. § 103 (among other reasons).  As discussed below, Defendants submitted evidence (and are submitting additional evidence herewith) to demonstrate the presence of each limitation of the '858 patent's claims in a prior art reference referred to as Papavramidis.  In addition, because Defendants believed that Plaintiff might attempt to distinguish the functionality of the control computer in Papavramidis from that of the '858 patent's claims, Defendants also submitted evidence to demonstrate that Plaintiff had acquiesced, in the course of a related patent prosecution, in the patent examiner's repeated notices that the functionality of the claimed control computer was "notoriously well known," an acquiescence Defendants have referred to as "Admitted Prior Art."

On January 22, 2010, the Court denied Defendants' motion for summary judgment with respect to obviousness.  In that Order, the Court indicated that it is considering granting *sua sponte* summary judgment on the question of obviousness against Defendants, and invited additional briefing on that issue.  Defendants sought clarification on the scope of what was at issue.  In response, the Court stated that in bringing their December 22, 2009 summary judgment motion, Defendants were "obligated to set forth all the grounds that demonstrate there is no triable issue on [the obviousness] defense."  (Jan. 28, 2010 Elec. Order) (emphasis in original).

However, now that the Court is considering granting summary judgment against Defendants, the current posture is much different.  Now the tables have turned and Defendants' burden is to show that there are genuine issues of material fact that preclude summary judgment.  Further, the Court's January 22 Order could be read to implicate Defendants' entire obviousness case – not just the portion of their obviousness case directed to Papavramidis in combination

1

with the Admitted Prior Art. Defendants had no reason to make a showing on their entire

obviousness defense when moving for summary judgment in their favor; indeed, it would have

been self-defeating (and a waste of time and resources) to move for summary judgment

regarding prior art that Defendants believed, based on Plaintiff's expert reports and the Court's

claim constructions, implicated factual disputes.

Plaintiff has suggested that Defendants should be precluded from relying here or at trial

on prior art that was not raised in Defendants' motion for summary judgment. According to

Plaintiff, Defendants took their "best shot" and other prior art has thus been effectively removed

from the case. Plaintiff's position, however, reflects a fundamental misunderstanding of the

summary judgment process. In moving for summary judgment, Defendants had no reason to

raise prior art that Defendants believed Plaintiff would potentially be able to dispute on factual

grounds. But that is not to say that the prior art raised in Defendants' summary judgment motion

is "better" than the prior art it did not raise. For example, the "best" prior art for trial may well

be the systems that were described in publications and were in use before the effective filing date

of Plaintiff's patent, such as the cordless Airfone system and the early cordless Aircell system

that predated Gogo®. Jurors may better understand a real world system as opposed to a system

such as Papavramidis that is described only in technical terms in a publication. But that does not

mean that Defendants were obligated to move for (or even could have reasonably moved for)

summary judgment based on these real world systems, given potential factual disputes

underlying these defenses. For example, there appeared to be a factual dispute over whether the

earlier Aircell system qualifies as prior art, and proving up the specifics of both that system and

Airfone seemed to require testimony that could potentially be disputed at trial.

Moreover, as Defendants viewed it when they filed their summary judgment motion, the

biggest potential impediment to summary judgment of invalidity was the construction the Court

announced at the *Markman* hearing for controlling/limiting time. As that term had been

construed at the hearing (*i.e.*, time increments, not periods bounded by events), this was the one

limitation that was at least arguably absent from Papavramidis, thus requiring Defendants to rely

on obviousness, not anticipation, to avoid a factual dispute. To fill this potential gap, Defendants relied on the "Admitted Prior Art" from the prosecution history. Because the PTO had determined that controlling/limiting time (and the other claimed control computer functions) could not be a patentable distinction -- a determination in which the patentee had acquiesced -- Defendants believed that Plaintiff was estopped from avoiding summary judgment on this basis.

Although the Court denied Defendants' motion for summary judgment based on this argument, that is not to say that Defendants could not otherwise prove up the obviousness of having the computer in Papavramidis control or limit the transmission of an RF signal based on time intervals. For example, as Defendants' expert has explained in his expert reports and in his declaration submitted concurrently herewith, the public telephone system had been doing this for a long time. (Feb. 5 Michalson Decl ¶¶ 178-200). A person of ordinary skill in the art could readily apply this well-known functionality of the public telephone system to the control computers disclosed in Papavramidis; it was a well-known design choice and it would have been obvious to have the computer in Papavramidis perform the same types of functions that computers in well-known communications systems had long been performing. (*Id.* ¶¶ 178-200 & 232-234). The results of adding such well-known functions to the system of the '858 patent would be predictable to one of skill in the art, because there is no real difference in kind between applying those functionalities in computers in the public telephone system and applying them in a computer in an airborne system -- the functions have to do with the basic control and routing of signals in a system, not air-to-ground transmission. (Feb. 5 Michalson Decl. ¶ 200). Indeed, as discussed at length in Sections III and IV below, others had incorporated such functionalities in air-to-ground communication systems prior to Plaintiff's alleged invention. But Defendants knew Plaintiff would dispute this and were therefore not obligated to include these and other obviousness arguments involving disputed issues of fact in their summary judgment motion.

