UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
AMBIT CORP.,                        )
                                    )
          Plaintiff,                )
                                    )
          v.                        )  CIVIL ACTION
                                    )  NO. 09-10217-WGY
DELTA AIRLINES, INC., and AIRCELL)
LLC,                                )
                                    )
          Defendants.               )
                                    )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                      March 23, 2010

I.   PRIOR PROCEEDINGS

On January 22, 2010, this Court denied the motion of Delta

Airlines, Inc., and Aircell LLC ("Delta") for summary judgment

that Patent No. 7,400,858 (the "'858 Patent") is invalid as

obvious under 35 U.S.C. § 103 and notified the parties that it

was considering granting summary judgment sua sponte on that

issue for AMBIT Corp. ("Ambit").  Order Den. Mot. Summ. J., Jan.

22, 2010 [Doc. No. 135].  Subsequently, Delta filed an opposition

arguing not only that its December 22, 2009, submission, which

relied on a 1993 paper by A.C. Papavramidis <u>et al</u>.

("Papavramidis") combined with "Admitted Prior Art," was

sufficient, but also discussing multiple other systems and

references (Airfone system and Dennis, the original Aircell

system, and the Casewell article) that allegedly render the '858

Patent obvious.  Delta also filed a new voluminous expert

declaration and numerous exhibits in support of its contentions.

Decl. William R. Michalson, Supp. Def.'s Opp. to <u>Sua Sponte</u> Summ.

J. [Doc. No. 147]; Decl. Stephanie P. Koh Supp. Def.'s Opp'n to

<u>Sua Sponte</u> Summ. J. [Doc. No. 144].  This new expert declaration

and the other evidence submitted after December 5, 2009, violates

the discovery deadline, Case Mgmt. Order, May 4, 2009 [Doc. No.

31], and will not be considered by this Court.

## II.  ANALYSIS

### A.  <u>NewRiver</u>, <u>Kioto</u>, and the Federal Rules of Evidence

In <u>NewRiver, Inc.</u> v. <u>Newkirk Prods., Inc.</u>, No. 06-12146,

2009 WL 4884024, *10 (D. Mass. 2009), this Court outlined what it

characterized as an irreconcilable tension between Federal

Circuit jurisprudence, most recently <u>Koito Mfg. Co., Ltd.</u> v.

<u>Turn-Key-Tech, LLC</u>, 381 F.3d 1142, 1149 (Fed. Cir. 2004), and the

requirements of the Federal Rules of Evidence 703 and 704.

There, this Court declared it would harmonize the disparate

requirements by undertaking a proactive role in vetting expert

testimony to insure that it constituted "substantial evidence" as

required by the Federal Circuit well before such testimony is ever laid before a jury.  NewRiver, 2009 WL 4884024, at *12.

Further reflection in the wake of the NewRiver decision convinces this Court that there may be a better way to characterize the tension between Federal Circuit jurisprudence and the Federal Rules of Evidence.  It is this:

Ever since the Supreme Court decision in Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993), district court judges have understood that they play a vital "gatekeeper" role in ensuring the integrity of expert testimony.  Fed. R. Evid. 702; see Linda S. Simard & William G. Young, Daubert's Gatekeeper: the Role of the District Judge in Admitting Expert Testimony, 68 Tul. L. Rev. 1457, 1458 (1994).  This "gatekeeper" function transcends the normal operation of the adversary system; that is, the district judge is expected to be an even-handed, rigorous, and effective gatekeeper even if one of the adversaries is asleep at the switch, fails to object, or even affirmatively adopts worthless expert testimony.

In discharging the gatekeeper function, the district judge explicitly or implicitly finds that the answer is "no" to each of these three questions:

(1) "Is this junk science?"  Daubert and its progeny (and now Rule 702) supply the protocol for answering this question.