Further, if time can be a period bounded by events, rather than an actual time increment, as the Court seems to now be considering, Papavramidis and other primary prior art references discussed in this brief and the accompanying Michalson Declaration anticipate at least some of

3

the asserted patent claims and, at the very least, render the claims obvious. This potential shift in claim construction, announced January 20, 2010, is even more reason to consider the February 5 Michalson Declaration submitted herewith, which explains the disclosures of event-driven system access present or inherent in the prior art. In no event should the Court consider summary judgment against Defendants on the issue of obviousness without weighing this and other expert evidence that was not called for in connection with Defendants' December 22, 2009 motion, given the procedural posture and prevailing claim construction at that time. And, as explained below, both Defendants' December 22 motion papers and their present evidentiary submission demonstrate the existence of numerous disputes of material fact as to obviousness, precluding summary judgment against Defendants on that issue.

## II.    APPLICABLE STANDARDS

### A.  Standards Governing *Sua Sponte* Consideration of Summary Judgment

Because the Court is considering summary judgment against Defendants, it must now "view the record in the light most favorable to [Defendants] and draw all reasonable inferences in favor of [Defendants]." *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 41 (1st Cir. 2009). This is not changed by the Court's consideration of summary judgment *sua sponte*. *See Stella v. Town of Tewksbury*, 4 F.3d 53, 56 (1st Cir. 1993) ("[A]ll summary judgment proceedings, including those initiated by the district judge, will be held to the standards enunciated in *Rule 56* itself.") (emphasis in original).

As the First Circuit has explained, "a court's power to grant summary judgment *sua sponte* should be used with great circumspection." *Stella*, 4 F.3d at 55. And summary judgment should only be decided "after studying the parties' evidentiary proffers." *Id.*; *see also Leyva v. On the Beach, Inc.*, 171 F.3d 717, 719 (1st Cir. 1999) ("[U]nbesought summary judgments can prove problematic in the absence of proper procedural protections. To alleviate difficulties of this sort, we have counseled caution in the use of that technique.") (citation omitted).

As a procedural safeguard, the First Circuit requires that in considering *sua sponte* summary judgment against a party, the Court must give that party a meaningful opportunity to

4

marshal its full case and submit it for the Court's consideration. *See Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 31 (1st Cir. 1996). The *Berkovitz* Court vacated the district court's *sua sponte* entry of summary judgment because the court did not give the party opposing summary judgment "a meaningful opportunity to cull the best evidence supporting his position, and to present that evidence, together with developed legal argumentation, in opposition to the entry of summary judgment." *Id.* The *Berkovitz* Court found that the previous Rule 56 summary judgment record was not a satisfactory opportunity for the opposing party to present its best evidence, due to the nature of the summary judgment motions at that time. *Id.* at 31 fn.8.

Similarly, in this case, Defendants' December 22, 2009 motion for summary judgment was not a sufficient opportunity for Defendants to submit all of their evidence regarding obviousness to the Court. There are several reasons why. First and foremost, most of Defendants' obviousness defenses and positions concededly involve <u>disputed facts</u> (at least if the claims are construed as articulated as of the filing of Defendants' motion), and thus moving for summary judgment on them would have been inappropriate. Now that Defendants are on notice that the Court is considering summary judgment against them on the obviousness, they should be afforded the opportunity to submit evidence regarding their entire obviousness defense and should be allowed to demonstrate the numerous fact issues that preclude granting summary judgment of non-obviousness. Such evidence is submitted herewith.

Second, Defendants' December 22 obviousness argument was a nested, contingent ground for summary judgment. It was logically subordinate to Defendants' noninfringement argument and applicable only in the event that the Court construed "first RF antenna" to not require juxtaposition or close spacing with the antenna on a personal communication device. (*See* Dkt. 111 at Section IV). As such, it should not be construed as Defendants' only obviousness defense, or even their best one. Nor could it reasonably be deemed to waive or concede other obviousness defenses that were not briefed, given this context.

Third, Defendants' burden in moving for summary judgment was merely to submit evidence demonstrating a *prima facie* case of obviousness, at which point the burden shifted to

5

Plaintiff to dispute that case. *See Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000). To avoid unduly burdening the Court, Defendants submitted only the evidence they believed necessary to point out that Plaintiff does not dispute the disclosures of Papavramidis and the Admitted Prior Art. And they succeeded in pointing out that the disclosures of Papavramidis and the Admitted Prior Art are not disputed on factual grounds -- as discussed below, Plaintiff submitted no expert evidence or contrary documents in response to the relevant portions of Defendants' Local Rule 56.1 Statement.

And finally, Defendants' obviousness defenses (and anticipation arguments) will evolve if the Court changes its claim constructions, as it suggested it might do at the January 20, 2010 summary judgment hearing. At that time, the Court stated that Defendants had "accurately parse[d]" the *Markman* hearing regarding the Court's construction of "control time" to exclude periods bounded by events. But the Court indicated that the discussion of this term had only been an attempt to "conceptualize the language," and that possibly a period bounded by events might indeed be "controlling for time," or that question might be a jury issue. (Hg. Tr. at 8-9 (Koh Decl. at Ex. 11)).[1] Knowing now that the Court's ultimate construction of controlling/limiting time might include a period bounded by events, Defendants have additional obviousness -- and anticipation -- arguments concerning prior art references and systems, such as Airfone, that control system access based on periods bounded by events, and that disclose the other limitations of the '858 patent's claims.