(2) "Is this a junk scientist?" That is, does the
proffered witness have adequate qualifications to testify? This
question must be posed even if the science itself has long since
gained general acceptance. Moreover, this is more than a matter
of an academic resume. The answer to this second question turns
on whether our society - outside the litigation process itself -
turns to this individual to render the opinion sought to be
presented in court. See Linda S. Simard & William G. Young,
Daubert's Gatekeeper: the Role of the District Judge in Admitting
Expert Testimony, 68 Tul. L. Rev. 1457 (1994) (discussing this
question).

(3) "Is this a junk opinion?" Kumho Tire Co., Ltd. v.
Carmichael, 526 U.S. 137, 152 (1999), provides the protocol for
answering this third question. In Justice Breyer's words, is the
proffered opinion "relevant to the task at hand?" Id. at 141
(citing Daubert, 509 U.S. at 597).

Only when the judge finds the answers to these questions to
be in the negative, ought the proffered "expert" witness be
allowed to testify. The district judge's findings on these
issues are, of course, reviewed for abuse of discretion. General
Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997).

Against this backdrop, the Koito decision and related
Federal Circuit jurisprudence may best be characterized as the
explication of the requisite elements an expert opinion on

4

anticipation, obviousness, or the doctrine of equivalents **must possess** in order to be "relevant to the task at hand," <u>Kumho Tire</u>, 526 U.S. at 141, or in Federal Circuit parlance, as constituting "substantial evidence."[1]

Even so characterized, the tension noted in <u>NewRiver</u>, 2009 WL 4884024, at *10, between Federal Circuit decisions and the Federal Rules of Evidence remains since the Federal Circuit continues to indulge its penchant for treating all these issues as matter of law, <u>see, e.g.</u>, <u>Amgen, Inc.</u> v. <u>Hoechst Marion Roussel, Inc.</u>, 287 F. Supp. 2d 126, 136 (D. Mass. 2003); <u>Control Res., Inc.</u> v. <u>Delta Elecs., Inc.</u>, 133 F. Supp. 2d 121, 123 (D. Mass. 2001), even though the Supreme Court in <u>Joiner</u> ruled that district judges are owed deference to the preliminary findings of fact they make in qualifying expert opinions.  <u>Joiner</u>, 522 U.S. at 517.  But let that bide; its resolution is unnecessary to this opinion.

**B.   Summary Judgment in Patent Cases**

It is all very well to huff and puff about proactive review of expert opinions on the issue of anticipation, obviousness, and the doctrine of equivalents but, as always, the devil is in the details - specifically, when to make such review, and how to do it?

---

[1] I am indebted to William T. Lee, Esq. for this insight. The resulting analysis is my own.

When is fairly easy - the first time a district judge gets to review an expert opinion in detail is in considering a motion for summary judgment directed to one of the three key issues. How is more difficult.

It does not follow, of course, that simply because Delta has lost its motion for summary judgment on obviousness, summary judgment on that issue ought be taken against it.  It may well be that the conflicting opinions on the issue are both sufficiently well grounded and the matter turns on whom you believe - a quintessential matter for the jury.  Still, when it is the affidavit of the party bearing the burden of proof on the issue, it is the district court's duty to scrutinize the opinion with care.  If it does not, the Federal Circuit may later discount the opinion altogether, Koito, 381 F.3d at 1151, and all proceedings subsequent to the summary judgment determination will be wasted. It is the district court's duty to decide whether the proffered opinion meets Federal Circuit standards or whether it ought be disregarded as junk and, if the latter, what happens then?

In procedural matters, the Federal Circuit defers to the circuit governing the venue of the action.  Massey v. Del Labs., Inc., 118 F.3d 1568, 1572 (Fed. Cir. 1997).  The law in this circuit is well established: a party that moves for summary judgment runs the risk that if it makes a woefully inadequate showing, not only might its own motion for summary judgment be

denied, the court may <u>sua sponte</u> order summary judgment against

the movant.  <u>See</u> <u>Berkovitz</u> v. <u>Home Box Office, Inc.</u>, 89 F.3d 24,

29-30 (1st Cir. 1996); <u>see also</u> <u>Sanchez</u> v. <u>Triple-S Management</u>