Moving for summary judgment of obviousness on a narrow issue that turns largely on issues of law, rather than fact, is quite different from bringing into issue all obviousness defenses in the movant's contentions. As explained by Wright & Miller:

> [A] party may argue that no issue exists in the hope that his legal theory will be accepted, **but at the same time the movant may maintain that there is a genuine factual dispute in the event his theory is rejected** or the opponent's is adopted. It should be remembered that a party moving for summary judgment concedes

---

[1] References to "Koh Decl." are to the Declaration of Stephanie P. Koh in Support of Defendants' Opposition to *Sua Sponte* Summary Judgment on Obviousness submitted concurrently herewith.

6

the absence of a factual issue and the truth of the nonmoving
party's allegations **only for the purposes of his own motion**.  It
follows that the legal theories the movant advances in support of a
Rule 56 motion and the assertion that there is no issue of material
fact **may not be used against the movant  when the court rules
on his adversary's motion**.

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*

§ 2720 (3d ed. 2009) (citations omitted).  Likewise, in considering *sua sponte* summary

judgment against the original movant, "great care must be exercised to assure that the original

movant has had an adequate opportunity to show that there is a genuine issue and that the

opponent is not entitled to judgment as a matter of law." *Id.* (citations omitted).

     For all these reasons, like the plaintiff in *Berkovitz*, Defendants here must be given the

opportunity demonstrate the presence of factual issues that preclude summary judgment being

entered against them.  Accordingly, Defendants submit their obviousness evidence herewith.

### B.  Obviousness

     A patent is invalid for obviousness "if the differences between the subject matter sought

to be patented and the prior art are such that the subject matter as a whole would have been

obvious at the time the invention was made to a person having ordinary skill in the art to which

said subject matter pertains." 35 U.S.C. § 103(a). "The combination of familiar elements

according to known methods is likely to be obvious when it does no more than yield predictable

results," and "the analysis need not seek out precise teachings directed to the specific subject

matter of the challenged claim…" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-418 (2007).

Regardless of whether the prior art contains an explicit teaching, suggestion or motivation to

combine known elements, "[i]f a person of ordinary skill can implement a predictable variation,

and would see the benefit of doing so, § 103 likely bars patentability." *Id.* at 417.[2]

---

[2] Defendants contend that a person of ordinary skill in the art here is a person with a Bachelor of
Science degree in Electrical Engineering who has at least a few years of experience designing
both communication systems and computer systems, as well as programming computer systems,
as explained by Dr. Michalson. (Dkt. 58 ¶ 4; Feb. 5 Michalson Decl. ¶ 19).  Plaintiff's expert
only disagrees on what type of work experience one of ordinary skill would have. (Dkt. 45 ¶ 6;

Plaintiff has suggested that Defendants' obviousness case must fail if it does not demonstrate that secondary considerations of non-obviousness are inapplicable. This is incorrect. It is Plaintiff's burden to come forward with secondary considerations of non-obviousness. *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004) ("Since [the patentee] has not presented evidence of [secondary considerations], we conclude that there is no objective evidence to rebut the strong showing of obviousness based on the prior art"). Here, even though discovery is closed, Plaintiff has not alleged any factual basis supporting any secondary considerations in response to a contention interrogatory on that issue. (Pl.'s Resp. to Interrog. No. 10 (Koh Decl. at Ex. 12)). Moreover, even in their summary judgment opposition, Plaintiff failed to raise any secondary considerations of non-obviousness. Thus, there are no secondary considerations to which Defendants must offer a response.

## III.   DEFENDANTS' DECEMBER 22, 2010 SUBMISSION WAS SUFFICIENT TO DEMONSTRATE AT LEAST A DISPUTED ISSUE OF MATERIAL FACT AS TO OBVIOUSNESS BASED ON PAPAVRAMIDIS AND THE ADMITTED PRIOR ART.

### A.   Defendants Submitted Sufficient Evidence To Demonstrate That Each Element in the '858 Patent's Claims Is Disclosed in Papavramidis.

The December 22, 2009 Michalson Declaration contains evidence, including expert opinion supported by explanation and references, demonstrating that each element in the '858 patent's claims is disclosed in Papavramidis in combination with the admitted prior art. This Section will first address the elements that appear in the independent claims of the '858 patent, and then the remaining elements that appear in the dependent claims still at issue.[3]

Each independent claim of the '858 patent contains essentially the same set of structures: (1) "personal computer communication devices" or "wireless personal RF communication

---

Feb. 5 Michalson Decl. ¶ 20). Dr. Michalson indicates that his opinions about the disclosures in the prior art would be the same under either formulation. (Feb. 5 Michalson Decl. ¶ 20).

[3] Defendants are not submitting evidence or argument about dependent claims 6, 10, 12 and 14 at this time because the Court has granted summary judgment of noninfringement as to those claims, essentially mooting the issue of validity. Defendants reserve the right to submit evidence and argument concerning the invalidity of these claims if they are put back at issue.

devices;" (2) at least one "first RF antenna;" (3) at least one "second RF antenna;" (4) a communications link between the "first RF antenna" and the "second RF antenna;" (5) a distant communication system; and (6) a control computer with various functions such as controlling use and time, controlling RF signals, and limiting time. '858 patent, cls. 1, 7 and 13. In the independent method claims (claims 7 and 13), the steps of the claimed method involve placing or arranging these elements, wirelessly communicating between the personal communication devices and the "first RF antenna," and carrying out the control computer's various functions.