<u>Corp.</u>, 492 F.3d 1, 7-9 (1st Cir. 2007).  Before considering

granting <u>sua sponte</u> summary judgment, however, certain conditions

must be met.  Specifically, to "ensure the targeted party has an

adequate opportunity to dodge the bullet," a court may only enter

summary judgment <u>sua sponte</u> if: (1) fact discovery is

sufficiently advanced that the parties enjoyed a reasonable

opportunity to glean the material facts, and (2) the targeted

party has appropriate notice and a chance to present its evidence

on the essential elements of the claim.  <u>Berkovitz</u>, 89 F.3d at

29.

In the case at bar, fact discovery took as long as eleven

months, thus Delta had ample opportunity to gather the facts it

needed for the support of its position and to choose the best

strategy on the basis of facts available.  Further, the Court

specifically notified Delta that it was considering granting <u>sua</u>

<u>sponte</u> summary judgment on this issue against it and that it

needed to put forth all arguments and evidence to support its

claim on obviousness.  Order Den. Mot. Summ. J., Jan. 22, 2010

[Doc. No. 135].

The First Circuit procedure governing the <u>sua sponte</u> grant

of summary judgment against the moving party is, in patent cases,

a most salutary one.  Unfortunately - and this needs to be said -
summary judgment practice in patent cases is out of control.  All
too often, in significant cases the parties bring multiple
motions for summary judgment on a plethora of issues.  Consider
just these two recent patent cases which have been or are being
handled in this session of the court: <u>Amgen, Inc.</u> v. <u>F. Hoffmann-
LaRoche, Ltd</u>, No. 05-12237, fifteen summary judgment motions;[2]
<u>Rothschild</u> v. <u>Cree, Inc.</u>, No. 10-10133, nine summary judgment
motions.  What is more, it may well be that parties will try out
such a motion and, should that fail, wheel out their bigger guns
for another go.  In no small part, it is this blizzard of motions
that makes American patent litigation the slowest and the most
expensive on the planet.  Tragically, this causes other countries
to deride our American jury system, when the reality is that it
is the parties who seek to swamp the courts with efforts to avoid
a jury.

It is important that the patent bar understand that, should
they move for summary judgment upon an issue as to which they
bear the burden of proof, it behooves them to lay every bit of
evidence before the court - once; well knowing that failure puts
the moving party at risk of judgment on the issue being taken
against them and the issue dropping out of the case.

---

[2] This action also had a record high nearly 100 motions in
limine filed and briefed.

### C.  The Evidence Provided by Delta Was Sufficient to Preclude Granting Summary Judgment Against It.

With this background in mind, the Court turns to an analysis of Delta's expert submission in support of its motion for summary judgment on the issue of obviousness.  As established in <u>Graham v. John Deere Co. of Kansas City</u>, 383 U.S. 1, 17-18 (1966), the following analysis should be conducted to determine obviousness under 35 U.S.C. § 103: the court must (1) determine the scope and content of the prior art; (2) ascertain the differences between the prior art and the claims at issue; (3) assess the level of ordinary skill in the pertinent art; and (4) determine whether a person with the ordinary skill in the pertinent art would have found the patent obvious in context of the prior art references. <u>KSR Int'l Co.</u> v. <u>Teleflex Inc.</u>, 550 U.S. 398, 406-07 (2007).

"In determining obviousness, the invention must be considered as a whole without the benefit of hindsight, and the claims must be considered in their entirety." <u>Rockwell Int'l Corp.</u> v. <u>U.S.</u>, 147 F.3d 1358, 1364 (Fed. Cir. 1998).  A proponent of invalidity must identify art that rendered claims obvious, point out where claims' limitations are disclosed in the prior art, and show how the prior art references in combination would make the claim obvious to a person of ordinary skill in the art at the relevant time. <u>NewRiver</u>, 2009 WL 4884024, at *7.  General and conclusory testimony "does not suffice as substantial evidence of invalidity." <u>Koito</u>, 381 F.3d at 1152 (Fed. Cir.