Papavramidis discloses each of these claim elements, and the December 22, 2009 Michalson Declaration explained these disclosures with supporting citations. Dr. Michalson explained that when Papavramidis describes "portable ESs," or "End Systems," and "PCS," or "Personal Communication Systems," that is the same as the "personal computer communication devices" and "wireless personal RF communication devices" in the '858 patent's claims. (Dec. 22 Michalson Decl., Dkt. 116, ¶¶ 12, 16-19). Dr. Michalson explained that some of the personal devices disclosed in Papavramidis are computer terminals that transfer data, corresponding to the '858 patent's "personal computer communication devices." (*Id.* ¶¶16-19). Dr. Michalson further explained that the "base station" of Papavramidis in the ceiling of the aircraft incorporates at least two antennas communicating with the wireless communication devices on board the aircraft (two, because of the meaning of "antenna diversity" to one of skill in the art), which are the same as the "first RF antenna" of the '858 patent's claims, if that limitation is construed in a way that could include antennas in the ceiling of an aircraft. (*Id.* ¶¶ 13-15). Further, Dr. Michalson pointed out that the system disclosed in Papavramidis converts RF signals into baseband packets that are then routed in the aircraft, and so the reference discloses a "communication link," if that term is construed to include conversion of RF signals into baseband packets that are then routed through the system on the aircraft (which is what happens in the accused Gogo® system). (*Id.* ¶ 23). He also explained that the "air-ground element" of Papavramidis (*i.e.*, the "VHF" link to the terrestrial system, and the "INMARSAT" link to a satellite system), is the same as the '858 patent's "second RF antenna," and that the terrestrial system and the INMARSAT satellite system

9

correspond to the "distant communication system" of the '858 patent. (*Id.* ¶¶ 20-21). Moreover, Dr. Michalson explained that when Papavramidis describes two computers in the routing of an incoming call (an "avionics router" and an "Interworking Unit"), those computers are the same as the control computer in the '858 patent's claims. (*Id.* ¶¶ 22-24).[4]

The dependent claims of the '858 patent that are still at issue add very few additional elements. Claim 5 requires that the "distant communication system" is a "satellite," and Dr. Michalson explained in his December 22, 2009 Declaration that the "INMARSAT" system of Papavramidis is the same as this claim limitation. (*Id.* ¶ 21). Claims 11 and 17 merely require that at least one of the personal communication devices is a laptop computer, and Dr. Michalson explained that Papavramidis discloses exactly that by virtue of discussing system compatibility with "portable terminals which are used for data transfer" and "the Digital European Cordless Telecommunications (DECT) system," both of which include laptop computers. (*Id.* ¶¶ 16-19). Claim 16 requires "a plurality of first RF antennae," and as mentioned above, Dr. Michalson explained that due to the well known meaning of "antenna diversity" to one of skill in the art, the description of the "base station" in the ceiling of the aircraft in Papavramidis is the same as the at least two "first RF antennae" in the claims of the '858 patent. (*Id.* ¶¶ 13-15). Claims 2, 3, 4, 8, 9, and 15 merely describe various additional functions performed by the control computer element of the independent claims. The functionality of the control computer will be discussed further in Section III(B) below.

In contrast to the expert opinion that this Court rejected in its recent *NewRiver v. Newkirk* case (C.A. No. 06-12146, 2009 WL 4884024 (D. Mass. Dec. 16, 2009)), Dr. Michalson's explanations in his December 22 declaration were not mere *ipse dixit*. In *NewRiver*, the expert

---

[4] At the January 20, 2010 summary judgment hearing, Plaintiff's counsel incorrectly stated that Defendants "concede in their papers that there's no discussion of a control computer in the Papa[vramidis] reference." (Jan. 20, 2010 Hg. Tr. at 17-18 (Koh Decl. at Ex. 11)). In fact, in Defendants' opening brief, they asserted that Papavramidis discloses a computer corresponding to the "control computer" of the '858 patent's claims, citing evidence in Papavramidis and in paragraphs 22 through 24 of the December 22, 2009 Michalson Declaration. (Dkt. 111 at 14).

merely read the claims at issue into evidence and said, without any explanation, that the claimed subject matter was obvious. *NewRiver, Inc. v. Newkirk Prods., Inc.*, C.A. No. 06-12146, 2009 WL 4884024, at *7 (D. Mass. Dec. 16, 2009)). Here, Dr. Michalson quoted from Papavramidis and pointed out the specific structure and steps in Papavramidis that correspond to each of the elements in the asserted claims of the '858 patent. He also explained why these disclosures in Papavramidis equate to the claim limitations in the asserted patent claims. In addition, as explained below, Dr. Michalson explained how and why the Admitted Prior Art from the prosecution of the related '471 patent renders obvious the functions of the claimed "control computer." This is a far cry from the conclusory testimony at issue in *NewRiver*.

Plaintiff's Local Rule 56.1 Statement confirms that Defendants carried their burden in moving for summary judgment to point out the absence of disputed material facts regarding the disclosures of Papavramidis. When confronted with the disclosures of Papavramidis and Dr. Michalson's explanations summarized above, <u>Plaintiff failed to come forward with contrary evidence</u>. In its Local Rule 56.1 Statement, Plaintiff provided mere attorney argument without even a scintilla of opposing expert evidence on whether or not the disclosures in Papavramidis correspond to the limitations in the '858 patent's claims. (Dkt. 126 at 24-31). Plaintiff failed to cite even a single document or declaration in its responses to Facts No. 57, 59, 63, 64, 68 and 71, which concerned whether Papavramidis discloses features that are the same as the '858 patent's first RF antenna(e), second RF antenna, communications link and satellite. (*Id.*) And Plaintiff cited only the Papavramidis document without any expert explanation in its responses to Facts No. 58, 61, 65 and 78, which concerned whether Papavramidis discloses features that are the same as the '858 patent's personal computer communication devices, control computer, and first RF antennae. Plaintiff also did not dispute the quotations from Papavramidis in its responses to Facts No. 56, 60, 66, 67, 70, 74, 77, and 79. (Dkt. 126 at 24-31).[5]

---

[5] Plaintiff disputed a quotation from Papavramidis in its Rule 56.1 Statement at Fact No. 62 (Dkt. 126 at 26), but the matter can be decided by consulting the document itself (Dkt. 112 at Ex. 19), the authenticity of which is uncontested.

It is also significant that in its Opposition to Defendants' motion, Plaintiff only contended that two claim elements were allegedly absent from Papavramidis -- the claimed "personal computer communications devices" and the claimed "control computer." (Pl.'s Opp. at 12 (Dkt. 125)). With respect to the "personal computer communication devices," Plaintiff's argument misses the mark for a number of reasons. For one thing, only claim 1 (and claims 2-6 that depend from it) require "personal computer communication devices." The other claims require "wireless personal RF communication devices," and Plaintiff did not dispute that Papavramidis discloses such personal communication devices. Second, Plaintiff is taking the position that "personal computer communication devices" and "wireless personal RF communication devices" are not limitations of the claims; as such, Plaintiff is in no position to distinguish Papavramidis on the basis of the types of devices disclosed. And finally, Defendants' expert explained at length why the devices in Papavramidis satisfy these claim limitations. (Dec. 22 Michalson Decl., Dkt. 116, ¶¶ 16-19). Accordingly, at the very least, there is a factual dispute over this and summary judgment cannot be granted in Plaintiff's favor on this point.

The only other dispute Plaintiff raised about Papavramidis is whether it discloses a control computer. However, as explained by Dr. Michalson, Papavramidis discloses two different computers in the system onboard the airplane (the Interworking Unit and the Avionics Router), both of which control various aspects of the communication. (Dec. 22 Michalson Decl., Dkt. 116, ¶¶ 22-24). And in its Opposition, Plaintiff did not identify any specific functionality that the computer in Papavramidis allegedly does not perform. Thus, the disclosures in Papavramidis, explained by Dr. Michalson in his December 22 Declaration, are sufficient to demonstrate at least an issue of fact.[6]

---

[6] In briefing their summary judgment motion, Defendants were laboring under the construction of controlling/limiting time expressed at the *Markman* hearing, which adopted time intervals as opposed to periods bounded by events. Accordingly, Defendants did not originally submit expert evidence from Dr. Michalson explaining that Papavramidis discloses controlling system access based on periods bounded by events. Apart from all the other reasons to consider Defendants' current submission of evidence in full, if it modifies its claim construction of controlling/limiting time to include periods bounded by events, the Court should at the very least

**B. Defendants Submitted Sufficient Evidence to Demonstrate That Any Potential Factual Dispute Regarding the Functions of the Control Computer in the '858 Patent's Claims Were Obviated by Plaintiff's Acquiescence in the Admitted Prior Art.**

Defendants believed that Plaintiff might try to raise a factual issue with respect to the various functions of the control computer in Papavramidis. Hence, Defendants relied on the "Admitted Prior Art" regarding the control computer's functions in a related patent prosecution ("the '471 application") as indisputable evidence that Plaintiff had acquiesced that the claimed functions of the control computer were "notoriously well known" in the art, and thus could not supply a point of novelty for the alleged invention of the '858 patent. Because the words of the patent prosecution documents at issue are not in dispute, the Admitted Prior Art provided an avenue for proving obviousness of the control computer's various functions that was uniquely suited to be raised on summary judgment. Defendants therefore argued the significance of the '471 application's Admitted Prior Art in their brief (Dkt. 111 at 15-17), and Dr. Michalson compared the control computer functions in the claims of that related application, as then pending when the Patent Office rejected them as obvious, to the control computer functions claimed in the '858 patent. (Dec. 22 Michalson Decl., Dkt. 116, ¶¶ 26-29). Dr. Michalson explained how each of the claimed functions of the control computer in the '858 patent are substantially similar to and are encompassed by the computer functions claimed in the '471 application at the time the patent examiner deemed those functions to be "notoriously well known." (*Id.* ¶¶ 26-29). For example, Dr. Michalson explained that the '858 patent's limitations regarding controlling, limiting, or regulating use, time or RF signals are substantially similar to

---

consider Defendants' evidence on this point: As Dr. Michalson explains, when Papavramidis discloses control by the "Avionics Router" and "IWU" of access to the system based on when the system has sufficient capacity, it is the same as the '858 patent's limitations concerning controlling or limiting time, to the extent those limitations are construed to include periods bounded by events. (Feb. 5 Michalson Decl. ¶¶ 148, 565, 569-570, 588-590, 609, 611-612, 625-628). In addition, as explained in Dr. Michalson's declaration, the computers on the aircraft in Papavramidis either perform the other computer functions described in the '858 patent's claims, such as filtering, regulating, and billing for time, or it would have been obvious to modify one of the onboard computers to perform those functions. (*Id.* ¶¶ 143, 146-151, 178-200, 562-565, 568-575, 591-595, 613-614 & 622-629).

one of ordinary skill in the art as the "regulation of signals" limitation at issue in the rejected claims of the '471 application. (*Id.* ¶ 28). Similarly, Dr. Michalson further explained that the other functions of the control computer claimed in the '858 patent are encompassed by the functions in the claims of the '471 application that were essentially admitted by the patentee to be "notoriously well known." (*Id.* ¶ 29). In its opposition papers, Plaintiff presented no evidence whatsoever to contradict Dr. Michalson's opinions about these computer functions.

In Defendants' view, Plaintiff's acquiescence in the Admitted Prior Art, which is demonstrated by the undisputed contents of patent prosecution documents and Plaintiff's failure ever to dispute the patent examiner's Official Notice, should operate to cut off any purported factual issue on the various functions of the control computer in the prior art -- the functions of the control computer were found by the Patent Office to be "notoriously well known" and the Patentees did not dispute the Patent Office's conclusion. Nonetheless, Defendants can (and now do) provide additional, factual evidence on the presence of these functions in the prior art and the obviousness of adding this functionality to a "control computer" involved in wireless communication from a plane. (*See* Feb. 5 Michalson Decl. ¶¶ 164-200, 228-234). Together with the Admitted Prior Art from the prosecution history,[7] this evidence is more than sufficient to demonstrate the existence of a genuine issue of fact as to obviousness of the claims of the '858 patent.

## IV.  DEFENDANTS' CURRENT SUBMISSION IS SUFFICIENT TO DEMONSTRATE DISPUTED ISSUES OF MATERIAL FACT AS TO NUMEROUS OTHER PRIOR ART DEFENSES.

The subject matter claimed in the '858 patent is by no means novel. Rather, as described below and as set forth in detail in Dr. Michalson's concurrently submitted declaration, a

---

[7] To the extent the Court denied summary judgment because it did not believe that the prosecution history conclusively established that the patentee acquiesced to the examiner's Official Notice, or because it did not believe that the facts determined by the examiner through his Official Notice mean that one of skill in the art would necessarily conclude that the control computer functions claimed in the '858 patent are also obvious, these too are at least disputed issues of fact.

comparison of the '858 patent claim limitations to disclosures in the prior art reveals that the claims of the '858 patent as currently construed are anticipated or rendered obvious by numerous references and systems in addition to Papavramidis predating Plaintiff's alleged invention. At the very least, this evidence precludes granting summary judgment against Defendants.

### A. The Airfone System and Dennis

The Airfone system was an air-to-ground communications system which allowed passengers to use personal wireless communication devices inside the aircraft to communicate with others on the ground. The Airfone system was publicly known at least as early as February 1982 and was in public use by at least October 1984. (Feb. 5 Michalson Decl. ¶¶ 24, 29-34). The Airfone system was operated commercially beginning in October 1984, and by 1985, it had been installed in over 100 aircraft from at least nine airlines. (*Id.* ¶¶ 24, 29, 34).[8] There is a substantial amount of evidence in the record of the relevant features of Airfone, including former Airfone employee Steven Arntzen's firsthand knowledge of Airfone (as set forth in his concurrently filed declaration), several published articles authored by Dennis, Black, Klass, and others, and Dr. Michalson's expert opinions. In fact, as Dr. Michalson explains in his concurrently submitted declaration, in addition to the Airfone system that was in public use and on sale, the Dennis article itself anticipates, or at the very least, renders obvious the claims of the '858 patent.

The Airfone system included features that were the same as each limitation of the '858 patent's claims, anticipating them or in the alternative at least rendering them obvious in combination with other prior art. For instance, the cordless handsets of Airfone are the same as the "wireless personal RF communication devices" in the '858 patent's claims. (*Id.* ¶¶ 42-45, 238, 264, 266, 288 & 290). Further, the handset of Airfone combined with a portable computer through an "acoustic coupler," taken together, are the same as the '858 patent's "personal

---

[8] Although there were some modifications to Airfone's cordless system over time, from at least 1984-1990, the basic components of the system and its functionality remained the same. (Arntzen Decl. ¶¶ 2 & 5).

computer communication devices," or at the very least render them obvious. (*Id.* ¶¶ 46-62, 221-227, 238-239, 284-286 & 307-314). Airfone also included antennas in the ceiling of the aircraft, which are the same as the "first RF antenna" of the '858 patent's claims, if "effective proximity" in the Court's claim construction means "effective in picking up RF signals from personal communication devices." (*Id.* ¶¶ 63, 241, 267 & 293).[9] Airfone's "L-band blade antennas" were arranged to radiate outside the aircraft and were used to communicate wirelessly with the ground, corresponding to the '858 patent's "second RF antenna" (*id.* ¶ 64, 242, 268 & 294), and the ground stations used by the Airfone system were the same as the "distant communication system" of the '858 patent (*id.* ¶¶ 24, 64, 68-69, 71-75, 240, 242, 265, 268, 289 & 294). In between the ceiling antennas and the L-band blade antennas, Airfone also had a communications link as in the claims of the '858 patent, at least to the extent that the accused Gogo® system has such a link. (*Id.* ¶¶ 68-76, 78-79, 244-246, 269-271, 295-297 & 318-321). Moreover, Airfone's "Airborne Computer Unit" or "ACU" is a computer that controls access to the system, including authorizing use based on a valid credit card purchase, and controlling when the cordless handset of Airfone can communicate through the system to the ground (*e.g.*, using Doppler shift data to select the ground station that will likely allow the call to last for the longest amount of time, and also enabling a call when a ground station is within range of the aircraft). (*Id.* ¶¶ 66-74, 76-78, 80-90, 243-247, 250-260, 269-271, 276-277, 279-283, 295-297 & 303-304). At least to the extent that the '858 patent's limitations concerning controlling or limiting time can be fulfilled by controlling system access based on periods bounded by events, the ACU is the same as the control computer in the '858 patent's claims. (*Id.* ¶¶ 67-72, 80-84, 247, 254-256, 276-277, 299, 301 & 318-321). It performs not only the functions of the control computer that are listed in the

---

[9] If "effective proximity" includes a spatial limitation similar to juxtaposed, close proximity, or side-by-side, then the accused Gogo® system does not infringe, as discussed in Defendants' December 22, 2009 summary judgment motion. If "effective proximity" means that the "first RF antenna" must be located in a way that enables the prevention of stray radiation, in that case, too, the accused Gogo® system does not infringe, as discussed in Defendants' reply in support of their December 22 motion.

'858 patent's independent claims, but also (at least to the extent Gogo® is argued to infringe) the functions of the various dependent claims, such as billing for time, billing for use, and filtering or switching communications. (*Id.* ¶¶ 65, 67, 70, 75-76, 85-90, 250-260, 279-283, 303-304 & 315-321).

Space does not permit a full explanation here of all the evidence Defendants submit, but Mr. Steven Arntzen's and Dr. Michalson's declarations submitted herewith contain a great deal more detail and analysis of Airfone and Dennis and their inclusion and disclosure of the limitations of the claims of the '858 patent. (*Id.* ¶¶ 24, 29-90, 235-322, 480, 553, 629 and Ex. B; Arntzen Decl. ¶¶ 5-12).

### B. The Original Aircell System

The original Aircell system was an air-to-ground communications system that allowed passengers to use personal wireless communication devices inside the aircraft to communicate with others on the ground. (Feb. 5 Michalson Decl. ¶ 91). The Aircell system was publicly known at least as early as April 26, 1993, and was in public use at least as early as October 1995. (*Id.*). The original Aircell system was developed by inventor Jimmy Ray, among others, and is evidenced by his firsthand knowledge (as set forth in his concurrently filed declaration) and various printed publications describing it. Public disclosure of the features of the Aircell system is also evidenced by various patents. (*Id.* ¶¶ 108-113). The original Aircell system provided a single phone line from the airplane to the ground, but it could be used with multiple wired or wireless handsets at once, or with a laptop computer. (*Id.* ¶¶ 92, 94-100). This was accomplished through a cordless base station plugged into a "data interface." (*Id.* ¶¶ 95-100).

The original Aircell system included features that were the same as each limitation of the '858 patent's claims, anticipating them or at the very least rendering them obvious in combination with other prior art. For instance, cordless telephones could be used with the early Aircell system, and were the same as "wireless personal RF communication devices" in the '858 patent's claims. (*Id.* ¶¶ 95, 99, 326-327, 348, 350, 372, 374 & 390-393). Further, the original Aircell system could be used with portable computers via a modem, in which case such computers were

17

the same as the '858 patent's "personal computer communication devices." (*Id.* ¶¶ 94-95, 99-100, 326-327, 368-370, 390-392 & 394-396). The antenna on the cordless base station plugged into the Aircell "data interface" was the same as the "first RF antenna" of the '858 patent's claims, if "effective proximity" in the Court's claim construction means "effective in picking up RF signals from personal communication devices." (*Id.* ¶¶ 96, 329, 351 & 377). The original Aircell system's "belly-mounted blade antenna" was the same as the '858 patent's "second RF antenna" (*id.* ¶ 93, 330, 352 & 378), and the network of cellular towers on the ground with which the original Aircell system communicated through the belly-mounted antenna was the same as the "distant communication system" of the '858 patent (*id.* ¶¶ 26, 93, 103, 328, 349, 352, 373 & 378). Depending on the prevailing claim construction, the original Aircell system also either had a communications link as in the '858 patent's claims or could be modified within the knowledge of one of skill in the art to include a communications link, with a predictable result. (*Id.* ¶¶ 102, 332-334, 353-355 & 379-381). Further, the transceiver in the original Aircell system was a computer corresponding to the control computer in the '858 patent's claims. (*Id.* ¶¶ 93, 101-107, 331-335, 338-345, 353-355, 357-361, 363-367, 379-381, 383-385, 387-388, 397-399 & 400-403). The transceiver either performed or could be modified by one of skill to perform the various functions of the control computer in the independent and dependent claims of the '858 patent. (*Id.*). For instance, the transceiver controlled the use of the system, and to the extent that controlling time is construed to include controlling periods bounded by events, the transceiver limited the time the system could be used based on the status of a "weight-on-wheels" signal, which changed based on whether the plane was on the ground or not. (*Id.* ¶¶ 101, 103-104, 335, 339-341, 360-361, 383-385 & 400-403). This is equivalent to Plaintiff's allegation against the accused Gogo® system, based on a signal indicating that the plane is above 10,000 feet.

Again, space does not permit a full explanation here of all the evidence Defendants submit, but Mr. Jimmy Ray's and Dr. Michalson's declarations submitted herewith contain much more detail and analysis of the early Aircell system and its inclusion of the limitations of the '858 patent's claims. (*Id.* ¶¶ 26, 91-113, 323-404, 480, 553, 629 & Ex. B; Ray Decl. ¶¶ 4-12).

### C. Casewell

In December of 1989, I.E. Casewell presented an article entitled *The Provision of GSM Cellular Radio Environments Within Passenger Aircraft Operating Over Europe* (hereinafter, "Casewell") at a conference in the United Kingdom. (Feb. 5 Michalson Decl. ¶ 118; Casewell (Koh Decl. at Ex. 28)). Casewell reported on the findings of a feasibility study concerning the provision of a "GSM," or "Global System for Mobile communications," cellular radio environment inside passenger aircraft operating over Europe. (Feb. 5 Michalson Decl. ¶¶ 119; Casewell at 172). Casewell anticipated that there would be 4 million GSM cellular phones in use throughout the major population centers of Western Europe by the mid-90s and that airline passengers would want the ability to use their hand-portable cellular phones while in flight; accordingly, it proposed a system that would allow in-flight connection to the Public Switched Telephone Network (PSTN). (Feb. 5 Michalson Decl. ¶ 120; Casewell at 172-73).

Casewell discloses features that are the same as each limitation of the '858 patent's claims, anticipating them or in the alternative at least rendering them obvious in combination with other prior art. For instance, the "GSM hand-portable telephones" and "mobile stations" described in Casewell are the same as the "wireless personal RF communication devices" and "personal computer communication devices" in the '858 patent's claims. (Feb. 5 Michalson Decl. ¶¶ 127-128, 214-215, 484-485, 504-505, 521-522, 524, 526 & 540-545). Casewell also discloses that its "aeronautical transponder" has an antenna inside the aircraft, which is the same as the "first RF antenna" of the '858 patent's claims, if "effective proximity" in the Court's claim construction means "effective in picking up RF signals from personal communication devices." (*Id.* ¶¶ 125, 487, 507, 529 & 539). The "aeronautical transponder" disclosed in Casewell also has an antenna outside the aircraft that emits RF electromagnetic waves to communicate with a distant communication system, and thus is the same as the '858 patent's "second RF antenna." (*Id.* ¶ 126, 488, 508 & 530). The "Aeronautical Base Stations" and "Aeronautical Mobile Switching Center" of Casewell are a ground network corresponding to the "distant communication system" of the '858 patent. (*Id.* ¶¶ 126, 486, 506 & 525). In describing the link

19

from the "mobile stations" to the "aeronautical transponder" to the ground network, Casewell discloses a communications link that is the same as in the claims of the '858 patent, at least to the extent that the accused Gogo® system has such a link. (*Id.* ¶¶ 131, 490, 509 & 531). Moreover, the "aeronautical transponder" in Casewell is a computer that can enable communications using the system (*Id.* ¶ 129-136, 489-491, 494-501, 509, 511-520, 531, 533-534, 535, 537-538 & 546-552). To the extent that the '858 patent's limitations concerning controlling or limiting time can be fulfilled by controlling system access based on periods bounded by events, the "aeronautical transponder" is the same as the control computer in the '858 patent's claims, or at least discloses enough to one of skill in the art to render the control computer and its various functions obvious. (*Id.* ¶¶ 132-133, 178-200, 228-234, 491, 495-497, 513-514, 535 & 549-552).

Space does not permit a full explanation here of all the evidence Defendants submit, but Dr. Michalson's declaration contains a great deal more detail and analysis of Casewell and its disclosures of the limitations of the claims of the '858 patent. (*Id.* ¶¶ 118-136, 481-553 & Ex. B).

### D. Other Prior Art

The large volume of prior art references that render obvious the claims of the '858 patent makes it impracticable to describe them all without excessively burdening the Court with an overlong brief that largely reiterates Dr. Michalson's analysis. Defendants rely on all of the prior art and explanations contained in the declarations submitted concurrently herewith, including but not limited to the discussions of Papavramidis (*id.* ¶¶ 137-151 & 554-629) and Suzuki (*id.* ¶¶ 114-117 & 405-480). The references and systems summarized above, as well as the other references Dr. Michalson analyzes, all serve to demonstrate, at the very least, that genuine issues of material fact preclude summary judgment being granted against Defendants on the issue of obviousness.

## V.    CONCLUSION

For all the reasons stated above and in the declarations submitted concurrently herewith, the Court should not grant summary judgment against Defendants on the issue of obviousness.

Dated:  February 5, 2010

OF COUNSEL:

David T. Pritikin
Email:  dpritikin@sidley.com
Thomas D. Rein
Email: trein@sidley.com
Stephanie P. Koh
Email: skoh@sidley.com
Thomas F. Hankinson
Email: thankinson@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL  60603
Tel: 312-853-7000
Fax: 312-853-7036

Tung T. Nguyen
Email: tnguyen@sidley.com
**SIDLEY AUSTIN LLP**
717 N. Harwood, Suite 3400
Dallas, Texas 75201
Tel: 214-981-3300
Fax: 214-981-3400

/s/ Marc C. Laredo
Marc C. Laredo, BBO#543973
Email: laredo@laredosmith.com
Mark D. Smith, BBO#542676
Email: smith@laredosmith.com
**LAREDO & SMITH, LLP**
15 Broad Street, Suite 600
Boston, MA  02109
Tel: 617-367-7984
Fax: 617-367-6475

**ATTORNEYS FOR DEFENDANTS DELTA AIR
LINES, INC. AND AIRCELL LLC**

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be

sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).

February 5, 2010

/s/ Marc C. Laredo
Marc C. Laredo BBO#543973
Email: laredo@laredosmith.com
LAREDO & SMITH, LLP
15 Broad Street, Suite 600
Boston, MA  02109
Tel: 617-367-7984
Fax: 617-367-6475