2004).   A patent challenger must demonstrate that both
independent and dependent claims are invalid.  Sandt Tech., Ltd.
v. Resco Metal and Plastics Corp., 264 F.3d 1344, 1356 (Fed. Cir.
2001).   "Because dependent claims contain additional limitations,
they cannot be presumed to be invalid as obvious just because the
independent claims from which they depend have properly been so
found."  Id.

Moreover, under the "teaching, suggestion, or motivation"
test established by the Supreme Court, a patent claim is obvious
only "if the prior art, the problem's nature, or the knowledge of
a person having ordinary skill in the art reveals some motivation
or suggestion to combine the prior art teachings." KSR Int'l, 550
U.S. at 399.  It is not enough to establish that separate
elements of the invention are obvious on their own.  Id.

Delta presented expert testimony discussing the similarity
of the Papavramidis article and the '858 Patent.  Decl. William
R. Michalson ("Michalson Decl.") Supp. Defs.' Mot. Summ. J. [Doc.
No. 116].  Michelson specified where Paparvramidis discloses the
limitations of (1) a First RF antenna (2) wirelessly
communicating with (3) personal communication devices and (4)
personal computer communication devices, (5) a Second RF antenna
(6) radiating to a satellite and (7) a link between the two

antennae.[3]  Concerning the control computer limitation, Michalson

stated that some computers (avionic router and Interworking Unit)

are disclosed and that "to the extent that any of the

functionality attributed to the control computer ... [is]

determined to be missing from the avionic router and Interworking

unit in Papavramidis, it would be obvious to modify [them] to

provide such functionality."  Michalson Decl. ¶ 24.  Michalson

did not, however, describe which functions, in his opinion, were

disclosed, which were not, and why it was obvious to add them.

Expert testimony about the control computer is rather conclusory.

Michalson further described the functions of the control

computer as claimed in the '858 Patent (to control use and time,

to control RF signals, to limit time, to regulate use, to filter

or switch, to bill for time, to bill for use, to monitor RF

signals) but only to express the opinion they are substantially

the same as the functions of the control unit claimed in related

U.S. patent No. 6,594,471 (the "'471 Patent") (to regulate

signals, time or use, to bill any users, to monitor signals).

Michalson Decl. ¶¶ 28-29.  Delta then cites to the official

notice taken by the examiner during the prosecution of the '471

Patent that "the telephone system having a control unit for

monitoring the time usage for billing purposes is notoriously

---

[3] Delta's expert never discussed each element of each claim
of the '858 patent separately; rather he discussed each element
that comprised each of the claims in the suit.

well known in the art" and that "it would have been obvious to

one of ordinary skill in the art to have the control unit as

claimed in order to further expand its application."  Decl.

Stephanie P. Koh Supp. of Defs.' Mot. for Summ. J., Ex. 21 [Doc.

No. 112].  Contrary to Delta's position, the notice in question

is not sufficient to establish an admission by Ambit.  At most,

this notice can be viewed only as indirect evidence supporting

Delta's argument that certain functions of the control computer

as claimed in the '858 Patent are obvious.

Thus, strictly speaking, Delta's expert Michalson testified

only that particular functions are the same as those found in the

'471 Patent, and never said that these particular functions are

obvious.  He made a conclusory statement that some control

computer functions are disclosed and others are obvious, but

never specified which functions.  Reading the expert's

declaration as a whole, however, it is the finding of this Court

that the expert meant that the general structure of the control

computer was disclosed in Papavramidis and it was obvious to add

the functions described in the '858 Patent (to control use and

time, to control RF signals, to limit time, to regulate use, to

filter or switch, to bill for time, to bill for use, to monitor

RF signals).  Under this reading Delta's submission suffices,

albeit barely, to constitute sufficient evidence to support the

possibility that a reasonable jury could find in its favor on the issue of obviousness.

**III. CONCLUSION**

As a result of the foregoing analysis, this Court does not <u>sua sponte</u> grant summary judgment against Delta on the issue of obviousness.


SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE